WRIGHT & L'ESTRANGE
    William E. Dysart (SBN 042608)
    Alexander T Gruft (SBN 223096)
401 West A Street, Suite 2250
San Diego, California  92101
(619) 231-4844
(619) 231-6710 (fax)
agruft@wllawsd.com

Mark Block, (State Bar No. 115457)
Landon Lerner, (State Bar No. 268093)
GLASER, WEIL, FINK, JACOBS,
    HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:  (310) 556-2920



Attorneys for Plaintiff Sea Prestigio, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEA PRESTIGIO, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>        v.<br><br>M/Y TRITON, Republic of Marshall Islands (Official No. 70070), Its Engines, Machinery, Appurtenances, etc., *In rem*; SPEARFISH VENTURES, LTD., a British Virgin Islands Company; FBP INVESTMENTS, LP, a Delaware limited partnership; JAMES P. BALDWIN, as co-trustee of the James P. Baldwin Trust No. 1 and Nancy L. Baldwin Trust No. 1; NANCY L. BALDWIN, as co-trustee of the James P. Baldwin Trust No. 1 and Nancy L. Baldwin Trust No. 1; CACHAL INVESTMENTS, S. DE R.L. DE C.V., a Mexican corporation, *In Personam*, and DOES 1-10,<br><br>        Defendants. | CASE NO. 10 CV 2412 W   AJB<br><br>IN ADMIRALTY<br><br>**VERIFIED COMPLAINT FOR BREACH OF CONTRACTS, TO FORECLOSE PREFERRED SHIP'S MORTGAGE (*In Personam and In Rem*), AND TO FORECLOSE ON REAL PROPERTY** |

VERIFIED COMPLAINT FOR BREACH OF CONTRACTS, TO FORECLOSE PREFERRED SHIP'S
MORTGAGE (In Personam and In Rem), AND TO FORECLOSE ON REAL PROPERTY

Plaintiff SEA PRESTIGIO, LLC, a Delaware limited liability company, alleges against the M/Y TRITON, Republic of Marshall Islands (Official No. 70070), its engines, machinery, appurtenances, dinghies, and tenders, etc., *In rem*; SPEARFISH VENTURES, LTD., a British Virgin Islands Company and the 100% owner of the defendant vessel; and co-borrowers FBP INVESTMENTS, LP, a Delaware limited partnership; JAMES P. BALDWIN, as co-trustee of the James P. Baldwin Trust No. 1 and the Nancy L. Baldwin Trust No. 1; NANCY L. BALDWIN, as co-trustee of the James P. Baldwin Trust No. 1 and the Nancy L. Baldwin Trust No. 1; CACHAL INVESTMENTS, S. DE R.L. DE C.V., a Mexican corporation, *In Personam*, and DOES 1-10, ("Defendants") as follows:

## JURISDICTION AND VENUE

1.   This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules For Admiralty or Maritime Claims and Asset Forfeiture Actions.

2.   The admiralty jurisdiction of this Court over the instant action is properly exercised – both *in personam* and *in rem* – under 28 U.S.C. section 1333; federal question jurisdiction under 28 U.S.C. sections 1331 and 1367; and the Commercial Instrument and Maritime Liens Act (formerly the Ship Mortgage Act), 46 U.S.C. sections 31301-31343.

## PARTIES

3.   Plaintiff SEA PRESTIGIO, LLC ("SEA PRESTIGIO") is a Delaware limited liability company, and at all time herein mentioned was duly organized and existing according to the laws of the State of Delaware, with its principal place of business in Aliso Viejo, California.

4.   Defendant M/Y TRITON, Republic of Marshall Islands (Official No. 70070), its engines, machinery, appurtenances, dinghies, and tenders, etc., is a 2004 163.4-foot motor yacht built in Seattle, Washington, and is, and was at all

2

times mentioned herein, a documented vessel under a Certificate of Registry issued by the Republic of Marshall Islands (the "VESSEL"). A Certificate of Ownership and Encumbrance dated November 19, 2010, prepared by the Office of the Administrator of Republic of the Marshall Islands is attached hereto as Exhibit "A".

5.    Defendant SPEARFISH VENTURES, LTD. ("SPEARFISH"), is a British Virgin Islands Company with its principal place of business in Newport Beach, California. SPEARFISH is the 100% owner of the VESSEL and one of the co-borrowers alleged herein.

6.    Defendant FBP INVESTMENTS, LP ("FBP INVESTMENTS"), is a Delaware limited partnership with its principal place of business in Newport Beach, California.

7.    Defendant JAMES P. BALDWIN ("JAMES") is, and at all times mentioned herein was, a co-trustee of the JAMES P. BALDWIN TRUST NO. 1 and the NANCY L. BALDWIN TRUST NO. 1, and a resident of Orange County, California.

8.    Defendant NANCY L. BALDWIN ("NANCY") is, and at all times mentioned herein was, a co-trustee of the JAMES P. BALDWIN TRUST NO. 1 and the NANCY L. BALDWIN TRUST NO. 1, and a resident of Orange County, California.

9.    CACHAL INVESTMENTS, S. DE R.L. DE C.V. ("CACHAL"), is a Mexican corporation with its principal place of business in Newport Beach, California.

10.    SPEARFISH, FBP INVESTMENTS, JAMES, NANCY, and CACHAL may be referred to herein collectively as BORROWERS.

11.    Does 1 through 10 inclusive, are unknown to SEA PRESTIGIO, which therefore sues said Defendants by such fictitious names. SEA PRESTIGIO will request leave of Court to amend this Complaint to allege their true names and

3

capacities when ascertained.  SEA PRESTIGIO is informed and believes that some or all of the Defendants are the agents, servants, employees, partners, alter egos, or representatives of other Defendants and performed the acts mentioned in this Complaint during the course and scope of their agency, servitude, employment, partnership, alter ego, or representative relationship or under the direction or with knowledge and approval of their principals, masters, employers or partners.

## GENERAL ALLEGEGATIONS

12.    On or about June 30, 2010, SEA PRESTIGIO, on the one hand, and SPEARFISH, FBP INVESTMENTS, JAMES and NANCY, as co-trustees of the James P. Baldwin Trust No. 1 and the Nancy L. Baldwin Trust No. 1; and CACHAL, on the other hand, entered into a Loan Agreement whereby SEA PRESTIGIO agreed to loan to SPEARFISH and co-maker BORROWERS $21,000,000.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "B", and is incorporated herein by reference.

13.    On or about June 30, 2010, SEA PRESTIGIO advanced $15,500,000 of the $21,000,000 to BORROWERS pursuant to the Loan Agreement.

14.    On or about June 30, 2010, BORROWERS executed and delivered to Plaintiff, for valuable consideration, a Promissory Note ("Note") in the principal sum of Twenty-One Million Dollars ($21,000,000).  A Preferred Mortgage on the Vessel secures the Note.  A true and correct copy of the Note is attached here as Exhibit "C", and is incorporated herein by reference.

15.    On or about June 30, 2010, SPEARFISH, the owner of the VESSEL, granted a Preferred Mortgage ("Mortgage") for Twenty-One Million Dollars ($21,000,000) to Plaintiff.  Said Mortgage was duly recorded with the Office of the Maritime Administrator of the Republic of Marshall Islands ("RMI") on July 9, 2010, and in all respects qualifies as a Preferred Mortgage under 46 U.S.C. § 31322 and § 31325.  A true and correct copy of the Mortgage is attached hereto as

4

Exhibit "D".

16.   SPEARFISH at all times relevant is the sole 100% owner of the whole of the VESSEL.

17.   There is now a default under the terms of the Loan Agreement, Note and Mortgage based on, *inter alia*, SPEARFISH and its co-maker BORROWERS failure to pay all interest due under the Note for the months of August, September, October and November 2010, and their failure to provide evidence of insurance for the VESSEL.  As a consequence of the default, there is now due and owing to Plaintiff under the Loan Agreement, Note and Mortgage the principal balance of $15,500,000, together with accrued and unpaid interest, late charges, costs and attorneys' fees.

18.   The laws of the United States provide that, upon a default of any term of a preferred mortgage, the mortgage holder may enforce its claim for outstanding indebtedness against the mortgaged vessel, *in rem*, 46 U.S.C. § 31325.

19.   The VESSEL is afloat upon the navigable waters of the United States and within this Judicial District and the Court's jurisdiction.

## FIRST CLAIM FOR RELIEF – BREACH OF CONTRACTS AND PREFERRED SHIP'S MORTGAGE *IN PERSONAM* AGAINST DEFENDANT BORROWERS

20.   Plaintiff SEA PRESTIGIO hereby realleges and incorporates by this reference the allegations hereinabove alleged.

21.   SEA PRESTIGIO is the holder of the Mortgage, which was duly recorded with the duly recorded with the Office of the Maritime Administrator of RMI on July 9, 2010, and in all respects qualifies as a Preferred Mortgage under 46 U.S.C. § 31322 and § 31325.  The indebtedness owed to SEA PRESTIGIO by SPEARFISH VENTURES, and its co-makers, BORROWERS, under the Loan Agreement and Note, and secured by the Mortgage on the VESSEL, is a valid

5

preferred ship mortgage lien on the VESSEL.

22. Prior to, and as of August 1, 2010, SPEARFISH VENTURES, and its co-makers, BORROWERS, in addition to other grounds for default, repeatedly failed to make the proper monthly payments as required under the Loan Agreement and Note, and failed to provide evidence of insurance for the VESSEL. All BORROWERS are in default have been since August 1, 2010.

23. As a result of the aforesaid default, SPEARFISH VENTURES is in default under the Loan Agreement, Note and Mortgage.

24. As a consequence of the defaults, there is now due and owing to Plaintiff under the Loan Agreement, Note and Mortgage the principal balance of $15,500,000, together with accrued and unpaid interest, late charges, costs and attorneys' fees.

## SECOND CLAIM FOR RELIEF – FORECLOSURE OF PREFERRED SHIP'S MORTGAGE PURSUANT TO 46 U.S.C. § 31325 AGAINST DEFENDANT BORROWERS, *IN PERSONAM*, AND THE VESSEL, *IN REM*

25. Plaintiff SEA PRESTIGIO hereby realleges and incorporates by this reference the allegations hereinabove alleged.

26. SEA PRESTIGIO has a maritime lien against the VESSEL, *in rem*, for any and all amounts that are or will be due and owing under the Loan Agreement and Note, including prejudgment interest in accordance with the Note; and SEA PRESTIGIO is entitled to foreclose its maritime lien and satisfy any and all obligations arising under the Loan Agreement, Note and Mortgage during the course of this instant action, including the attorneys' fees and costs based on the Loan Agreement, Note and Mortgage, including the costs of bringing this action, and arresting, preserving and selling the VESSEL, against the VESSEL, *in rem*.

27. SEA PRESTIGIO is entitled to foreclose its maritime lien and Mortgage to satisfy any and all obligations arising under the Mortgage during the

6

course of this action; and the costs of bringing this action, arresting, preserving and selling the VESSEL, against the VESSEL, *in rem*.

### THIRD CLAIM FOR RELIEF – FORECLOSURE OF REAL PROPERTY AGAINST DEFENDANT BORROWERS, *IN PERSONAM*

28.    Plaintiff SEA PRESTIGIO hereby realleges and incorporates by this reference the allegations hereinabove alleged.

29.    The real property on which SEA PRESTIGIO seeks foreclosure is located at 114 Emerald Bay, Laguna Beach, California (the "REAL PROPERTY"). A legal description of the REAL PROPERTY is attached hereto as Exhibit "E" and is incorporated herein by reference.

30.    The James P. Baldwin Trust No. 1 ("JPB TRUST") and the Nancy L. Baldwin Trust No. 1 ("NLB TRUST") are the record owners of the REAL PROPERTY.

31.    On June 30, 2010, for valuable consideration, BORROWERS made, executed, and delivered to SEA PRESTIGIO the Note, attached hereto as Exhibit "C", for the principal sum of $21,000,000.00, plus interest as set forth in the Note and related documents.

32.    To secure payment of the principal sum and interest on the Note, and as part of the same transaction, certain of the BORROWERS, namely JAMES and NANCY as co-trustees of the JPB TRUST and NLB TRUST (collectively "TRUSTORS"), among other things, made, executed, and delivered to SEA PRESTIGIO, as beneficiary, a deed of trust (the "Deed of Trust"), by the terms of which TRUSTORS conveyed to Chicago Title Insurance Company, with offices located at 4041 Mac Arthur Boulevard, Suite 490, Newport Beach, California, as trustee, the REAL PROPERTY. The Deed of Trust was recorded on July 2, 2010 under instrument number 2010000315139 in the Official Records of Orange County, California. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "F" and is incorporated herein by reference.

7

33.    SEA PRESTIGIO is now, and at all times relevant to this action was, the lawful owner and holder of the Note and beneficial interest under the Deed of Trust.

34.    The Note provides that upon the occurrence of any Event of Default, as defined in the Note and related documents, SEA PRESTIGIO may declare the outstanding principal balance together with all accrued and unpaid interest thereon and all related charges to be immediately due and payable.

35.    An Event of Default, as defined in the Note and related documents, has occurred by, among other things, BORROWERS' failure to pay principal and interest due under the Note and related documents.  For such Event of Default, SEA PRESTIGIO has elected to declare the entire remaining sum of principal and interest immediately due and payable.

36.    By the terms of the Deed of Trust, for the exercise of any of SEA PRESTIGIO's rights under section 5 of the Deed of Trust, or for the exercise of any other rights at law or in equity, TRUSTORS agreed to bear responsibility for the reasonable attorney's fees and costs incurred, together with interest at the rate set forth in the Note, to be secured by the Deed of Trust.

**WHEREFORE,** Plaintiff SEA PRESTIGIO prays for judgment as follows:

1.    That this Court decree payment due jointly and severally by the Vessel and the BORROWERS on the Loan Agreement, Note and Mortgage for the following:

a)    The sum of $15,500,000, together with accrued and unpaid interest and late charges;

b)    Reasonable attorneys' fees;

c)    The costs of this action including charges for all fees for keepers and their costs incurred in this action and for all expenses for the sale of the Vessel, her engines, machinery, appurtenances, dinghies, and tenders, etc., including the U.S. Marshal's commission;

8

2.     That SEA PRESTIGIO's Preferred Mortgage and maritime lien resulting from its mortgage be recognized as the paramount lien against the VESSEL, and the Preferred Mortgage be foreclosed and the VESSEL, her engines, tackle, furniture and apparel, be condemned and sold to pay the claims and demands of SEA PRESTIGIO, with interest and costs and that SEA PRESTIGIO may have such other and further relief as in the law and justice it may be entitled and that SEA PRESTIGIO may become purchaser at any sale of the mortgaged vessel;

3.     That the Court enter judgment in SEA PRESTIGIO's favor for the full amount of BORROWERS' breach of the Loan Agreement, Note and Mortgage, in the amount of $15,500,000, together with accrued and unpaid interest, late charges, costs and attorneys' fees;

4.     That a judgment against BORROWERS and DOES 1-10, *in personam*, jointly and severally, be entered for any deficiency resulting after the judicial sale of the VESSEL;

5.     That it be decreed that any and all persons, firms, or corporations claiming any interest in the VESSEL are forever barred and foreclosed of and from all right or equity of redemption or claim of, in, or to the mortgaged VESSEL and every part thereof;

6.     That at the sale of the Vessel by the U.S. Marshal, SEA PRESTIGIO be permitted to bid, without cash deposit, its judgment, accrued interest, late charges costs, including U.S. Marshal's commission, and attorneys' fees, up to the full amount thereof;

7.     Adjudging that all rights, claims, ownership, liens, titles, and demands of BORROWERS jointly and severally are subsequent to and subject to the lien of the Deed of Trust;

8.     Adjudging that the Deed of Trust be foreclosed, that the REAL PROPERTY be sold according to law, that the proceeds of the sale be applied in

9

payment of the amounts due to SEA PRESTIGIO, that BORROWERS and all persons claiming under BORROWERS, after execution of the Deed of Trust, whether as lien claimant, judgment creditor, claimant under a junior trust deed, purchaser, lienholder, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the REAL PROPERTY and every part of the REAL PROPERTY when time for redemption has elapsed;

9.      Adjudging that BORROWERS are liable for payment of the obligation secured by the Deed of Trust, and that a deficiency judgment may be ordered following proceedings prescribed by law;

10.     Permitting SEA PRESTIGIO to become a purchaser at the foreclosure sale of the REAL PROPERTY;

11.     Directing the levying officer, after the time for redemption has elapsed, to execute a deed to the purchaser of the REAL PROPERTY at the sale, and directing that the purchaser be let into possession of the REAL PROPERTY on production of the levying officer's deed

12.     That the Court provide such other and further relief in SEA PRESTIGIO's favor as the Court deems just and proper.

WRIGHT & L'ESTRANGE
Attorneys for Plaintiff Sea Prestigio, LLC

Dated: November 22, 2010

William E. Dysart, Esq.
wedysart@wllawsd.com

10

1

## VERIFICATION

2       I, Henry T. Nicholas III, declare under penalty of perjury under the laws of

3 the United States and the State of California as follows:

4       I am the Chairman of Nicholas Holdings, LLC, which is the Manager of

5 Plaintiff Sea Prestigio, LLC ("Plaintiff") and am authorized to make this

6 verification for and on behalf of Plaintiff, and I make this verification for that

7 reason.  I am informed and believe, and on that ground allege, that the matters

8 stated in the "Verified Complaint For Breach of Contracts, To Foreclose Preferred

9 Ship's Mortgage (*In Personam* and *In Rem*), And to Foreclose On Real Property"

10 are true.

11       Executed this _____22_____ date of November, 2010, at Newport Beach,

12 California.

13

14

15                     Henry T. Nicholas III

16

17

18

19

20

21

22

23

24

25

26

27

28

11



# Republic of the Marshall Islands

## Office of the Maritime Administrator

# CERTIFICATE OF OWNERSHIP AND ENCUMBRANCE

### of a vessel registered under Marshall Islands Flag

IT IS HEREBY CERTIFIED that as of November 19, 2010 at 02:45 P.M., E.S.T.,   according to the records of the Office of the Maritime Administrator of the Republic of The Marshall Islands, the vessel described hereunder:

**OFFICIAL NUMBER:** 70070          **CALL LETTERS:** V7GF5          **TYPE:** PRIVATE YACHT MOTOR

**VESSEL NAME:** TRITON

**DATE OF REGISTRATION:** October 15, 2004          **GROSS TONS:** 527          **NET TONS:** 158

**BUILT AT:** SEATTLE, WA          **IN:** 2004

**PRESENT CERTIFICATE OF REGISTRY NUMBER:** 20-04-PY          **ISSUED:** October 15, 2004

**AT:** Ft. Lauderdale, Florida, U.S.A.

is owned by:

| NAME | RESIDENCE | CITIZENSHIP | PROPORTION |
|------|-----------|-------------|------------|
| SPEARFISH VENTURES LTD. | Tortola, British Virgin Islands | British Virgin Islands | 100% |

(Foreign Maritime Entity)

AND THAT there are on record in this Office the following mortgages, liens or other encumbrances, and no others:

FIRST PREFERRED MORTGAGE dated June 30, 2010, granted by SPEARFISH VENTURES LTD. to SEA PRESTIGO, LLC in the total amount of US$21,000,000.00; recorded on July 9, 2010 at 2:55 P.M., E.D.S.T. at Fort Lauderdale, Florida, USA in Book PM 21 at Page 592.

Issued by the Authority of the Government of the Republic of The Marshall Islands under my hand and seal at Fort Lauderdale, Florida USA on this 19th day of November, 2010 at 2:45 P.M., E.S.T.

Guy E. C. Maitland
Senior Deputy Commissioner

Wendy Jones

**CLIENT ORIGINAL**                                    MI-223 (Rev.06/05)

**EXHIBIT B**

## LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement"), is made this 30ᵗʰday of June, 2010, by and among SEA PRESTIGIO, LLC, a Delaware limited liability company ("Lender"), on the one hand, and FBP INVESTMENTS, LP, a Delaware limited partnership, JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE JAMES P. BALDWIN TRUST NO. 1 ("JPB Trust"), JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE NANCY L. BALDWIN TRUST NO. 1 ("NLB Trust") (the JPB Trust and the NLB Trust are collectively referred to herein as the "Baldwin Trusts"), SPEARFISH VENTURES, LTD., a British Virgin Islands Company ("Spearfish"), and CACHAL INVESTMENTS, S. DE R.L. DE C.V., a Mexican corporation ("Cachal") (each, a "Borrower", and collectively, the "Borrowers"), on the other hand. Lender and Borrowers are sometimes hereinafter referred to each individually as a "Party" and collectively as the "Parties".

### RECITALS

A.    Borrowers desire to obtain a loan (the "Loan") from Lender in the original principal amount of TWENTY ONE MILLION DOLLARS ($21,000,000) (the "Loan Amount");

B.    Lender has agreed, upon the terms and conditions set forth herein, to make the Loan to Borrowers; and

C.    All Exhibits attached hereto are incorporated herein by this reference.

NOW, THEREFORE, in consideration of Lender making the Loan to Borrowers, and the covenants, agreements, representations and warranties set forth in this Agreement, the Parties hereby covenant, agree, represent and warrant as follows:

### ARTICLE I
### DEFINITIONS

"Account Collateral" has the meaning set forth in Section 5.3(A) of this Agreement.

"Affiliate(s)" means any person or Entity directly or indirectly controlling, controlled by, or under common control with any Borrower or any person or Entity owning a material interest in any Borrower, either directly or indirectly.

"Agreement" means this Loan Agreement, as the same may from time to time hereafter be modified, supplemented or amended.

"Anti-Terrorism Laws" means any of the following:(a) Executive Order No. 13224; (b) the Terrorism Sanctions Regulations (Title 31 Part 595 of the U.S. Code of Federal Regulations); (c) the Terrorism List Governments Sanctions Regulations (Title 31 Part 596 of the U.S. Code of Federal Regulations); (d) the Foreign Terrorist Organizations Sanctions Regulations (Title 31 Part 597 of the U.S. Code of Federal Regulations); (e) the USA Patriot Act; (f) all other present and future Legal Requirements of any Governmental Instrumentality addressing, relating to, or

712480                                          1

attempting to eliminate, terrorist acts and acts of war; and (g) any regulations promulgated pursuant thereto or pursuant to any Legal Requirement governing terrorist acts and acts of war.

"Approved Accounting Method" has the meaning set forth in Section 5.1 of this Agreement.

"Cabo Property" means the real property located at (a) Km 17, 17.5 Carretera Transpeninsular Predio El Tule San Jose Del Cabo, BCS 23400 Mexico, and (b) Km 17, 17 Carretera Transpeninsular Predio El Tule San Jose Del Cabo, BCS 23400 Mexico (and more particularly described in Mortgage Two), and owned by Cachal.

"Cabo Property Title Insurance Company" means Fidelity National Title Insurance Company, or such other title insurance company approved by Lender in Lender's sole and absolute discretion.

"Cabo Property Title Insurance Policy" means a loan policy of title insurance, including endorsements, issued by the Cabo Property Title Insurance Company, with respect to the Cabo Property in an amount not less than the Loan Amount, and insuring a first priority lien in favor of Lender created by Mortgage Two, acceptable to Lender in Lender's sole discretion.

"California Bank & Trust Attachment Release" means documentation required by the Title Company and approved by Lender in Lender's sole and absolute discretion sufficient to release the Attachment recorded by California Bank & Trust, as Plaintiff, against James P. Baldwin et al, as Defendant, in connection with Case Number 30-2009-00314140 in the Superior Court, County of Orange.

"Chevy Chase Loan" means that certain loan from Chevy Chase Bank to James P. Baldwin and Nancy L. Baldwin in the amount of Ten Million Dollars and No/100 ($10,000,000.00) and evidenced by that certain Deed of Trust recorded on August 23, 2007 in the Official Records of Orange County as Document Number 2007000523094.

"Code" has the meaning set forth in Section 3.1(F) of this Agreement.

"Collateral" means, collectively, the Properties, the Vessel, the Account Collateral, and all proceeds and products of the foregoing, all whether now owned or hereafter acquired, and all other property which is or hereafter may become subject to a lien in favor of Lender.

"Conditions Precedent to First Disbursement" means, collectively: (i) Borrowers shall have delivered to Escrow Holder an original, fully executed Note; (ii) Borrowers shall have delivered to Escrow Holder an original, fully executed, in recordable form, Mortgage One; (iii) Borrowers shall have delivered to Escrow Holder an original, fully executed, in recordable form, Mortgage Three; (iv) Borrowers shall have delivered to Escrow Holder an original, fully executed, in recordable form, California Bank & Trust Attachment Release; (v) Borrowers shall have delivered to Escrow Holder an original First Bank Evidence of Signing Authority; (vi) Borrowers shall have delivered to Escrow Holder the original, fully executed Memorandum of Particulars; (vii) the FirstBank/SunRanch Emerald Bay Property Reconveyance shall have been recorded; (viii) the FirstBank/SunRanch Assignment of Ship Mortgage shall have been recorded; (ix) the SunRanch Release of Ship Mortgage shall have been recorded; (x) Borrowers'

representations and warranties set forth in this Agreement and all of the Loan Documents shall be true and correct as of the First Disbursement Closing Date; and (xi) the Title Company shall have committed to issue Lender the Emerald Bay Property Title Insurance Policy, subject only to the Emerald Bay Property Permitted Encumbrances.

"Conditions Precedent to Second Disbursement" means, collectively: (i) Borrowers' representation and warranties set forth in this Agreement and all of the Loan Documents shall be true and correct as of the Second Disbursement Closing Date; (ii) there shall not exist any Event of Default under this Agreement or any of the Loan Documents; (iii) the First Bank Evidence of Signing Authority shall have been delivered to Lender; (iv) Borrowers shall have delivered to Escrow Holder an original, fully executed, in recordable form, Mortgage Two; and (v) the Cabo Property Title Insurance Company shall have committed to issue Lender the Cabo Property Title Insurance Policy, subject to no liens, encumbrances or interests.

"Emerald Bay Property" means the real property located at 114 Emerald Bay, Laguna Beach, California (and more particularly described in Mortgage One) and owned by the Baldwin Trusts.

"Emerald Bay Property Permitted Encumbrances" means the encumbrances reflected on the Emerald Bay Property preliminary title report attached hereto as Exhibit "A".

"Emerald Bay Property Title Insurance Policy" means a loan policy of title insurance, including endorsements, issued by the Title Company with respect to the Emerald Bay Property in an amount not less than the Loan Amount, and insuring the priority lien in favor of Lender created by Mortgage One, acceptable to Lender in Lender's sole discretion.

"Entity" means (a) a corporation, (b) a limited or general partnership, (c) a limited liability company, or (d) a trust.

"Escrow Holder" means Chicago Title Company; Attn: Lorri Beasley, with offices located at 4041 Mac Arthur Boulevard, Suite 490, Newport Beach, California 92660.

"Event of Default" or "Events of Default" has the meaning set forth in the Note, the Mortgages, and as set forth in Section 4.1 of this Agreement.

"Extended Maturity Date" has the meaning set forth in the Note.

"Financing Statements" shall mean one or more financing statements (form UCC-1) naming Borrowers, as debtor and Lender as secured party, if required by Lender, covering the personal property and/or fixtures included in the Properties and/or Vessel.

"FirstBank/SunRanch Assignment of Ship Mortgage" means that certain Assignment of a Preferred Mortgage made by First Bank, a Missouri banking corporation ("First Bank") in favor of SunRanch Capital Partners, LLC, a Delaware limited liability company ("SunRanch"), with respect to the Vessel, in the form attached hereto as Exhibit "B".

"FirstBank/SunRanch Emerald Bay Property Reconveyance" means that certain Substitution of Trustee and Full Reconveyance of the Emerald Bay Property from SunRanch to the Baldwin Trusts.

"First Bank Evidence of Signing Authority" means documentation, approved by Lender in Lender's sole and absolute discretion, evidencing First Bank's authority to execute the documentation required to be executed by First Bank in connection with the Loan Documents.

"First Disbursement" has the meaning set forth in Section 2.1(B)(i) below.

"First Disbursement Closing Date" means the date (i) Mortgage One is recorded in the county recorder's office where the Emerald Bay Property is located; and (ii) Mortgage Three is recorded in the Office of the Deputy Commissioner of Maritime Affairs of the Republic of the Marshall Islands at Ft. Lauderdale, FL, USA.

"Governmental Authority" means any national, international, federal, state, regional or local government, or any other political subdivision of any of the foregoing, in each case with jurisdiction over any Borrower, any of the Properties or the Vessel, or any Person with jurisdiction over any Borrower, any of the Properties or the Vessel exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Improvements" means all buildings, structures and improvements now or hereafter located on or at the Property, including, without limitation, all of the property owned by the Borrowers which is described now or hereafter affixed or attached to such buildings, structures or improvements.

"Indebtedness" has the meaning set forth in the Mortgages.

"Insolvency Proceeding" has the meaning set forth in Section 4.1(D) of this Agreement.

"Interest Owner(s)" means any person or entity owning an interest (directly or indirectly) in any Borrower.

"Investor" has the meaning set forth in Section 5.5(A) of this Agreement.

"Legal Requirements" has the meaning set forth in Section 3.1(B) of this Agreement.

"Loan Documents" means this Agreement, the Note, the Mortgages, any and all Financing Statement(s) and such further documents or agreements required by Lender to secure the Loan.

"Material Adverse Effect" means a material adverse effect upon (i) the business or the financial position or results of operation of any Borrower, (ii) the ability of any Borrower to perform, or of Lender to enforce, any of the Loan Documents or (iii) the value of (x) the Collateral taken as a whole or (y) each of the Properties or the Vessel.

"Maturity Date" has the meaning set forth in the Note.

712480                                        4

"Memorandum of Particulars" means that certain Memorandum of Particulars from First Bank for the First Preferred Mortgage dated May 29, 2009, in the form attached hereto as Exhibit "C".

"Mortgage(s)" means (i) the Deed of Trust and Security Agreement with Assignment of Leases, Rents and Agreements, in the form attached hereto as Exhibit "D", executed by Borrowers, in recordable form, to be recorded against the Emerald Bay Property ("Mortgage One"); (ii) any and all such documents, instruments or letters as are required or deemed necessary by Lender (in Lender's sole and absolute discretion) or applicable governmental agencies or title companies to evidence and perfect a first priority lien in favor of Lender against the Cabo Property, executed by Borrowers, in recordable form, to be recorded against the Cabo Property ("Mortgage Two"); (iii) Preferred Ship Mortgage, in the form attached hereto as Exhibit "E", executed by Spearfish, in recordable form, with respect to the Vessel, and to be recorded in the Office of the Deputy Commissioner of Maritime Affairs of the Republic of the Marshall Islands at Ft. Lauderdale, Florida, USA ("Mortgage Three"); and (iv) any other deed to secure debt, executed by any Borrower or Borrowers and delivered to Lender as security for the Loan, as the same may be modified, supplemented or amended. Mortgages One, Two, and Three, together with any other deed to secure debt delivered by Borrowers to Lender shall be collectively referred to herein as the "Mortgages" and singularly as "Mortgage."

"Note" means and refers to the Promissory Note Secured by Deeds of Trust evidencing the Loan, dated as of the date hereof, made by Borrowers to Lender, as such promissory notes may be modified, amended, supplemented, extended or consolidated in writing, and any note(s) issued in exchange therefore or in replacement thereof.

"Person" means any individual, corporation, limited liability company, partnership, joint venture, estate, trust, unincorporated association, or any other Entity, any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"Property" means, individually, the Emerald Bay Property and the Cabo Property.

"Properties" means, collectively, the Emerald Bay Property and the Cabo Property.

"Rating Agency(ies)" shall mean each statistical rating agency that has assigned a rating to any participation interest, certificate or security issued in connection with a Securitization Transaction.

"Second Disbursement" has the meaning set forth in Section 2.1(B)(ii) below.

"Second Disbursement Closing Date" means the date on which a first priority lien in favor of Lender against the Cabo Property is created; provided, however, in the event the Second Disbursement Closing Date fails to occur, through no fault of Lender, within two (2) weeks following the First Disbursement Closing Date, then such failure shall be deemed an Event of Default, unless Lender has agreed, in writing, to extend such two (2) week period.

"Securitization Transaction" has the meaning set forth in Section 5.5(A) of this Agreement.

712480                                                5

"SunRanch Release of Ship Mortgage" means that certain Release of Mortgage executed by SunRanch in favor of Spearfish, with respect to the Vessel, in the form attached hereto as Exhibit "F".

"Taking" has the meaning provided in the Mortgages.

"Tax and Insurance Escrow" shall have the meaning set forth in Section 5.2(C) of this Agreement.

"Title Company" shall mean Chicago Title Insurance Company, Attn: Ken Cyr, with offices located at 2365 Northside Drive, Suite 500, San Diego, CA 92108.

"UCC" means, with respect to any Collateral, the Uniform Commercial Code in effect in the jurisdiction in which the relevant Collateral is located.

"Use and Charter Agreement" means that certain Yacht Use Agreement entered into as of June 30, 2010 by and between Spearfish and Henry T. Nicholas regarding the use of the Vessel.

"Vessel" means that certain vessel owned by Spearfish and known as "Triton", documented under the laws of the Republic of the Marshall Islands, Official No. 70070, which vessel is more particularly described in Mortgage Three.

"Vessel Repairs Escrow" has the meaning set forth in Section 5.2(B) of this Agreement.

ARTICLE II
GENERAL TERMS

Section 2.1    Loan Commitment; Disbursement to Borrowers; Fees & Costs; Prepayment.

(A)    The Loan.  Subject to, and upon the terms and conditions set forth herein, Lender hereby agrees to make the Loan to Borrowers, in the Loan Amount, to be disbursed to Borrowers as set forth in Section 2.1(B) below.  The Loan will mature on the Maturity Date or the Extended Maturity Date, if applicable.

(B)    Disbursement of Loan Amount to Borrowers.

(i)    First Disbursement.  On the First Disbursement Closing Date, and provided Borrowers have satisfied the Conditions Precedent to the First Disbursement, Lender shall disburse FIFTEEN MILLION FIVE HUNDRED THOUSAND DOLLARS ($15,500,000) ("First Disbursement") to Borrowers.

(ii)    Second Disbursement.  On the Second Disbursement Closing Date, and provided Borrowers have satisfied the Conditions Precedent to the Second Disbursement, Lender shall disburse FIVE MILLION FIVE HUNDRED THOUSAND DOLLARS ($5,500,000) ("Second Disbursement") to Borrowers as follows:

       (1)    FIVE MILLION DOLLARS ($5,000,000) to Borrowers; and

       (2)    FIVE HUNDRED THOUSAND DOLLARS ($500,000) to be withheld by Lender, for use by Borrowers and Lender, for the maintenance and repair of the Vessel ("Yacht Repairs Escrow"), as more particularly described in Section 5.2(B) below.

       (C)    Loan/Closing Fees & Costs.  On the First Disbursement Closing Date and Second Disbursement Date, Borrowers shall pay, through Escrow Holder, all closing fees and costs associated with the First Disbursement and Second Disbursement, respectively, including, without limitation: (a) all Escrow Holder's fees, costs, and recording charges; (b) the cost of the Emerald Bay Property Title Insurance Policy and the Cabo Property Title Insurance Policy; (c) Lender's fees and costs, including the attorneys' fees of Glaser, Weil, Fink, Jacobs, Howard & Shapiro, Cuesta Campos y Asociados, S.C., and Wright & L'Estrange, the fees of WTAS, LLC, and all appraisal fees and costs, including the fees incurred by Patton Marine, Inc., incurred by Lender in connection with the due diligence and preparation and negotiation of all documentation for, and the consummation of, the transactions contemplated by this Agreement; and (d) any and all other fees and costs incurred by Lender and/or Borrowers in connection with the transactions contemplated by this Agreement.  If either, or both, the First Disbursement Closing Date or Second Disbursement Closing Date fails to occur for any reason, then Borrowers shall pall for all the fees and costs set forth in this Section 2.1(C).

       (D)    The Note and Other Loan Documents.  The Loan shall be evidenced by the Note (made in the Loan Amount) and evidenced or secured by the other Loan Documents executed and delivered in connection with the Loan.  The Note shall bear interest as provided in the Note, and shall be subject to the payment of interest and the repayment and prepayment of the Indebtedness as provided for herein and therein.  The Note shall be entitled to the benefits of this Agreement and shall be secured by the Mortgages and the other Loan Documents given to further secure the Loan.

Section 2.2    Payment of Principal and Interest.  The outstanding principal balance of the Loan and interest thereon shall be due and payable pursuant to the Note.

Section 2.3    Loan Prepayment.  Borrowers shall have the right to prepay, in whole or in part, the unpaid principal balance of the Note, together with accrued interest and any fees and costs under the Loan Documents pursuant to the terms of the Note.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

In order to induce Lender to make the Loan to Borrowers, and in consideration of Lender's reliance thereon, Borrowers hereby represents, warrants and covenants to Lender, as follows:

Section 3.1    Representations and Warranties of Borrowers.  Each Borrower represents and warrants to Lender that:

(A)   Organization. Each Borrower is and, until the Indebtedness is paid in full, will continue to (i) be a duly organized and validly existing Entity in good standing under the laws of the state of its formation; (ii) if applicable, be duly qualified as a foreign Entity in each jurisdiction in which the nature of its business, the Properties or any of the other Collateral makes such qualification necessary or desirable; (iii) have the requisite Entity power and authority to carry on its business as now being conducted; (iv) have the requisite Entity power to execute, deliver and perform its obligations under the Loan Documents; and (vi) comply with the provisions of all of its organizational documents and the Legal Requirements of the state of its formation.

(B)   Authorization. The execution, delivery and performance of the Loan Documents and the borrowing evidenced by the Note: (i) are within the applicable powers of each Borrower and each other party to the Loan Documents (other than Lender); (ii) have been authorized by all requisite action; (iii) have received all necessary approvals and consents, corporate, governmental or otherwise; (iv) will not violate, conflict with, result in a breach of or constitute (with notice or lapse of time or both) a default under any provision of law, any order or judgment of any court or Governmental Authority (collectively "Legal Requirements"), the articles of incorporation, by-laws, partnership, operating or trust agreement, or other governing instrument of each Borrower, or any indenture, agreement or other instrument to which each Borrower is a party or by which each such party or any of their respective assets or the Properties or Vessel is or may be bound or affected; (v) will not result in the creation or imposition of any lien, charge or encumbrance whatsoever upon any of such party's assets, except the liens and security interests created by the Loan Documents; and (vi) will not require any authorization or license from, or any filing with, any Governmental Authority or other body (except for the recordation of the Mortgage and any other Loan Document intended to be recorded in the appropriate land records in California or Mexico, as applicable, and except for UCC filings relating to the security interest created hereby).

(C)   Enforceability. The Loan Documents constitute the legal, valid and binding obligations of each Borrower, enforceable against each such party in accordance with their respective terms, except as may be limited by: (i) bankruptcy, insolvency, reorganization or other similar laws affecting the rights of creditors generally; and (ii) general principles of equity (regardless of whether considered in a proceeding in equity or at law). Such Loan Documents are, as of the date hereof, not subject to any right of rescission, set-offs, counterclaim or defense by any Borrower, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Note, the Mortgages, or such other Loan Documents, or the exercise of any right thereunder, render the Mortgages unenforceable against any Borrower, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense by any Borrower, including the defense of usury, and no Borrower has asserted any right of rescission, set-off, counterclaim or defense with respect thereto.

(D)   Financial Condition. With respect to each Borrower's financial condition, each: (i) Borrower is solvent and no bankruptcy, reorganization, insolvency or similar proceeding under any state or federal law with respect to the Borrower has been initiated; (ii) Borrower has not entered into this Loan transaction with the intent to hinder, delay or

712480                                        8

defraud any creditor; (iii) Borrower has received reasonably equivalent value for the making of the Loan; and (iv) Borrower has no known contingent liabilities which could have a Material Adverse Effect on such Borrower's financial condition.

(E)   Litigation.  There are no actions, suits, arbitrations, or proceedings at law or in equity by or before any Governmental Authority now pending and served or, to the knowledge of each Borrower, threatened against any Borrower, the Properties, or the Vessel that would have a Material Adverse Effect.

(F)   Not Foreign Person.  Except for Spearfish and Cachal, each Borrower is not a "foreign person" within the meaning of §1445(f)(3) of the Internal Revenue Code of 1986, as amended, and as it maybe further amended from time to time, any successor statutes thereto, together with applicable U.S. Department of Treasury regulations issued pursuant thereto in temporary or final form (the "Code").

(G)   Investment Company Act; Public Utility Holding Company Act.  Each Borrower is not and, until the Indebtedness is paid in full, each Borrower will not be (i) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended; (ii) a "holding company" or a "subsidiary company" of a "holding company" or an "affiliate" of either a "holding company" or a "subsidiary company" within the meaning of the Public Utility Holding Company Act of 1935, as amended; or (iii) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

(H)   Agreements.  Each Borrower is not a party to any agreement or instrument or subject to any restriction which is likely to have a Material Adverse Effect.  Each Borrower is not in default in any respect in the performance, observance or fulfillment of any of the material obligations, covenants or conditions contained in any indenture, or agreement to which it is a party or by which any Borrower, any Property, or the Vessel is bound.

(I)   No Defaults.  No default or Event of Default exists under or with respect to any Loan Document.

(J)   Labor Matters.  Each Borrower is not a party to any collective bargaining agreements.

(K)   Intellectual Property.  All trademarks, trade names and service marks that each Borrower owns or has pending, if any, or under which each Borrower is licensed, if any, are in good standing and uncontested.  There is no right by another Person, under any trademark, trade name or service mark necessary to the business of any Borrower as presently conducted.  To the best of each Borrower's knowledge, each Borrower has not infringed, is not infringing, and has not received notice of infringement with respect to asserted trademarks, trade names and service marks of others.  To each Borrower's knowledge, there is no infringement by others of trademarks, trade names and service marks of any Borrower.

712480                                    9

(L)     Loan Terms.  The terms set forth in this Note and the Loan Documents are fair and reasonable in light of the risks and circumstances under which Lender is extending this Loan, and each Borrower has been provided the opportunity to review such terms with its legal counsel.

(M)     Other Loans.  There does not exist a default or breach under the Chevy Chase Loan, and all sums due and payable under the Chevy Chase Loan, including principal and interest, have been paid.  The beneficiary statement for the Chevy Chase loan attached hereto as Exhibit "G" is true and correct.

(N)     Anti-Terrorism Laws.  None of the Borrowers, or any of their respective Affiliates is in violation of any Anti-Terrorism Law or engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law. None of the Borrowers or any of their respective Affiliates is any of the following (each a "Blocked Person"):(a) a Person that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224; (b) a Person owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224; (c) a Person or entity with which any bank or other financial institution is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law; (d) a Person or entity that commits, threatens or conspires to commit or supports "terrorism" as defined in Executive Order No. 13224;(e) a Person or entity that is named as a "specially designated national" on the most current list published by the Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC") at its official website or any replacement website or other replacement official publication of such list; or (f) a Person who is affiliated with a Person listed above. None of the Borrowers or any of their respective Affiliates (i) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person or (ii) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224. None of the Borrowers or any of their respective Affiliates is in violation of any rules or regulations promulgated by OFAC or of any economic or trade sanctions or engages in any transaction administered and enforced by OFAC or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any rules or regulations promulgated by OFAC.

Section 3.2     Representations and Warranties Relating to the Properties and Vessel.  Each Borrower represents and warrants to Lender that:

(A)     Title Issues.

(i)     There are no liens, encumbrances or interests, whether or not of record, affecting the Emerald Bay Property other than the Emerald Bay Property Permitted Encumbrances.

712480                                    10

(ii)    There are no liens, encumbrances or interests, whether or not of record, affecting the Cabo Property.

(iii)   There are no liens, encumbrances or interests, whether or not of record, affecting the Vessel.

(iv)    Each Borrower owns good, indefeasible, marketable and insurable title to its respective Property(ies) and/or Vessel, free and clear of all liens, other than the Emerald Bay Property Permitted Encumbrances, and until the Indebtedness is paid in full, no Borrower shall permit any liens (other than the Emerald Bay Property Permitted Encumbrances, any title matters or exceptions approved in writing by Lender subsequent to the date hereof, taxes which are not yet due or delinquent, or any lien contested by Borrowers in accordance with and subject to the Mortgages) to attach to the Properties or the Vessel. Each Borrower has the right to mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey the Property(ies) and Vessel owned by such Borrower to Lender. There are not now, and until the Indebtedness is paid in full, there will not be any outstanding options or agreements to purchase, or rights of first refusal affecting, any of the Properties or the Vessel. The Emerald Bay Property Permitted Encumbrances do not and, until the Indebtedness is paid in full, will not materially and adversely affect (a) the ability of any Borrower to pay in full all sums due under the Note or any of its other obligations in a timely manner (b) the use of the Properties or the Vessel for the use currently being made thereof, the operation on the Properties or the Vessel as currently being operated, or (c) the value or marketability of the Properties or the Vessel.

(v)     No Taking has been commenced or, to each Borrower's knowledge, is contemplated with respect to all or any portion of the Properties or the Vessel or for the relocation of roadways providing access to the Properties.

(vi)    All costs and expenses of any and all labor, materials, supplies and equipment to be used in the construction of the Improvements will be paid in full as construction is completed. Each Borrower has paid in full for, and is the owner of all present furnishings, fixtures and equipment used in connection with, the operation of its respective Properties and the Vessel, free and clear of any and all security interests, liens or encumbrances, except the liens and security interests created by, or permitted under, the Loan Documents securing the Loan.

(vii)   Each Property is and, until the Indebtedness is paid in full, will be assessed for real estate tax purposes as one or more wholly independent tax lot or lots, separate from any adjoining land or Improvements not constituting a part of such parcels or lots, and no other land or Improvements is and, until the Indebtedness is paid in full, will be assessed and taxed together with the Properties or any portion thereof.

(viii)  Except as disclosed in the Emerald Bay Title Insurance Policy and the Cabo Property Title Insurance Policy, there are no pending or, to the

712480

11

knowledge of any Borrower, proposed special or other assessments for public improvements or otherwise affecting the Properties, nor, to the knowledge of any Borrower, are there any contemplated improvements to the Properties that may result in such special or other assessments and until the Indebtedness is paid in full, no Borrower shall not permit any taxes, assessments, fees, water, sewer or other charges by Governmental Authorities relating to the Properties to become delinquent.

(ix)     The Mortgages create valid and enforceable mortgage liens on the Properties and the Vessel, as applicable, as security for the repayment of the Indebtedness, subject only to the Emerald Bay Property Permitted Encumbrances, any title matters or exceptions approved in writing by Lender subsequent to the date hereof, and taxes which are not yet due or delinquent. Each Loan Document securing the Loan establishes and creates a valid, effective and enforceable lien on and a security interest in, or claim to, the rights and property described therein. All personal property and fixtures covered by each such Loan Document are subject to a UCC financing statement filed and/or recorded, as appropriate, or irrevocably delivered to an authorized agent of the Title Company for such recordation or filing, in all places necessary to perfect a valid lien of the priority designated in the Mortgage with respect to the rights and property that are the subject of each such Loan Document to the extent governed by the UCC.

(B)     Status of the Properties.

(i)     No portion of the Improvements is located in an area identified by the Secretary of Housing and Urban Development or the Federal Emergency Management Agency or any successor thereto as an area having special flood or seismic hazards, or, if now or hereafter located within any such area, Borrowers have obtained and will maintain the applicable flood hazard and/or earthquake insurance prescribed in the Mortgages.

(ii)     Borrowers have obtained, and will obtain, with respect to the land and Improvements and any Improvements which may be constructed on the Properties, until the Indebtedness is paid in full, all necessary certificates, licenses, permits and other approvals, governmental and otherwise, necessary for the operation or improvement of any of the Properties; and the conduct of its business and all required zoning, building code, land use, environmental and other similar permits or approvals, all of which are and, until the Indebtedness is paid in full, will remain in full force and effect and not subject to revocation, suspension, forfeiture or modification.

(iii)     As of the date hereof, and until the Indebtedness is paid in full: (a) the Properties and the present and contemplated use, occupancy, operation and construction thereof are and will remain in full compliance with all covenants and restrictions and all applicable licenses, permits and other approvals and all zoning ordinances, building codes, land use and Environmental Laws and other similar laws; (b) none of the Improvements lie or will lie outside of the

boundaries of the Properties or the applicable building restriction lines to the extent that such would have a Material Adverse Effect; (c) no improvements on adjoining properties (now or will) materially encroach upon the Properties.

(iv)     The Properties are and will be as to their present and contemplated construction and use, served by all utilities required for the current or contemplated use thereof. All utility service is and will be provided by public utilities, and each Property has accepted or is equipped to accept such utility services. Each Property is or will be served by public water and sewer systems. All of the foregoing utilities are or will be located in the public right-of-way abutting each Property, and all such utilities are or will be connected so as to serve each Property either (a) without passing over other Property or, (b) if such utilities pass over other Property, they will or shall do so pursuant to valid easements.

(v)     All public roads and streets necessary for service of and access to each Property for the current or contemplated use thereof have or will be completed, are or will be serviceable and are or will be physically and legally open for use by the public.

(vi)     Each Property is free from (a) damage caused by fire or other casualty; and (b) as to present Improvements, material structural defects; and all building systems contained therein are in good working order in all material respects, subject to ordinary wear and tear.

(vii)     Any and all liquid and solid waste disposal, septic and sewer systems located or to be located on the Property is or will be in a good and safe condition and repair and in compliance with all Legal Requirements.

(C)     Appraisal.  If required by law, if an Event of Default occurs and is continuing, or as otherwise agreed to by the Parties, Lender shall have the right to order appraisals of each Property or the Vessel from time to time from an appraiser selected by Lender, which appraisal shall be satisfactory to Lender in all material respects.  Borrower agrees to pay all costs for all appraisals ordered by Lender pursuant to this paragraph.

(D)     Updated Surveys.   In the event any Borrower commences any construction, earthwork, and/or site preparation, Borrowers shall furnish to Lender, promptly following completion of the foundations of any improvements, one (1) copy of a certified survey of the applicable Property, certifying that the improvements are constructed within the property lines of such Property, do not encroach upon any easement affecting such Property and comply with all applicable governmental requirements relating to the location of the Improvements, along with a letter from the Title Company confirming the acceptability of said survey.

Section 3.3     Full and Accurate Disclosure.  No statement of fact made by or on behalf of any Borrower in the Loan Documents, or in any other document or certificate delivered to Lender by any Borrower, contains any untrue statement of a material fact or omits to state any

material fact necessary to make statements contained herein or therein not misleading. There is no fact presently known to any Borrower which has not been disclosed to Lender, written or oral, which will have a Material Adverse Effect, nor as far as any Borrower can foresee, might have a Material Adverse Effect.

Section 3.4    Negative Covenants.   Without Lender's prior written consent, in its sole and absolute discretion, each Borrower shall not:

(A)    liquidate or dissolve Borrower's business;

(B)    enter into any consolidation, merger, pool, joint venture, syndicate or other combination;

(C)    enter into any sale and leaseback agreement covering any fixed or capital assets of the Borrower or any of the Properties or the Vessel;

(D)    sell or dispose of any assets at less than fair market value;

(E)    allow liens on now owned or hereafter acquired property rights or interests of Borrower other than the: (i) real property taxes not yet due and payable; (ii) liens in favor of Lender; or (iii) liens approved by Lender in writing as of the date of this Agreement;

(F)    transfer or sell any rights or interest in any of the Properties or the Vessel or other assets of Borrower to a trust or otherwise; or

(G)    commence any construction, earthwork and/or site preparation on any Property.

Section 3.5    Survival of Representations and Warranties.   Each Borrower agrees that (i) all of the representations and warranties of Borrowers set forth in this Agreement, in the other Loan Documents delivered as of the date hereof are made as of the date hereof (except as expressly otherwise provided); and (ii) all representations, warranties and covenants made by Borrowers shall survive the delivery of the Note and Loan Documents and continue for so long as any Indebtedness remains owing.

ARTICLE IV
DEFAULTS AND REMEDIES

Section 4.1    Events of Default.   Borrowers will be in default under this Agreement upon the occurrence of any one or more of the following events ("Events of Default"):

(A)    Borrowers fail to make any payment of principal or interest when due, or deposit funds demanded by Lender, pursuant to and under this Agreement, the Note or any other Loan Document;

(B)    The Conditions Precedent to Second Disbursement are not satisfied;

(C)     Any Borrower fails to comply with, or perform when due, any covenant, condition, agreement or provision of such Borrower contained in this Agreement, the Note, the Mortgages, or any other Loan Document;

(D)     Under any of the Loan Documents, an Event of Default (as defined in that Loan Document) occurs and is continuing, including any default under any Mortgage or any instrument executed and delivered in connection with the Loan;

(E)     Any Borrower becomes insolvent or the subject of any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships, or makes a general assignment for the benefit of creditors, or petitions or applies to any tribunal for the appointment of any receiver, custodian, liquidator or trustee of or for it or any substantial part of its property or assets; provided, however, with respect to any involuntary proceeding, such Borrower shall have sixty (60) days to have such proceeding dismissed before such event shall constitute an Insolvency Proceeding or an Event of Default hereunder ("Insolvency Proceeding");

(F)     A writ of execution or attachment or any similar process is issued or levied against all or any part of the Collateral described in the Mortgages or any interest therein, or any judgment is entered against any Borrower which becomes a lien on such Collateral or any part thereof or interest therein, and such execution, attachment or similar process or judgment is not released, vacated or stayed within thirty (30) days after its issuance, levy or entry;

(G)     There are any Sales or Encumbrances (as these terms are defined in Mortgage One) in violation of the terms and conditions of Mortgage One;

(H)     Any Borrower dissolves, terminates or liquidates or, if a corporation or company, fails to preserve and maintain its corporate or company existence in the jurisdiction of its incorporation, organization or formation;

(I)     Any Borrower files a UCC Termination Statement effecting any UCC Financing Statement in favor of Lender;

(J)     Any representation or warranty made or given in any of the Loan Documents proves at any time to be false, incomplete or misleading in any material respect;

(K)     The Lender fails to have an enforceable lien on, or security interest in, any Property or the Vessel;

(L)     A lawsuit or suits are filed against any Borrower, or a judgment or judgments are entered against any Borrower, or any government authority takes action that materially and adversely affects any Borrower's intended use of the Properties or the Vessel or any Borrower's ability to repay the Loan;

712480                                              15

(M)   There is a material and adverse change in any Borrower's financial condition, or an event or condition that materially impairs such Borrower's intended use of the Properties or the Vessel; or

(N)   The occurrence of any event that would constitute a default under any other obligation of Borrowers to Lender made in connection with or relating to any of the Properties or the Vessel, whether now existing or hereafter arising.

Section 4.2   Remedies.  Upon the occurrence of an Event of Default, all or any one or more of the rights, powers and other remedies available to Lender against Borrowers under this Agreement or under any Loan Document, or at law or in equity may be exercised by Lender at any time and from time to time, without notice or demand, whether or not all or any portion of the Indebtedness shall be declared due and payable, and whether or not Lender shall have commenced any foreclosure proceeding or other action for the enforcement of its rights and remedies under any of the Loan Documents with respect to any of the Properties or the Vessel or all or any portion of the Collateral.  Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singly, successively, together or otherwise, at such time and in such order as Lender may determine in its sole discretion, to the fullest extent permitted by law, without impairing or otherwise affecting the other rights and remedies of Lender permitted by law, equity or contract or as set forth herein, or in any of the Loan Documents.

ARTICLE V
SPECIAL PROVISIONS

Section 5.1   Financial Reporting.   Each Borrower shall keep adequate books and records of account in accordance with generally accepted accounting principles or a tax basis of accounting or in accordance with other methods of accounting acceptable to Lender in its sole and absolute discretion, consistently applied ("Approved Accounting Method") and shall furnish to Lender the following, which shall be prepared, dated and certified by each Borrower as true, correct and complete in the form required by Lender, unless otherwise specified below:

(A)   Within 15 days following Lender's request:  (i) a detailed annual budget for the current fiscal year, in form and content reasonably acceptable to Lender, to include, without limitation, a comparison showing corresponding information for each Borrower's preceding fiscal year; (ii) a copy of each Borrower's federal income tax returns for the immediately preceding fiscal year; (iii) detailed annual financial reports for each Borrower for the immediately preceding fiscal year; and

(B)   Such other financial statements, and such other information and reports as may, from time to time, be reasonably required by Lender.

Section 5.2   Vessel; Repairs; Tax and Insurance Escrow

(A)   Use of Vessel. Lender shall have the right to use the Vessel as provided in the Use and Charter Agreement.

712480                                                    16

(B)   Vessel Repairs Escrow.   The funds held by Lender in the Vessel Repairs Escrow pursuant to Section 2.1(B)(i)(2) above, shall be used by Lender for the maintenance, repair and upgrade of the Vessel, as determined by Lender, in Lender's sole and absolute discretion.  Borrowers shall preserve, repair and maintain the Vessel to high yacht quality standards in a good seaworthy condition with and all machinery, equipment, electrical and electronic equipment in good operating condition, working order and repair, and shall submit to Lender invoices, and any other documentation requested by Lender, describing in sufficient detail the maintenance, repairs and upgrades (and associated cost) performed to the Vessel.   Provided Lender has approved such maintenance and/or repairs and/or upgrades (and associated cost), Lender shall pay the invoices using the funds in the Vessel Repairs Escrow.  Lender may use the proceeds in the Vessel Repairs Escrow, in Lender's sole and absolute discretion, without further authorization on the part of Borrowers, for maintenance, repairs and upgrades of the Vessel.   In the event that the Vessel Repairs Escrow is insufficient, in Lender's sole opinion and judgment, to pay for the maintenance, repairs and upgrades of the Vessel, Borrowers shall, within ten (10) calendar days after demand by Lender, deposit with Lender additional funds for the Vessel Repairs Escrow, in such amounts as Lender may designate, in Lender's sole opinion and judgment.  Borrowers acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the Vessel Repairs Escrow for maintenance, repairs and upgrades of the Vessel.

(C)   Tax and Insurance Escrow.   Upon an Event of Default, Borrowers shall deposit with and pay to Lender on each payment date specified in the Note, sums calculated by Lender for payment of: (i) the estimated taxes and assessments assessed or levied against each Property and the Vessel, and (ii) following an Event of Default, on each payment date specified in the Note, the estimated premiums for insurance required by the Loan Documents, excluding commercially general liability insurance (collectively, the "Tax and Insurance Escrows").  Lender shall use the Tax and Insurance Escrows to pay the taxes, assessments and premiums when the same become due.  Borrowers agree that they are liable for any taxes, assessments and/or insurance premiums and Borrowers agrees to make any such payments when the same become due.  Borrowers shall procure and deliver to Lender, in advance, statements for such charges.  If the total payments made by Borrowers under this Section exceed the amount of payments actually made by Lender for taxes, assessments and insurance premiums, such excess shall be credited by Lender on subsequent deposits to be made by Borrowers.  If however, the Tax and Insurance Escrows are insufficient to pay the taxes, assessments and insurance premiums when the same shall be due and payable, Borrowers will pay to Lender any amount necessary to make up the deficiency, within three (3) business days after Lender has notified Borrowers in writing of such deficiency, but in all events prior to the date when payment of such taxes, assessments and insurance premiums shall be delinquent.  If at any time Borrowers shall tender to Lender, in accordance with the provisions of the Note and the other Loan Documents, full payment of the entire Indebtedness, Lender shall, in computing the amount of such Indebtedness, credit to the account of Borrowers any balance remaining in the Tax and Insurance Escrow.  If there is an Event of Default resulting in a public sale of any Property or the Vessel, or if Lender otherwise acquires such Property or Vessel after an Event of Default, Lender shall apply, at the time of commencement of such proceedings, or at the time such Property is otherwise acquired,

the then remaining balance in the Tax and Insurance Escrows as a credit toward any delinquent or accrued taxes and then, in such priority as Lender elects, to the other Indebtedness.

Section 5.3     Security Agreement

(A)     Pledge of Accounts.     To secure the full and punctual payment and performance of all of the Indebtedness, Borrowers hereby assigns, conveys, pledges and transfers to Lender and grants to Lender a first and continuing lien on and security interest in and to all of Borrowers' right, title and interest in (i) the Vessel Repairs Escrow and Tax and Insurance Escrow, (ii) all other amounts required under the Loan Documents to be deposited with and/or held by Lender, including but not limited to insurance proceeds and proceeds payable to Borrower pursuant to a Taking; and (iii) to the extent not covered by the foregoing clauses, all products and proceeds of any or all of the foregoing (collectively, the "Account Collateral"). Borrowers agree that Account Collateral shall be secured by one or more Financing Statements. Borrowers agree that the Account Collateral shall not constitute any deposit or account of the Borrowers or monies to which the Borrowers are entitled upon demand, or upon the mere passage of time, or sums to which Borrowers are entitled to any interest or crediting of interest by virtue of Lender's mere possession of such deposits. Lender shall not be required to segregate any Account Collateral and may hold such deposits in its general account or any other account and may commingle such deposits with any other moneys of Lender or moneys which Lender is holding on behalf of any other person or entity.

(B)     Lender Appointed Attorney-In-Fact.     Each Borrower hereby irrevocably constitutes and appoints Lender as each Borrower's true and lawful attorney-in-fact, with full power of substitution, at any time after the occurrence of an Event of Default to execute, acknowledge and deliver any instruments and to exercise and enforce every right, power, remedy, option and privilege of each Borrower with respect to the Account Collateral, and do in the name, place and stead of each Borrower, all such acts, things and deeds for and on behalf of and in the name of each Borrower with respect to the Account Collateral, which each Borrower could or might do, or which Lender may deem necessary or desirable to more fully vest in Lender the rights and remedies provided for herein with respect to the Account Collateral and to accomplish the purposes of this Agreement. The foregoing powers of attorney are irrevocable and coupled with an interest. Beyond the exercise of reasonable care in the custody thereof Lender shall not have any duty as to any Account Collateral or any income thereon in Lender's possession or control or in the possession or control of any agents of Lender, or the preservation of rights against any Person or otherwise with respect thereto, it being understood that so long as Lender exercises reasonable care, Lender shall not be liable or responsible for any loss, damage or diminution in value by reason of the act or omission of Lender, or Lender's agents, employees or bailees.

Section 5.4     Transfer of Loan by Borrowers.     Borrowers, whether individually or collectively, shall not transfer all or any portion of the Properties or the Vessel nor shall any of the Interest Owners transfer all or any portion of their equity held in any Borrower to another Person(s). Borrowers, whether individually or collectively, shall have no right to assign their

712480                                                18

obligations under this Agreement or any of the Loan Documents without Lender's prior written consent, which consent may be withheld in Lender's sole and absolute discretion. Lender may, at any time, sell, transfer or assign this Agreement and the other Loan Documents.

Section 5.5    Transfer of Loan by Lender.

(A)    Lender may, at any time, sell, transfer or assign the Note, the other Loan Documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (each, as designated by Lender, a "Securitization Transaction"). Lender may forward to each purchaser, transferee, assignee, servicer, participant, investor in such Securitization Transaction or any Rating Agency rating such Securitization Transaction (collectively, the "Investor") and each prospective Investor and the advisor of each of the foregoing, all documents and information which Lender now has or may hereafter acquire relating to the Indebtedness and to any Borrower, each Property, and the Vessel, whether furnished by any Borrower or otherwise, as Lender determines necessary or desirable.

(B)    Each Borrower agrees that it shall cooperate with Lender and use Borrower's reasonable efforts to facilitate the consummation of any Securitization Transaction, including, without limitation, by: (i) promptly and reasonably providing such information as may be requested in connection with the preparation of any documentation related to such Securitization Transaction; (ii) providing within 10 days of Lender's request the reports described in Section 5.1.(B) above and monthly income information for each of the preceding 12 months; and (iii) permitting Lender, or its designees to inspect each Property or the Vessel during normal business hours upon advance notice from Lender requesting same and to discuss with each Borrower or its agents information and documentation with respect to the operation and management of each Property and the Vessel. Lender shall make reasonable efforts to ensure that each Borrower's and any lessee's business operations are not disrupted.

(C)    Lender agrees that any costs and expenses incurred by Lender as a result of a Securitization Transaction under this Agreement shall be the responsibility of and paid for by Lender.

Section 5.6    Insurance Requirements. Borrowers shall at all times keep or cause to be kept in full force and effect the insurance required by the Mortgages.

Section 5.7    USA Patriot Act Notification. The following notification is provided to Borrowers pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product.

712480                                     19

What this means for Borrowers: When Borrowers open an account, if Borrowers are individual, Lender will ask for each Borrower's name, taxpayer identification number, residential address, date of birth, and other information that will allow Lender to identify each Borrower and, if each Borrower is not an individual, Lender will ask for each Borrower's name, taxpayer identification number, business address, and other information that will allow Lender to identify each Borrower. Lender may also ask, if any Borrower is an individual, to see such Borrower's driver's license or other identifying documents and, if any Borrower is not an individual, to see such Borrower's legal organizational documents or other identifying documents.

Section 5.8    Notice.    All notices, demands, requests and other communications required hereunder shall be in writing and shall be deemed to have been properly given if personally delivered, if sent by United States certified or registered mail, return receipt requested, postage prepaid, or overnight delivery service (e.g. Federal Express), addressed to the party for whom it is intended at its address set forth below:

If to Borrowers:

FBP Investments, LP
270 Newport Center Dr Suite 200
Newport Beach CA 92660
Attention: James Baldwin
Telephone: (949) 644-4202
Facsimile: (949) 644-7856

If to Lender:

SEA PRESTIGIO, LLC
15 Enterprise, Suite 550
Aliso Viejo, CA 92656
Attention: Emilio F. Gonzalez, Esq.
Telephone: (949) 448-4321
Facsimile: (949) 448-4330

with a copy to:

GLASER, WEIL, FINK, JACOBS,
HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Attention: Saul Breskal, Esq.
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

712480                                    20

If to Title Company:

      CHICAGO TITLE COMPANY
      2365 Northside Drive, Suite 500
      San Diego, CA 92108
      Attention: Ken Cyr
      Telephone: (619) 521-3555
      Facsimile: (619) 521-3608

If to Escrow Holder:

      CHICAGO TITLE COMPANY
      4041 Mac Arthur Boulevard, Suite 490
      Newport Beach, California 92660
      Attention: Lorri Beasley
      Telephone: (949) 724-3114
      Facsimile: (949) 724-3186

Notice shall be deemed given upon receipt.  Any party may designate a change of address by written notice to the others, given at least ten (10) days before such change of address is to become effective.

## ARTICLE VI
## MISCELLANEOUS

Section 6.1    No Liability of Lender.  Each Borrower acknowledges and agrees that Lender's acceptance or approval of any action of any Borrower or any other matter requiring Lender's approval, satisfaction, acceptance or consent pursuant to this Agreement, or the other Loan Documents, including any report certificate, financial statement, appraisal or insurance policy, will not be deemed a warranty or representation by Lender of the sufficiency, legality, effectiveness or other import or effect of such matter.

Section 6.2    No Third Parties Benefited.  This Agreement is between and for the sole benefit of Borrowers and Lender, and Lender's successors and assigns, and creates no rights whatsoever in favor of any other Person and no other Person will have any rights to rely hereon.

Section 6.3    Time is of the Essence.  Time is of the essence with respect to each of Borrowers' obligations under this Agreement.  The waiver by Lender of any default or Event of Default under this Agreement will not be deemed a waiver of any subsequent default or Event of Default.

Section 6.4    Binding Effect.  This Agreement will be binding upon, and inure to the benefit of, Borrower and Lender and their respective heirs, executors, administrators, successors and assigns.

712480

Section 6.5    Execution in Counterparts.    This Agreement may be executed in counterparts, each of which shall be deemed an original, and such counterparts when taken together shall constitute but one agreement.

Section 6.6    Integration; Amendments; Consents.    This Agreement, together with the other Loan Documents, constitutes the entire agreement of the parties with respect to the Loan, and supersedes any prior negotiations or agreements, and supersedes any loan application submitted by any Borrower to Lender and any term sheet or commitment letter for the Loan delivered by Lender to Borrowers.  No modification, extension, discharge, termination or waiver of any provision of this Agreement or the other Loan Documents will be effective unless in writing, signed by the Person against whom enforcement is sought, and will be effective only in the specific instance for which it is given.

Section 6.7    Governing Law.    Unless otherwise agreed to by the Parties, the Loan shall be deemed to have been made in the State of California, and this Agreement and the other Loan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without regard to the conflicts of laws principles.  Borrowers and Lender each unconditionally and irrevocably waive(s) any right to assert that the law of any other jurisdiction governs this Agreement or any of the other Loan Documents.

Section 6.8    Jurisdiction.  Each Borrower irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Agreement, the Note, the Mortgages, or the other Loan Documents shall be brought in the state or federal courts in Orange County, California, (b) submits to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which they may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  Each Borrower irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to Borrowers at the address provided in this Agreement.  Nothing in this Section 6.8 shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any suit, action or proceeding against any Borrower or any Borrower's assets in the courts of any other jurisdiction.

Section 6.9    Severability of Provisions.  If a court of competent jurisdiction finds any provision of this Agreement or the other Loan Documents to be invalid or unenforceable as to any Person or circumstance or in any other state, such finding will not render that provision invalid or unenforceable as to any other Person or circumstance or in any other state.  Where permitted by Legal Requirements, any provision found invalid or unenforceable will be dee .ed modified to the extent necessary to be within the limits of enforceability or validity; however, if such provision cannot be deemed so modified, it will be deemed stricken and all other provisions of this Agreement in all other respects will remain valid and enforceable.

Section 6.10    Preferences.  Lender will have no obligation to marshal any assets for the benefit of Borrowers or any other Person or in satisfaction of any or all of the Indebtedness.  Lender will have the continuing and exclusive right to apply or reverse and reapply any and all payments by Borrowers to any portion of the Indebtedness.  To the extent Borrowers make payment to Lender or Lender receives any proceeds from the Collateral, which payment or

712480                                         22

proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other Person under any bankruptcy, insolvency or other law, or for equitable cause, then, to the extent of such payment or proceeds released by Lender, the Indebtedness will be revived and continue in full force and effect, as if such payment or proceeds had not been received by Lender.

Section 6.11   Joint and Several Obligations.   Each Borrower signing this Agreement and the Loan Documents shall be jointly and severally liable for all obligations, agreements and liabilities under the Loan Documents, including the Indebtedness.

Section 6.12   Cross-Collateral/Cross-Default.   The security and Collateral under each of the Mortgages shall be security and Collateral for each of the other Mortgages. A default under any of the Loan Documents, including any of the Mortgages, shall constitute a default under all other Loan Documents, including all other Mortgages.

Section 6.13   No Joint Venture or Partnership.   Borrowers and Lender intend that the relationship created under this Agreement and the other Loan Documents be solely that of borrower and lender. Nothing is intended to create a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between Borrowers and Lender, nor to grant to Lender any interest in the Properties or the Vessel other than that of a mortgagee or secured party.

Section 6.14   Waiver of Counterclaim.   Each Borrower hereby waives, to the extent permitted by applicable law, the right to assert any counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against any Borrower by Lender under any of the Loan Documents.

Section 6.15   MUTUAL WAIVER OF JURY TRIAL; JUDICIAL REFERENCE.

(A)   WAIVER OF JURY TRIAL  THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD SUFFICIENT OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF THE PARTIES, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT.

(B)   JUDICIAL REFERENCE.   In the event the jury trial waiver set forth above is not enforceable for any reason, the Parties elect to proceed under this Section IX(b), and have all disputes relating to or arising out of this Agreement submitted to binding judicial reference as follows:

(i)   With the exception of the items specified in this paragraph below, any controversy, dispute or claim (each as "Claim") between the Parties arising out of or relating to this Agreement, or any other document, instrument or agreement between the undersigned Parties containing a jury trial waiver which proves to be unenforceable, will be resolved by a reference proceeding in

California in accordance with the provisions of Sections 638, et. seq. of the California Code of Civil Procedure ("CCP"), or their successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including, without limitation, whether the Claim is subject to the reference proceeding. Venue for the reference proceeding shall be in the appropriate court (the "Court") as provided in the preceding Section VIII. The matters which shall not be subject to a reference proceeding are (1) nonjudicial foreclosure of any security interests in real or personal property, (2) exercise of self-help remedies (including, without limitation, set-off), (3) appointment of a receiver, and (4) temporary, provisional or ancillary remedies (including, without limitation, writs of attachment, writs of possession, temporary restraining orders, or preliminary injunctions). This reference provision does not limit the right of any Party to exercise or oppose any of the rights and remedies described in items (1) and (2) of this paragraph, or to seek or oppose from a court of competent jurisdiction any of the items described in items (3) and (4) of this paragraph. The exercise of, or opposition to, any of those items does not waive the right of any Party to a reference proceeding pursuant to this provision.

(ii)     The referee shall be a retired judge or justice selected by mutual written agreement of the Parties. If the Parties do not agree within ten (10) days of a written request to do so by any Party then, upon request of any Party, the referee shall be selected by the Presiding Judge of the Court (or his or her representative). A request for appointment of a referee may be heard on an ex parte or expedited basis, and the Parties agree that irreparable harm would result if ex parte relief is not granted. Pursuant to CCP §170.6, each Party shall have one peremptory challenge to the referee selected by the Presiding Judge of the Court (or his or her representative).

(iii)     The Parties agree that time is of the essence in conducting the reference proceeding. Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (1) set the matter for a status and trial-setting conference (the "Conference") within fifteen (15) days after the date of selection of the referee, (2) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of the Conference and (3) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

(iv)     The referee will have power to expand or limit the amount and duration of discovery. The referee may set or extend discovery deadlines or cutoffs for good cause, including a Party's failure to provide requested discovery for any reason whatsoever. Unless otherwise ordered based on good cause shown, no Party shall be entitled to "priority" in conducting discovery, depositions may be taken by either Party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service. All disputes relating to discovery which cannot be resolved by the Parties shall be submitted to the referee whose decision shall be final and binding.

(v)     Except as expressly provided herein, the referee shall determine the manner in which the reference proceeding is conducted, including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any Party so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript. The Party making such a request shall have the obligation to arrange for and pay the court reporter. Subject to the referee's power to award costs to the prevailing Party, the Parties will equally share the costs of the referee and the court reporter at trial.

(vi)    The rules of evidence applicable to proceedings at law in California will be applicable to the reference proceeding. The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the Parties, and rule on any motion which would be authorized in a court proceeding, including, without limitation, motions for summary judgment or summary adjudication. The referee shall issue a decision at the close of the reference proceeding which disposes of all claims of the Parties that are the subject of the reference. Pursuant to CCP §644, such decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court, and any such decision will be final, binding, and conclusive. The Parties reserve the right to appeal from the final judgment or order or from any appealable decision or order entered by the referee. The Parties reserve the right to findings of fact, conclusions of law, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this Section IX.

(vii)   If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the Parties that would otherwise be determined by reference procedure will be resolved and determined by arbitration. The arbitration will be conducted by a retired judge or justice, in accordance with the California Arbitration Act, CCP §1280 through §1294.2, as amended from time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

Section 6.16  THE   PARTIES   RECOGNIZE   AND   AGREE   THAT   ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE, AND NOT BY A JURY, AFTER EACH PARTY HAS CONSULTED (OR HAS HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE. EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE, OR CLAIM BETWEEN OR AMONG THEM, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.

Section 6.17   Liability.   Borrowers' obligations under this Agreement are subject to the provisions of the Note.

Section 6.18   Headings.   The headings and captions of various paragraphs of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 6.19   Capitalized Terms.   Capitalized terms used herein and not otherwise defined shall have those meanings given to them in the other Loan Documents.

Section 6.20   Attorneys' Fees.   In the event of any controversy, claim or dispute between the Parties hereto affecting or relating to the purposes or subject matter of this Agreement or any of the Loan Documents, the prevailing party or parties shall be entitled to recover from the nonprevailing party or parties all of its costs and expenses incurred in enforcing, defending, or establishing its rights under this Agreement or the Loan Documents, including, but not by way of limitation, attorneys' fees (including the reasonable value of in-house counsel services). In addition to the foregoing award of costs and fees, such prevailing party shall also be entitled to recover its court costs and expert witnesses' and attorneys' fees incurred in any post-judgment proceedings to collect or enforce any judgment. This provision is separate and several and shall survive the merger of this Agreement or any of the Loan Documents into any judgment on this Agreement or such documents.

Section 6.21   Indemnification.

(A)   In consideration of Lender's execution and delivery of this Agreement and in addition to all other obligations of Borrowers under this Agreement, Borrowers hereby agree to defend, protect, indemnify and hold harmless Lender, its successors, assigns, affiliates, shareholders, representatives, officers, directors, employees, parent and subsidiary corporations, attorneys and agents (including without limitation, those retained in connection with the transactions contemplated by this Agreement) (collectively, the "Indemnitees") from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages and expenses in connection therewith (irrespective of whether any such Indemnitees is a party to any action for which indemnification hereunder is sought), and including reasonable attorneys' fees and disbursements as and when incurred (the "Indemnifiable Liabilities") incurred by the Indemnitees or any of them as a result of, or arising out of, or relating to (i) the execution, delivery, performance or enforcement of this Agreement, any Loan Documents or any instrument, document or agreement executed pursuant this Agreement or any of the other Loan Documents; (ii) Lender's status as lender to, or creditor of, Borrowers; or (iii) the operation of Borrowers' business from and after the date hereof, including without limitation, those arising under any Environmental Laws (as defined in Mortgage One). To the extent that the foregoing undertaking by Borrowers may be unenforceable for any reason, Borrowers shall make the maximum contribution to the payment and satisfaction of each of the Indemnifiable Liabilities which is permissible under applicable law.

(B)   Borrowers hereby covenant and agree at all times to indemnify, hold harmless and defend the Indemnitees, whether as secured party in possession or as

712480                                                    26

successor in interest to Borrowers as owner of any of the Collateral or any personal property assets located on the Properties, by virtue of any action taken by Lender pursuant to the Financing Statements, the UCC or otherwise from and against any and all liabilities, losses, damages, costs, expenses, penalties, fines, causes of action, suits, claims, demands or judgments, including without limitation, reasonable attorneys' fees and expenses, suffered or incurred in connection with:  (i) Environmental Laws, including without limitation, liens or claims of any federal, state or municipal government or quasi-governmental agency or any third person, whether arising under Environmental Laws or any other federal, state or municipal law or regulation; (ii) any spill or contamination affecting the Properties, including without limitation, any Hazardous Materials (as defined in Mortgage One) or other waste-like or toxic substances located on, under, emanating from or relating to the Properties from and on and after the date hereof or any portion thereof or any property contiguous to the Properties from and after the date hereof, and including without limitation, any loss of value of the Properties as a result of any such spill or contamination; and (iii) the direct or indirect installation, use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of any Hazardous Materials, on, under or about the Properties or any portion thereof, from and including all consequential damages, the costs of any required or necessary repair, cleanup or detoxification, and the costs of the preparation and implementation of any closure, remedial or other required plans.  Further, the mere fact that such Indemnified Party has been declared an "owner" or "operator" (as these terms are defined in the Environmental Laws) resulting from the Indemnified Party having taking possession of any of the Collateral shall not exonerate Borrowers from any claim by the Indemnified Parties seeking such indemnification.

The provisions of this Section 6.21 shall survive Borrowers' repayment of all amounts due and owing under this Agreement or any of the other Loan Documents.

Section 6.22   Additional Collateral.  If Lender, in its sole and absolute discretion, deems the Collateral to be inadequate to support the then outstanding balance of the Loan or the loan-to-value ratio becomes unacceptably high, Borrower shall provide Lender with such additional Collateral (including, without limitation, additional real property), as Lender deems appropriate, to adequately secure the then outstanding loan balance.

*[Remainder of page intentionally left blank. Signatures on following page.]*

712480

27

IN WITNESS WHEREOF, Borrowers and Lender have hereunto caused this Agreement to be executed on the date first above written.

"BORROWERS":

FPB Investments, LP,
a Delaware limited partnership

By: _____
Name: Ronald Therrick
Its: CFO

James P. Baldwin and Nancy L. Baldwin,
Trustees of the James P. Baldwin Trust No. 1

By: _____
Name: James P. Baldwin
Its: Co-Trustee

By: _____
Name: Nancy L. Baldwin
Its: Co-Trustee

James P. Baldwin and Nancy L. Baldwin,
Trustees of the Nancy L. Baldwin Trust No. 1

By: _____
Name: James P. Baldwin
Its: Co-Trustee

By: _____
Name: Nancy L. Baldwin
Its: Co-Trustee

Cachal Investments, S. de R.L. de C.V.,
a Mexican corporation

By: _____
Name: James P. Baldwin
Its: President

Spearfish Ventures LTD.,
a British Virgin Islands company

By: _____
Name: Ronald Therrick
Its: Treasurer

"<u>LENDER</u>":        Sea Prestigio, LLC,
a Delaware limited liability company

By: _____
Name: _____
Its: _____

712480

**EXHIBIT C**

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST

$21,000,000.00                                                    June 3D, 2010

FOR VALUE RECEIVED, FBP INVESTMENTS, LP, a Delaware limited partnership ("**FBP Investments**"), JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE JAMES P. BALDWIN TRUST NO. 1 (the "**JPB Trust**"), JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE NANCY L. BALDWIN TRUST NO. 1 (the "**NLB Trust**"), CACHAL INVESTMENTS, S. DE R.L. DE C.V., a Mexican corporation ("**Cachal**"), and SPEARFISH VENTURES LTD., a British Virgin Islands company ("**Spearfish**") (each foregoing party may be referred to herein as "**Borrower**" and together collectively as "**Borrowers**") hereby promise to pay to the order of SEA PRESTIGIO, LLC, a Delaware limited liability company ("**Holder**"), at Holder's office at 15 Enterprise, Suite 550, Aliso Viejo, CA 92656, or at such other place as Holder may from time to time designate in writing, the principal amount of Twenty-One Million Dollars ($21,000,000.00) as disbursed under that certain loan agreement between Holder and Borrowers of even date herewith (the "**Loan Agreement**"), plus interest as specified in this promissory note (this "**Note**"). This Note evidences a loan (the "**Loan**") from Holder to Borrowers, and is one of several Loan Documents, as defined and designated in the Loan Agreement. This Note is subject to the terms and conditions of the Loan Agreement. Capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the Loan Agreement, unless otherwise provided herein.

    1.   Security for the Loan. Borrowers' obligations under this Note are secured, *inter alia*, by (i) that certain Deed of Trust and Security Agreement With Assignment of Leases, Rents and Agreements executed by the JPB Trust and the NLB Trust, as Trustors, in favor of Holder, as Beneficiary, to be recorded against the real property located at 114 Emerald Bay, Laguna Beach, California (the "**Emerald Bay Property**") and the personalty located at the Emerald Bay Property (collectively, "**Mortgage One**"), (ii) any and all such documents, instruments or letters as are required or deemed necessary by Holder (in Holder's sole and absolute discretion) or applicable governmental agencies or title companies to evidence and perfect a first priority lien in favor of Holder against the Cabo Property, executed by Cachal, in recordable form, to be recorded against the Cabo Property ("**Mortgage Two**"), (iii) the Preferred Ship Mortgage, executed by Spearfish, in recordable form, with respect to the Vessel, and to be recorded in the Office of the Deputy Commissioner of Maritime Affairs of the Republic of the Marshall Islands at Ft. Lauderdale, Florida, USA ("**Mortgage Three**"), and (iv) any other deed to secure debt, executed by any Borrower or Borrowers and delivered to Lender as security for the Loan, as the same may be modified, supplemented or amended. Mortgages One, Two, and Three, together with any other deed to secure debt delivered by Borrowers to Lender shall be collectively referred to herein as the "**Mortgages**" and singularly as "**Mortgage**". The real property referenced in this Section 1 shall be referred to herein as the "**Property**" or the "**Properties**", as appropriate.

    2.   Interest. Borrowers hereby promise to pay to Holder interest on the outstanding principal balance of this Note, from the date hereof until the entire indebtedness evidenced by this Note (including all accrued and unpaid interest) is repaid in full, at the rate of sixteen percent (16%) per

712477

annum ("**Note Rate**"). Said interest shall be compounded on a monthly basis on the entire outstanding balance under this Note, including unpaid principal and accrued and unpaid interest, from time to time outstanding.

3.   Interest Payments.

3.1.   Borrowers shall pay to Holder monthly, in arrears, interest equal to one-half (1/2) of the Note Rate, divided by twelve, applied to the then outstanding balance under this Note, including unpaid principal and accrued and unpaid interest, commencing on the date hereof, and continuing to be due and payable on the first (1st) Business Day (as hereinafter defined) of each calendar month thereafter until the Maturity Date (defined in Section 4.1 below) or, if applicable, the Extended Maturity Date (defined in Section 4.2 below). All interest accrued pursuant to Section 2 above, but unpaid by Borrowers under this Section, shall be added to the outstanding principal of this Note. As used in this Note, the term "**Business Day**" shall mean a day other than a Saturday, Sunday or a day on which banking institutions in the State of California are authorized or required by law to close. If the due date for any payment is not a Business Day, such due date shall be deemed for all purposes to fall on the next Business Day, and any such extension shall be included in the computation of interest payments.

3.2.   If the entire outstanding balance under this Note has not been repaid on or before the Maturity Date, or Extended Maturity Date (if the date of this Note's maturity has been extended pursuant to Section 4.2 below), then such unpaid balance shall be immediately due and payable (without notice to, or demand upon, Borrowers) including all unpaid, and accrued interest thereon, and with interest computed from and after that date in accordance with the terms of the Note, until the entire outstanding balance is paid in full.

3.3.   If Borrowers are required by law to deduct any amounts from, or with respect to, any principal or interest payment hereunder, then (i) the sum payable to Holder shall be increased as may be necessary so that, after making all required deductions, Holder receives an amount equal to the sum it would have received had no deductions been made, (ii) Borrowers shall make such deductions, and (iii) Borrowers shall pay the full amount deducted to the relevant taxation authority or other authority in accordance with applicable law. Borrowers shall pay all stamp and documentary taxes. If, notwithstanding the foregoing, Holder pays such taxes, Borrowers shall reimburse Holder for the amount paid. Borrowers shall furnish Holder official tax receipts or other evidence of payment of all taxes.

4.   Maturity Date.

4.1.   If the Maturity Date is not extended pursuant to Section 4.2 below, the entire unpaid principal balance of this Note, together with all accrued and unpaid interest and all other amounts owing hereunder, shall be due and payable, by Borrowers to Holder, on that date which is three (3) years from the date hereof (the "**Maturity Date**");

4.2.    Ninety (90) days prior to the Maturity Date, Borrowers may, by written notice to Holder, request a one (1) year extension of the Maturity Date. If Holder, in its sole and absolute discretion, grants to Borrowers this extension request, the entire unpaid principal balance of this Note, together with all accrued and unpaid interest and all other amounts owing hereunder, shall be due and payable, by Borrowers to Holder, on that date which is one (1) year from the Maturity Date (the "**Extended Maturity Date**"). If the maturity of this Note is extended pursuant to this Section, Borrowers shall pay to Holder upon the first (1st) day of the month following the Maturity Date and as consideration for the grant of such extension, a fee equal to two percent (2%) of the entire indebtedness evidenced by this Note, including unpaid principal and all accrued and unpaid interest, as of the Maturity Date.

5.   Late Charge.  If any sum payable under this Note is not paid in full within ten (10) calendar days after the date on which it is due, Borrowers shall pay to Holder, in addition to all other charges hereunder, a late charge in the amount of five percent (5%) of the overdue payment.

6.   Interest Rate Upon Event of Default.  Upon the occurrence of any Event of Default (as defined in Section 13 below) hereunder, and subject to any legal limitations applicable under Section 22 below, the entire indebtedness evidenced by this Note, as of the date of said Event of Default, shall bear interest at a rate of twenty-one percent (21%) per annum ("**Default Interest Rate**") from the date of the occurrence of said Event of Default through and until the full amount owing under this Note is repaid in full. All accrued and unpaid interest not paid prior to the occurrence of the Event of Default shall be added to the principal, shall become and be treated as a part thereof, and shall thereafter also bear interest at the Default Interest Rate.

7.   Holder's Records as to Sums Owing.  Holder's records as to the amounts of principal, interest and other sums owing hereunder shall be conclusive and binding.

8.   Prepayment.  Borrowers may prepay, in full or in part, principal advanced hereunder and accrued and unpaid interest thereon, provided that in addition to such prepayment, Borrowers shall pay to Holder an additional amount equal to the interest that such prepaid amount would have accrued if not paid to Holder until the Maturity Date. Holder shall not be obligated to re-advance to Borrowers any sums prepaid by Borrowers, whether prepaid voluntarily or involuntarily, pursuant to the terms of any Loan Document. If Borrowers prepay all or any portion of the Loan, Borrowers shall also pay to Holder any and all sums necessary to compensate Holder for all costs, expenses, claims, penalties and liabilities incurred by Holder by virtue of the repayment or prepayment of funds.

9.   Lawful Money.  Principal and interest are payable in lawful money of the United States of America.

10. Applications of Payments; Late Charges.

(a)    Payments received by Holder pursuant to the terms hereof shall be applied first to any amounts due and owing to Holder other than principal or interest, next to accrued interest, and then to principal; provided, however, during any Event of Default, Holder may

apply any payments received to the obligations owing to Holder in such order and manner as Holder in its sole discretion shall determine.

(b)     If any payment of principal or interest is not paid when due, such late payment shall, at Holder's option, bear interest at the Default Interest Rate (as defined in Section 6 above) from the day such payment was due until it is paid. In addition, if any payment is ten (10) or more days overdue, Holder will have the option to assess a late charge of five percent (5%) of the amount so overdue, as provided in Section 5 above. In connection therewith, Borrowers and Holder agree as follows:

(i)     Because of such late payment, Holder will incur certain costs and expenses including, without limitation, administrative costs, collection costs, loss of interest, and other direct and indirect costs in an uncertain amount;

(ii)     It would be impractical or extremely difficult to fix the exact amount of such costs in such event; and

(iii)     The Default Interest Rate and the late charge are reasonable and good faith estimates of such costs.

The application of the Default Interest Rate or the assessment of a late charge to any such late payment as described in this Section will not be interpreted or deemed to extend the period for payment or otherwise limit any of Holder's remedies hereunder, or under the other Loan Documents.

11. Security. This Note is secured by the Mortgages and by the Loan Documents.

12. Borrowers' Representations.   Borrowers hereby reaffirm all representations and warranties made by them in the Loan Agreement.

13. Events of Default. Borrowers shall be in default under this Note if any Borrower fails to comply with, or perform when due, any covenant, condition, agreement or provision of such Borrower contained in this Note or any other Loan Document, including the Loan Agreement (each such default shall be referred to herein as an "**Event of Default**").

14. Acceleration and Other Remedies. Upon the occurrence of any Event of Default, Holder may, in its sole and absolute discretion, declare the outstanding principal balance of this Note, together with all accrued and unpaid interest thereon and all related charges, to be immediately due and payable. All rights and remedies provided to Holder under this Note are cumulative and shall be in addition to all other rights and remedies of Holder at law or in equity, and all such rights and remedies may be exercised singly, successively and/or concurrently. If Holder delays in exercising or fails to exercise any of it rights under this Note, that delay or failure shall not constitute or be deemed to constitute  a waiver of any of Holder's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Holder of any of its rights, or of any such breach, default or failure of a condition shall be effective, unless the waiver is expressly acknowledged and stated in a writing signed by Holder.

712477

15. <u>Acceleration Upon Transfer</u>. The Mortgages contain the following "due on transfer" provision which provides that:

If the Trustors sell, convey, assign or otherwise transfer (hereinafter collectively referred to as a "**Sale**") or further pledge, mortgage or otherwise encumber (hereinafter collectively referred to as an "**Encumbrance**") all or any part of the Trust Estate or any interest in the Trust Estate, whether any such Sale or Encumbrance occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to the Trustors. For purposes of this Deed of Trust, a transfer of the interests in the Trustors, whether direct or indirect or in one or more transactions, shall be deemed a transfer of the Trustors' interest in the Trust Estate and, therefore, a "Sale" for purposes of [this provision].

16. <u>Waiver</u>. Borrowers hereby waive diligence, presentment, protest and demand, notice of protest, dishonor and nonpayment of this Note, and expressly agree that, without in any way affecting the liability of Borrowers hereunder, Holder may extend any maturity date or the time for payment of any installment due hereunder, accept additional security, release any party liable hereunder and release any security now or hereafter securing this Note. Borrowers further waive, to the fullest extent permitted by law, the right to plead any and all statutes of limitations as a defense to any demand on this Note, or on any deed of trust, security agreement, lease assignment, guaranty or other agreement now or hereafter securing this Note.

17. <u>Joint and Several Obligations and Liability</u>. Each Borrower shall be jointly and severally liable for all obligations, agreements and liabilities under this Note and the Loan Documents.

18. <u>Cross-Default</u>. A default under any of the Loan Documents, including this Note, shall constitute a default under all other Loan Documents.

19. <u>Notices</u>. All notices and other communications provided for in this Note shall be delivered in accordance with the terms of the Loan Agreement.

20. <u>Costs of Enforcement</u>. In the event it becomes necessary for Holder to retain legal counsel for the enforcement of this Note or any of its terms, Borrowers promise and agree to pay, on demand, all costs and expenses of such enforcement, including reasonable attorneys' fees incurred by Holder, whether or not suit is filed. Borrowers shall also reimburse Holder for all costs and expenses, including attorneys' fees, incurred in the representation of Holder in any bankruptcy, insolvency, reorganization or other debtor-relief proceeding of or relating to Borrowers.

21. <u>Time is of Essence</u>. Time is of the essence as to every term, condition and provision of this Note.

22. <u>Usury Laws</u>. In no event, whether by acceleration of this Note, or otherwise, shall the amount of interest paid or agreed to be paid under this Note exceed the highest lawful rate allowed by applicable law as of the date of this Note, it being the express intention of Holder and Borrowers

712477

that in such event Holder shall be entitled to receive the maximum amount of interest allowed by applicable law. If fulfillment of any provision of this Note shall involve exceeding the maximum amount of interest as prescribed by law, then the obligation to be fulfilled shall be reduced so as not to exceed said limit. If for any reason interest, or any other payment determined to be in the nature of interest, is charged or collected by Holder, or is paid by Borrowers and is determined to exceed the limit prescribed by law, any sums so charged, collected or paid which exceed such limit shall be deemed to have resulted from mutual mistake, and such sums which exceed such limit shall be refunded to Borrowers. Borrowers hereby acknowledge that the loan evidenced by this Note is exempt from the restrictions on interest rates imposed by Section 1 of Article XV of the California Constitution.

23. <u>Governing Law</u>. Unless otherwise agreed to by the Parties, this Note shall be deemed to have been made in the State of California, and this Note and the other Loan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without regard to the conflicts of laws principles. Borrowers and Holder each unconditionally and irrevocably waive(s) any right to assert that the law of any other jurisdiction governs this Note or any of the other Loan Documents.

24. <u>Jurisdiction</u>. Each Borrower irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Note or the other Loan Documents shall be brought in the state or federal courts in Orange County, California, (b) submits to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which they may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Each Borrower irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to Borrowers at the address provided in the Loan Agreement. Nothing in this <u>Section 24</u> shall affect the right of Holder to serve legal process in any other manner permitted by law or affect the right of Holder to bring any suit, action or proceeding against any Borrower or any Borrower's assets in the courts of any other jurisdiction.

25. <u>Severability</u>. If any provision of this Note shall be invalid, illegal or unenforceable in any jurisdiction, the remaining provisions shall continue to be valid and enforceable in all jurisdictions and such provision shall continue to be valid and enforceable in each other jurisdiction.

26. <u>Assignment</u>. Borrowers shall have no right to assign their obligations under this Note without Holder's prior written consent, which consent may be withheld in Holder's sole and absolute discretion. Holder shall have the right to assign all or any portion of its interest in this Note at any time.

27. <u>Binding Effect</u>. The terms of this Note shall be binding upon and inure to the benefit of all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns. As used herein, the terms "Borrower" and "Borrowers" shall include the undersigned Borrowers and any other proper person or entity who may subsequently become liable for the payment hereof as a result of Borrowers' assignment pursuant to <u>Section 6</u>, above. The term

712477

"Holder" shall include Holder as well as any other person or entity to whom this Note or any interest in this Note is conveyed, transferred or assigned.

28. Surrender To Trustee. When the entire indebtedness evidenced by this Note is repaid to Holder in full, then Holder shall surrender the original of this Note and the Mortgages to the Trustee (as defined in the Mortgages) for cancellation and reconveyance, respectively.

29. Amendment. This Note may not be changed, altered, amended, or modified unless by a written instrument signed by the parties hereto.

30. Legal Representation. Borrowers acknowledges that they have been represented by independent legal counsel in connection with the transaction contemplated by this Note.

31. Mutual Waiver Of Jury Trial; Judicial Reference.

(A)   WAIVER OF JURY TRIAL.  THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD SUFFICIENT OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF THE PARTIES, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR IN ANY WAY RELATING TO THIS NOTE OR ANY OF THE LOAN DOCUMENTS.

(B)   JUDICIAL REFERENCE.  In the event the jury trial waiver set forth above is not enforceable for any reason, the parties elect to proceed under this Section 1(B), and have all disputes relating to or arising out of this Note submitted to binding judicial reference as follows:

(i)   With the exception of the items specified in this paragraph below, any controversy, dispute or claim (each a "**Claim**") between the parties hereto arising out of or relating to this Note, or any other document, instrument or agreement between the undersigned parties containing a jury trial waiver which proves to be unenforceable, will be resolved by a reference proceeding in California in accordance with the provisions of Sections 638, *et. seq.* of the California Code of Civil Procedure ("**CCP**"), or their successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including, without limitation, whether the Claim is subject to the reference proceeding. Venue for the reference proceeding shall be in the appropriate court (the "**Court**") as provided in the preceding Section 4.  The matters which shall not be subject to a reference proceeding are (1) nonjudicial foreclosure of any security interests in real or personal property, (2) exercise of self-help remedies (including, without limitation, set-off), (3) appointment of a receiver, and (4) temporary, provisional or ancillary remedies (including, without limitation, writs of attachment, writs of possession, temporary restraining orders, or preliminary injunctions). This reference provision does not limit the right of any party to exercise

or oppose any of the rights and remedies described in items (1) and (2) of this paragraph, or to seek or oppose from a court of competent jurisdiction any of the items described in items (3) and (4) of this paragraph. The exercise of, or opposition to, any of those items does not waive the right of any party to a reference proceeding pursuant to this provision.

(ii)     The referee shall be a retired judge or justice selected by mutual written agreement of the parties hereto. If the parties hereto do not agree within ten (10) days of a written request to do so by any party hereto then, upon request of any party hereto, the referee shall be selected by the Presiding Judge of the Court (or his or her representative). A request for appointment of a referee may be heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted. Pursuant to CCP §170.6, each party shall have one peremptory challenge to the referee selected by the Presiding Judge of the Court (or his or her representative).

(iii)    The parties hereto agree that time is of the essence in conducting the reference proceeding. Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (1) set the matter for a status and trial-setting conference (the "Conference") within fifteen (15) days after the date of selection of the referee, (2) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of the Conference and (3) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

(iv)    The referee will have power to expand or limit the amount and duration of discovery. The referee may set or extend discovery deadlines or cutoffs for good cause, including a party's failure to provide requested discovery for any reason whatsoever. Unless otherwise ordered based on good cause shown, no party shall be entitled to "priority" in conducting discovery, depositions may be taken by either party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service. All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding.

(v)     Except as expressly provided herein, the referee shall determine the manner in which the reference proceeding is conducted, including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party hereto so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript. The party making such a request shall have the obligation to arrange for and pay the court reporter. Subject to the referee's power to award costs to the prevailing party, the parties will equally share the costs of the referee and the court reporter at trial.

712477

(vi)     The rules of evidence applicable to proceedings at law in California will be applicable to the reference proceeding.  The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the parties hereto, and rule on any motion which would be authorized in a court proceeding, including, without limitation, motions for summary judgment or summary adjudication.  The referee shall issue a decision at the close of the reference proceeding which disposes of all claims of the parties that are the subject of the reference.  Pursuant to CCP §644, such decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court, and any such decision will be final, binding, and conclusive.  The parties hereto reserve the right to appeal from the final judgment or order or from any appealable decision or order entered by the referee.  The parties hereto reserve the right to findings of fact, conclusions of law, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this Section 1(B).

(vii)    If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by reference procedure will be resolved and determined by arbitration.  The arbitration will be conducted by a retired judge or justice, in accordance with the California Arbitration Act, CCP §1280 through §1294.2, as amended from time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

(viii)   THE PARTIES HERETO RECOGNIZE AND AGREE THAT ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE, AND NOT BY A JURY, AFTER EACH PARTY HAS CONSULTED (OR HAS HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE.  EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE, OR CLAIM BETWEEN OR AMONG THEM, ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE OR ANY OF THE LOAN DOCUMENTS.

*[Rest of page intentionally left blank.  Signatures follow.]*

712477

IN WITNESS WHEREOF, this Note has been duly executed and delivered as of the day first written above.

"**BORROWERS**":　　　　FPB Investments, LP,
　　　　　　　　　　　　a Delaware limited partnership

By: _____
Name: _____
Its: _____

James P. Baldwin and Nancy L. Baldwin,
Trustees of the James P. Baldwin Trust No. 1

By: _____
Name: James P. Baldwin
Its: Co-Trustee

By: _____
Name: Nancy L. Baldwin
Its: Co-Trustee

James P. Baldwin and Nancy L. Baldwin,
Trustees of the Nancy L. Baldwin Trust No. 1

By: _____
Name: James P. Baldwin
Its: Co-Trustee

By: _____
Name: Nancy L. Baldwin
Its: Co-Trustee

Cachal Investments, S. de R.L. de C.V.,
a Mexican corporation

By: _____
Name: _____
Its: _____

Spearfish Ventures LTD.,
a British Virgin Islands company

By: _____
Name: _____
Its: _____

**EXHIBIT  D**

**PREFERRED SHIP MORTGAGE**
**Dated as of June 30, 2010**
**from**
**SPEARFISH VENTURES LTD., Shipowner, as Mortgagor**
**to**
**SEA PRESTIGIO, LLC  as Mortgagee**

Name and Official Number of Vessel:

      TRITON
      Official No. 70070  (Republic of the Marshall Islands)

Address of Mortgagor:

      SPEARFISH VENTURES LTD. 90 Main
      Street
      P.O. Box 3099
      Road Town, Tortola, British Virgin Islands

Address of Mortgagee:

      SEA PRESTIGIO, LLC
      Suite 550,
      15 Enterprise,
      Aliso Viejo, California  92656

Interest Owned by Mortgagor:

      100% (the whole of the Vessel)

Interest Mortgaged:

      100% (the whole of the Vessel)

SPEARFISH VENTURES LTD. ("Shipowner"), a British Virgin Islands company, grants this Preferred Ship Mortgage (the "Mortgage") to SEA PRESTIGIO, LLC ("Mortgagee"), as Mortgagee for  the purpose of recording this first Preferred Ship Mortgage as required by Chapter 3 of Title 47 of the Marshall Islands Maritime Act 1990, as amended, in order to secure direct or contingent obligations (excluding interest, service charge, expenses, fees and performance of mortgage covenants which are also secured) in the amount of US $21,000,000.00 (Twenty-One Million and No/100 U.S. Dollars) with a maturity date of June 30, 2013.

RECITALS OF SHIPOWNER

      1.      Mortgagee has made certain financing agreements or arrangements with Shipowner and various affiliates of Shipowner (the "Affiliates") including the following (collectively, the "Financing Agreements"):

      (a) the Note dated as of even date herewith in the face principal amount of $21,000,000.00 (Twenty-One Million and No/100 U.S. Dollars) executed by Shipowner in favor of Mortgagee;

      (b) the Loan Agreement and the other Loan Documents.;

1

2.      Shipowner has executed the Note in Mortgagee's favor substantially in the form of Exhibit A.

3.      Shipowner grants this Mortgage to Mortgagee to secure all of its obligations, and all obligations of the Affiliates, under the Financing Agreements.

GRANT OF MORTGAGE

To secure payment of all amounts due to Mortgagee under the Financing Agreements and this Mortgage and the performance of all of Shipowner's obligations under this Mortgage in accordance with their terms (as the Financing Agreements and this Mortgage may be amended from time to time) (all of the foregoing being referred to as the "Obligations"), Shipowner grants to Mortgagee a Preferred Ship Mortgage on the whole of the Vessel together with its engines, machinery, masts, spars, sails, fuel, navigation equipment, propulsion equipment, cables, chains, rigging, tackle, fittings, tools, pumps and pumping equipment, boats, anchors, apparel, logs, manuals, and all other equipment and appurtenances now or at any time appertaining and belonging to the Vessel, whether now owned or hereafter acquired, whether on board or not, and all additions, improvements and replacements hereafter made in or to the Vessel or to any such part, appurtenance or equipment.

PROVIDED, HOWEVER, and upon the condition that upon payment of all sums due under the Financing Agreements in full in accordance with their terms and if Shipowner and Affiliates shall faithfully keep, perform and observe all of their Obligations in accordance with the terms of the Financing Agreements and this Mortgage, this Mortgage and the estate and rights it grants shall cease; otherwise, to remain in full force and effect.

## ARTICLE ONE

## FORM OF AGREEMENTS

Section 1.01. *Form and Terms of Note.* The Note shall be substantially in the form (subject to amendment and modification from time to time) attached as Exhibit A. This Mortgage incorporates the Note by reference. The maximum amount of this Mortgage securing performance under the Note and the other Financing Agreements is US $21,000,000.00 (Twenty-One Million and No/100 U. S. Dollars) which, together with interest, service charge, expenses, fees and performance of obligations under the Financing Agreements and this Mortgage, is the amount of this Mortgage.

## ARTICLE TWO

## RIGHTS OF SHIPOWNER UNTIL EVENT OF DEFAULT

Section 2.01. *Right of Possession of Vessel.* Unless an Event of Default, as defined in this Mortgage or under the Loan Agreement shall have occurred, Shipowner shall be permitted to possess, operate, maintain, and enjoy the use of the Vessel.

2

## ARTICLE THREE

## REPRESENTATIONS AND WARRANTIES OF SHIPOWNER

Section 3.01. *Miscellaneous Representations and Warranties.*

Shipowner represents and warrants to Mortgagee that:

(a)  Shipowner is and, so long as this Mortgage is in force, will remain a corporation duly organized, validly existing and in good standing under the laws of the British Virgin Islands, duly registered to operate the Vessel pursuant to the laws of the Republic of the Marshall Islands. All action necessary or required by law for the making and delivering of this Mortgage has been duly and effectively taken.;

(b)  Neither the execution and delivery of this Mortgage, the performance of this Mortgage in accordance with its terms, the consummation of the transactions the Mortgage contemplates nor the fulfillment of or compliance with its terms and conditions: (i) conflicts with or results in a breach of or a default under any of the terms, conditions or provisions of (A) any mortgage, note, deed of trust, indenture, contract or agreement to which Shipowner is now a party or by which Shipowner or any of Shipowner's property may be bound, or (B) any constitutional provision, any statute or any order, rule or regulation of any court or governmental or regulatory agency or body having jurisdiction over Shipowner or any of the activities or property of Shipowner, (ii) constitutes a default under any of the foregoing, or results in the creation or imposition of any lien, charge or encumbrance whatsoever upon any of the property or assets of Shipowner (other than a lien or security interest in favor of Mortgagee) or (iii) is prohibited under the terms of any instrument or agreement to which Shipowner is now a party or by which Shipowner or any of Shipowner's assets are bound.; and

(c)  No consent, license, permit, approval or authorization of, notice or report to, or registration, filing or declaration with, any governmental or regulatory authority, any court, or any other third party, except those which have been obtained or made, is required for Shipowner's execution, delivery and performance of this Mortgage.

(d)  The Shipowner covenants and agrees that it shall not at any time insist upon, claim, plead, or take the benefit or advantage of any appraisement, valuation, stay, extension, moratorium, or redemption law now or hereafter in force to prevent, delay or hinder the enforcement of this Mortgage or the exercise by the Mortgagee of any of the remedies set forth in ARTICLE FIVE or the taking of possession of the Vessel by any purchaser at any sale held pursuant to this Mortgage; and the Shipowner, for itself and all for whom it may lawfully do so, hereby waives the benefit of all such laws.

## ARTICLE FOUR

## PARTICULAR COVENANTS OF SHIPOWNER

Section 4.01. *Qualification to Own and Operate the Vessel.* Shipowner is and will remain qualified under the laws of the British Virgin Islands to own the Vessel, and remain duly registered to operate the Vessel pursuant to the laws of the Republic of the Marshall Islands. Shipowner is duly authorized to mortgage the Vessel. Shipowner has complete and lawful authority and privilege to maintain and operate the Vessel.

Section 4.02. *Payment and Performance of Obligations.* Shipowner will duly and punctually pay or

3

cause to be paid the principal, interest, service charges, late fees and all other sums due under the Loan Agreement, the Note and this Mortgage at the dates and places and in the manner provided in the Loan Agreement, the Note and in this Mortgage according to their terms, and will at all times keep, perform and observe all covenants, conditions, and agreements in the Loan Agreement, the Note and this Mortgage.

Section 4.03. *Title.* Shipowner at the time of delivery of this Mortgage is lawfully possessed of and is the sole and lawful owner of the whole of the Vessel and has full power and authority to sell, mortgage and convey the Vessel, and will warrant and defend the title and interest of Mortgagee, its successors and assigns, against the claims and demands of all persons; the Vessel is and shall at all times during the life of this Mortgage, or any renewal or extension, be kept free of all encumbrances, charges and liens whatsoever, except for the lien this Mortgage creates and maritime liens ("permitted maritime liens") arising in the ordinary course of the operation of the Vessel. Permitted maritime liens shall not exceed an aggregate amount of US$50,000.00 (Fifty Thousand Dollars).

Section 4.04. *Insurance.*

(a)      Shipowner shall, at its expense, maintain or cause to be maintained in effect for the Vessel, in form, amount and with insurance companies, underwriters, P&I clubs or funds of recognized responsibility, all reasonably acceptable to Mortgagee, insurance of a kind, amount and character customarily carried by persons operating like vessels against risk of loss and damage. As part of the foregoing, Shipowner shall continuously maintain the following insurance covering the Vessel and its operations:

(1)      Marine navigating risk, hull and machinery insurance, in the amount and including the coverages and provisions, set forth in Mortgagee's Insurance Requirements for Watercraft Hull and Machinery (Physical Damage) Insurance attached as Exhibit B. In the event there is any conflict between the coverages required by this Section 4.04 and Exhibit B, the provisions of Exhibit B shall govern with respect to marine navigating risk, hull and machinery insurance coverages.

(2)      Protection and Indemnity insurance in the amount and including the coverages and provisions, set forth in Mortgagee's Insurance Requirements for Protection & Indemnity (Liability) Insurance (P&I) attached as Exhibit C. In the event there is any conflict between the coverages required by this Section 4.04 and Exhibit C, the provisions of Exhibit C shall govern with respect to Protection and Indemnity insurance coverages.

(3)      Worker's Compensation, etc., all necessary and adequate statutory worker's compensation insurance coverages, including, but not limited to, Longshore and Harbor Workers' Compensation and State Workers' Compensation coverages, so as to protect fully Shipowner from any claim under any type of compensation law.

(b)      Named Insureds.

(1)      The insurance required by subsection 4.04 (a)(1), above, shall name Mortgagee as (sole) loss payee.

(2)      The insurance required by subsection 4.04 (a)(2), above, shall name Mortgagee as an additional named insured.

(3)      All of the policies or certificates of insurance required under this Section 4.04 shall provide that there shall be no recourse against Mortgagee for the payment of premiums, commissions, club calls, (whether or not an Event of Default then exists), shall waive any right of subrogation of the insurers against Shipowner and Mortgagee, and shall waive any right of the insurers to any setoff or counterclaim or any other deduction, whether by attachment or otherwise, in respect of any liability of

4

Shipowner or Mortgagee.

(4)     The insurance required by subsections 4.04(a)(1) and (a)(2), above, shall further provide that in respect of the interests of Mortgagee, any such policies of insurance shall not be invalidated by any action, inaction or negligence of Shipowner or any person and shall insure Mortgagee regardless of any breach or any violation of any warranty, declaration, trading limit or condition contained in such policies by Shipowner or any other person. Mortgagee will be provided with Breach of Warranty coverage/Mortgagee's Interest Insurance so that, "Violations of the terms, conditions or warranties of the insurance by the named insured or others will not invalidate the coverage insofar as the interests of Mortgagee are concerned.".

(5)     Each policy of insurance required by this Section 4.04 shall provide that if any premium installment is not paid when due, or if such insurance is canceled, terminated or materially changed for any reason whatsoever, the insurers will promptly notify Mortgagee, and any such cancellation, termination or change shall not be effective as to Mortgagee for thirty (30) days after receipt of such notice; except in the case of war risks, where any such cancellation, termination or change shall not be effective as to Mortgagee for seven (7) days after receipt of such notice.

(c)     Proofs of Loss. Shipowner shall have the duty and responsibility to make all proofs of loss and take any and all other steps necessary to effect collections from underwriters for any loss under any insurance carried pursuant to subsection 4.04(a), above.

(d)     Insurance Reports.

(1)     Shipowner shall furnish, or cause to be furnished, to Mortgagee on the date of this Mortgage and annually, on each policy anniversary date thereafter, a detailed policy, signed by an independent marine insurance broker designated by Shipowner and reasonably satisfactory to Mortgagee, describing the insurance carried on or with respect to the Vessel and its operation and stating, in effect, that insurance of the types and in the minimum amounts required by this Section are in full force and effect and conform to the applicable requirements of subsections 4.04(b)(1) through (b)(5), above, and confirming the broker's agreement to the matters stated in subsection 4.04(d)(2), below.

(2)     Shipowner shall cause such independent insurance broker to agree (i) to advise Mortgagee promptly of any default in the payment of any premium, commission, club call, assessment or advance required (whether for new insurance or for insurance replacing, renewing or extending existing insurance) and of any other act, omission or event of which such independent insurance broker has knowledge and which in its sole judgment (A) might invalidate or render unenforceable, or cause the cancellation or lapse or prevent the renewal or extension of, in whole or in part, any insurance carried pursuant to subsection 4.04(a), above, or (B) has resulted or might result in any material modification of the terms of any such insurance, and (ii) to furnish Mortgagee from time to time, upon request, confirmation of the insurance carried with respect to the Vessel. In addition, upon request from time to time, Shipowner shall deliver, or cause to be delivered to Mortgagee evidence satisfactory to Mortgagee that the insurance required to be provided and maintained pursuant to this Section has been issued and is then in full force and effect, and copies of policies and certificates of insurance required under this Section 4.04.

(e)     No Declaration of Loss Without Approval. Shipowner shall not declare or agree upon a compromised, constructive or agreed total loss of the Vessel without the prior written consent of Mortgagee.

(f)     Shipowner's Covenant. Shipowner will not do any act or voluntarily suffer or permit any act to be done whereby any insurance shall or may be suspended, impaired or defeated and will not suffer or permit the Vessel to engage in any voyage or to carry out any operations not permitted under the insurance policies in effect without first covering the Vessel to the amounts required under this Mortgage. Without limiting the generality of the foregoing sentence, Shipowner will operate the Vessel

5

only within the navigation limits as set forth from time to time in the insurance policies.

        (g)     Shipowner shall pay deductibles provided for in any insurance required by this Mortgage.

        (h)     Should Shipowner not maintain the required insurance or any part of it or should the insurance be vitiated or voided or impaired, in whole or in part, for any reason, Shipowner shall indemnify and hold harmless Mortgagee and the Vessel from any and all claims, suits, judgments, demands, losses to Mortgagee or the Vessel, and costs and expenses in connection therewith that would have been otherwise covered by the insurance, including reasonable attorneys' fees, costs, disbursements and expenses.

Section 4.05. *Compliance with Statutes, Avoidance of War Zones.*

        (a)     Shipowner shall maintain the eligibility of the Vessel for registration under the laws of the Republic of the Marshall Islands. Shipowner will not cause or permit the Vessel to be operated in any manner contrary to any rules, regulations or statutes of the Republic of the Marshall Islands, the United States, or any other governmental or regulatory authority having jurisdiction over the Vessel, whether federal, state or municipal, and without limiting the foregoing, Shipowner will not suffer or permit the Vessel to engage in any voyage not permitted under the Vessel's Certificate of Registry and endorsements.

        (b)     Unless required by the Government of the United States or of the Republic of the Marshall Islands or a duly authorized department or agency of one of them, the Vessel will not be sent to or through a port or area where a state of warfare or hostilities exists or is threatened, nor to a port or area which is blockaded, nor to any declared or recognized or threatened war zone, nor shall the Vessel be permitted to engage in the carriage of contraband, or engage in a trade of a character with respect to which the President of the United States or the State Department may state in substance that persons so engaging shall do so at their own risk, without first obtaining insurance covering such voyage and written consent of Mortgagee in each case.

Section 4.06. *Copy of Mortgage on the Vessel.* A certified copy of this Mortgage shall be carried as part of the Vessel's papers and shall be exhibited together with the Vessel's documents by the master or other proper agent of the Vessel to any person having business with the Vessel that might give rise to a maritime lien upon the Vessel, or to the Vessel's sale, conveyance, mortgage, charter or lease. Shipowner will at all times take appropriate action to give notice to all persons that Shipowner's right, title and interest in and to the Vessel is subject to the lien of this Mortgage, and that neither Shipowner nor the master of the Vessel nor any other person has any right, power or authority to create or impose or to suffer or permit to be created or imposed any charge or encumbrance (except for crew's and stevedores' wages, general average, and salvage not overdue) superior or which might be deemed superior to the lien of this Mortgage.

Section 4.07. *Display of Notice of Mortgage.* Shipowner will place and keep prominently displayed in the pilot or wheel house of the Vessel a framed, printed notice reading substantially as follows:

"This vessel is covered by a Preferred Ship Mortgage from Spearfish Ventures Ltd., Shipowner, to Sea Prestigio, LLC, as Mortgagee, under the laws of the Republic of the Marshall Islands. The Preferred Ship Mortgage was executed as of June 30, 2010, and has been duly recorded in accordance with the laws of the Republic of the Marshall Islands. Neither the vessel's owner, nor any charterer, nor the Master of this vessel has any right, power or authority to create, incur or permit to be imposed upon this vessel any liens whatsoever other than for general average, salvage and crew's and stevedores' wages."

Section 4.08. *Maintenance of the Vessel.* At all times, at its own cost and expense, Shipowner will preserve repair and maintain the Vessel to high yacht quality standards in a good seaworthy condition with

6

and all machinery, equipment, electrical and electronic equipment in good operating condition, working order and repair. At no time during the term of this Mortgage shall Shipowner make or suffer to be made any material alteration in the structure or machinery of the Vessel that would diminish the value of the Vessel. Shipowner shall not incur or permit liens upon the Vessel in connection with any alterations or repairs that aggregate in excess of $50,000.00 (Fifty Thousand Dollars) as to which the lien creditor has an immediate right to enforcement against the Vessel. Shipowner shall notify Mortgagee immediately upon learning that any such lien creditor claims that it has an immediate right to enforcement of its lien or has taken steps to enforce its lien.

Section 4.09. *Mortgagee's Inspection; Marine Survey.* Shipowner will at all reasonable times afford Mortgagee's authorized representatives full and complete access to the Vessel. Mortgagee shall have the right to require Shipowner, at Shipowner's sole cost and expense, to have a marine survey of the Vessel not less than annually during the term of this Mortgage. The survey shall be conducted by a marine surveyor satisfactory to Mortgagee to determine the condition and value of the Vessel.

Section 4.10. *Taxes.* So long as this Mortgage remains in effect, Shipowner will:

(a)    Pay and discharge, as they shall become due and payable, all taxes, assessments, governmental and other charges, fines and penalties lawfully levied or imposed by any nation, state, county, municipality or other taxing body on the Vessel, its income and profits, or upon any of its property, real, personal or mixed, or any part of any of them, or which if unpaid might become a lien or charge upon the franchises, assets, earnings or business of Shipowner; and (b) pay and discharge, as they shall become due and payable, all sales or other taxes imposed upon any and all goods, wares, merchandise and supplies or other property furnished to or for the Vessel, whether these taxes be assessed or levied by any state, county, municipality or other taxing body; provided, however, that nothing contained in this Section 4.10 shall require Shipowner to pay any tax, assessment, charge, fine or penalty so long as Shipowner, in good faith and by appropriate proceedings, shall contest its validity. The right of Shipowner to contest the validity of any claim contemplated by this Section 4.10 shall, however, in no event be construed as permitting any arrest, attachment or other seizure or detention under process or color of legal authority of the Vessel to remain undissolved or undischarged.

Section 4.11. *Release of Vessel from Arrest.* If the Vessel shall be arrested, attached or detained by a marshal or other officer of any court in any country or nation of the world or by any government or other authority and shall not be released from arrest, attachment or detention within ten (10) days from the date of arrest, attachment or detention, Shipowner authorizes Mortgagee or its appointee, who may to the fullest extent permitted by applicable law, in the name of Shipowner, to apply for and receive possession of and to take possession of that Vessel with all the rights and powers Shipowner might have, possess and exercise in any such event. This authorization is irrevocable. Shipowner shall immediately upon the happening of any arrest, attachment or detention of the Vessel, notify Mortgagee by fax and confirm that fax by letter immediately, stating the facts and circumstances of the arrest, attachment or detention.

Section 4.12. *Reimbursement of Mortgagee.* Shipowner will reimburse Mortgagee and any receiver appointed for Shipowner or its property, immediately upon receipt of an invoice for any and all expenditures any such person may reasonably incur (but shall in no way be obligated to incur) from time to time to protect the security granted by this Mortgage such as the payment of taxes, insurance premiums, the maintenance and repair of the Vessel, the discharge of any lien, arrest or seizure of the Vessel or costs of removal or remediation of any hazardous materials or other environmental matter; and any such payment shall be for the account of Shipowner, and the making of expenditures by Mortgagee or any receiver shall not cure Shipowner's default in that regard or constitute a waiver of any right or remedy granted to Mortgagee under this Mortgage and all sums so expended with interest accruing thereafter at the rate per annum equal to the highest lawful contract

7

rate permitted by law, and shall be deemed to be indebtedness of Shipowner secured by this Mortgage with the same priority as the indebtedness evidenced by the Financing Agreements.

Section 4.13. *Compliance with Law.* Shipowner will comply with and satisfy all the provisions of the law of the Republic of the Marshall Islands and will establish and at all times maintain this Mortgage as a Preferred Ship Mortgage on the Vessel.

Section 4.14. *No Sale, Mortgage, etc., Without Consent.* Shipowner will not sell, mortgage, pledge, or change the flag of the Vessel without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld, and which shall be subject to such protection of the continuing perfection and value of its security as Mortgagee may reasonably require. Upon request of Mortgagee, Shipowner shall promptly provide Mortgagee with a copy of any charter(s) of the Vessel and advise Mortgagee of the location of the Vessel.

Section 4.15. *Partial Invalidity.* The invalidity of any one or more of the provisions of this Mortgage, the Loan Agreement, the Note, or any of the other Financing Agreements shall not affect the remaining provisions; and, if one or more provisions of any of such documents shall be deemed invalid in whole or in part by reason of any present or future applicable law or any decision of any court, Shipowner will execute and deliver such other and further instruments and do such things as in the opinion of counsel for Mortgagee are reasonably necessary to carry out the true intent and spirit of this Mortgage.

Section 4.16. *Record and File Mortgage.* Shipowner will: (a) cause this Mortgage to be recorded with the Maritime Administration of the Republic of the Marshall Islands or other official authorized to effect recordation, so that this Mortgage will constitute a valid enforceable priority mortgage lien on the Vessel under the laws of the Republic of the Marshall Islands;
(b) furnish satisfactory evidence of recordation to Mortgagee; and (c) from time to time execute, acknowledge and deliver and cause to be done, executed, acknowledged and delivered all such further acts, deeds, conveyances, assignments, ship mortgages and other maritime mortgages and liens, transfers and further assurances of title and such additional papers as may be necessary or appropriate in the opinion of counsel for Mortgagee.

Section 4.17. *Notices of Event of Default.* Upon the occurrence of any Event of Default, as defined in Section 5.01, Shipowner shall promptly notify Mortgagee by fax, confirmed by letter.

Section 4.18. *Obligations in Loan Agreement and Note Unaffected.* The particular covenants in this Article 4 are in addition to and have no effect upon Shipowner's obligations as set forth in the Loan Agreement and Note.

## ARTICLE FIVE

## DEFAULT AND REMEDIES

Section 5.01. *Events of Default.* If any of the following (each an "Event of Default") shall occur:

(a)     Shipowner shall fail to make any payment of any amount due under the Loan Agreement, the Note or this Mortgage as it becomes due.;

(b)     Shipowner shall be in default under the Loan Agreement, the Note or any of the other Loan Documents, whether by failure to make any payment of any amount due or to perform any Obligation under the Loan Agreement, the Note or any of the other Loan Documents, or otherwise.;

8

(c)     Shipowner shall fail to perform any other of its Obligations or covenants contained in this Mortgage.;

(d)     Any representation, warranty, certification or statement of Shipowner made in this Mortgage, the Loan Agreement, the Note or any of the other Loan Documents or in any certificate, agreement, instrument or statement furnished or made or delivered under this Mortgage, the Loan Agreement, the Note or any of the other Loan Documents is false or misleading in any material respect as of the date when made or delivered.

(e)     Shipowner shall (i) apply for or consent to the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or the like of itself or of all or a substantial part of its property, (ii) admit in writing its inability, or be generally unable, to pay its debts as such debts become due, (iii) make a general assignment for the benefit of its creditors, (iv) commence a voluntary case under the Bankruptcy Code, (v) file a petition seeking to take advantage of any other law of any nation or state relating to bankruptcy, insolvency, reorganization, winding-up, or composition and adjustment of debts, (vi) fail to controvert in a timely or appropriate manner, or acquiesce in writing to, any petition filed against itself in an involuntary case under the U.S. Bankruptcy Code, or the laws of any other state or nation, or (vii) take any corporate action for the purpose of effecting any of the foregoing.;

(f)     An involuntary proceeding shall be commenced or an involuntary petition shall be filed in a court of competent jurisdiction seeking (i) relief in respect of Shipowner, or of a substantial part of the property or assets of Shipowner, under the U.S. Bankruptcy Code or under bankruptcy laws of any nation or state, insolvency, receivership, liquidation or similar law, (ii) the appointment of a receiver, trustee, custodian, sequestrator or similar official of Shipowner or of a substantial part of the property or assets of Shipowner, or (iii) the winding-up or liquidation of Shipowner; and such proceeding or petition shall continue undismissed for thirty (30) consecutive days or an order or decree approving or ordering any of the foregoing shall continue unstayed and in effect for thirty (30) consecutive days.

(g)     An "Event of Default" occurs under, and as defined in, any of the Financing Agreements.

THEN, and in each such event Mortgagee may declare all amounts payable by Shipowner under this Mortgage and under the Financing Agreements to be immediately due and payable, without presentment, demand, protest or further notice of any kind, all of which Shipowner expressly waives. Mortgagee may then exercise any and all other rights and remedies that it may have under applicable law, and in any order, or simultaneously, including without limitation, to the fullest extent permitted by applicable law:

(A)     Exercise all the rights and remedies in foreclosure and otherwise given to mortgagees or secured parties by applicable law.;

(B)     Bring suit at law, in equity or admiralty, as it may be advised, to foreclose this Mortgage; or recover judgment for any and all amounts due under the Financing Agreements and this Mortgage, and collect them out of any and all property covered by this Mortgage and its proceeds.;

(C)     Take and enter into possession of the Vessel, at any time, wherever it may be, without legal process and without being responsible for loss or damage; and Shipowner, or any other person in possession, immediately upon demand of Mortgagee shall surrender to Mortgagee possession of the Vessel after which Mortgagee may, without being responsible for loss or damage, hold, lay up, lease, charter, operate or otherwise use the Vessel for such time and upon such terms as it may deem to be for its best advantage, and demand, collect, retain, receive, compromise and sue for all hire, freights, earnings, issues, revenues, income, profits, return premiums, salvage awards or recoveries, recoveries in general average, and all other sums due or to become due in respect of the Vessel or in respect of any insurance on the Vessel from any person

9

whomsoever, and to make, give and execute in the name of Shipowner, acquittances, receipts, releases, or other discharges for any of them, whether under seal or otherwise, and to endorse and accept in the name of Shipowner all checks, notes, drafts, warrants, agreements and all other instruments in writing with respect to the foregoing, accounting only for the net profits, if any, arising from such use and charging against all receipts all costs, expenses, charges, demands or losses by reason of such use; and if at any time Mortgagee shall avail itself of the right to take the Vessel, Mortgagee shall have the right to dock the Vessel for a reasonable time at any dock, pier or other premises of Shipowner without charge, or to dock the Vessel at any other place at the cost and expense of Shipowner.;

      (D)    Take and enter into possession of the Vessel at any time, wherever it may be, without legal process and, if it seems desirable to Mortgagee and without being responsible for loss or damage, sell the Vessel at any place and at such time as Mortgagee may specify and in such manner as Mortgagee may deem advisable, free from any claim by Shipowner in admiralty, in equity, at law or by statute, after first giving notice of the time and the place of sale with a general description of the property in the following manner unless applicable law requires a different procedure and process:

      (i)    by publishing such notice for 10 consecutive publication days in a daily newspaper of general circulation published in Orange County, California, USA;

      (ii)    if the place of sale should not be in Orange County, California, USA, then also by publication of a similar notice in a newspaper of general circulation, if any, published at the place of sale; and

      (iii)    by mailing a similar notice to Shipowner on or before the day of first publication pursuant to (i) or (ii), above.

Mortgagee or any agent appointed by Mortgagee may become the purchaser or accept a conveyance of title to the Vessel or any part of the Vessel at any such sale, and shall have the right to credit on the purchase price any and all sums of money due in respect of this Mortgage and the Financing Agreements or other Obligations.

      (E)    Have a receiver of the Vessel appointed as a matter of right in any suit under this Section 5.01 (and any such receiver shall have the rights of Mortgagee under paragraphs (C) and (D) of this Section 5.01).

      Section 5.02. *Rights on Default.* Upon the occurrence of an Event of Default, Mortgagee shall have the power and authority to exercise any and all rights and remedies provided at law, in admiralty or in equity, including without limitation the rights provided under the laws of the Republic of the Marshall Islands. Any sale of the Vessel made pursuant to this Mortgage, whether under the power of sale hereby granted or any judicial proceedings, shall operate to divest all right, title and interest of any nature whatsoever of Shipowner in and to the Vessel sold and in and to such proceeds of sale, except to the extent that a surplus may remain after all the Obligations are satisfied. Shipowner hereby appoints Mortgagee its attorney-in-fact to execute and deliver to any purchaser to the fullest extent permitted by applicable law, and is hereby vested with full power and authority to make, in the name and on behalf of Shipowner, a good conveyance of the title to the Vessel. In the event of the sale of the Vessel under any power contained in this Mortgage, Shipowner will, if and when required by Mortgagee, execute such form of conveyance of the Vessel as Mortgagee may direct or approve as necessary to conveyor confirm the conveyance of the Vessel.

      Whenever any right to enter and take possession of the Vessel accrues to Mortgagee it may require Shipowner to deliver, and Shipowner shall on demand, at its own cost and expense, deliver the Vessel to Mortgagee, as requested by Mortgagee, to the fullest extent permitted by applicable law. If any legal proceedings shall be taken to enforce any right under this Mortgage, Mortgagee shall be entitled as a matter of

right, without notice or demand to the appointment of a receiver of the Vessel, the freights, hire, earnings, issues, revenues, income and profits due or to become due and arising from the Vessel's operation, and, upon the occurrence of an Event of Default, Shipowner hereby assigns the rents, revenues and other income of the Vessel to Mortgagee as further security, but, notwithstanding the appointment of any receiver, Mortgagee shall be entitled to retain possession and control of, and to collect and receive the income from the Vessel and cash and other personal property held by, or required to be deposited or pledged with, Mortgagee.

Shipowner authorizes and empowers Mortgagee or its appointees or any of them to appear in the name of Shipowner, its successors and assigns, in any court of any country or nation of the world, where any suit is pending against the Vessel because of or on account of any alleged lien against the Vessel from which the Vessel has not been released and to take such proceedings as they or any of them may seem proper towards the defense of such suit and the discharge of such lien, and all expenditures made or incurred by them or any of them for the purpose of such defense or discharge shall be a debt due from Shipowner, its successors and assigns, to Mortgagee and shall be secured by the lien of this Mortgage.

Each and every power and remedy given to Mortgagee shall be cumulative and shall be in addition to every other power and remedy given or now or hereafter existing at law, in equity, in admiralty or by statute, and each and every power and remedy whether given by this Mortgage or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay or omission by Mortgagee in the exercise of any right or power or in the pursuance of any remedy accruing upon any Event of Default shall impair any such right, power or remedy or be construed to be a waiver of any such Event of Default or to be an acquiescence; nor shall the acceptance by Mortgagee of any security or of any payment on account of any past default be construed to be a waiver of any right to take advantage of any future Event of Default or of any past Event of Default not completely cured.

Section 5.03. *Waiver of Rights by Shipowner.* To the full extent that it may lawfully so agree, Shipowner will not at any time insist upon, plead, claim or take the benefit or advantage of any appraisement, valuation, stay, extension, moratorium or redemption law now or hereafter in force, to prevent, delay or hinder the enforcement of this Mortgage or the absolute sale of the Vessel, or its possession by any purchaser at any sale under Section, 5.01 above. Shipowner, for itself and all who may claim under it, as far as it or they now or hereafter lawfully may, hereby waives the benefit of all such laws.

If any law in this Section referred to and now in force, of which Shipowner might take advantage despite this Section, shall hereafter be repealed or cease to be in force, that law shall not thereafter be deemed to constitute any part of this Mortgage or to preclude the application of this Section.

Section 5.04. *Shipowner not Released by Transfer, Destruction, etc.* No transfer, renewal, extension or assignment of this Mortgage or any interest in it, the Loan Agreement, the Note, the other Financing Agreements or loss, injury, damage, destruction, confiscation or seizure of all or any part of the Vessel shall release Shipowner from its obligations under this Mortgage.

Section 5.05. *Right of Mortgagee to Recover Judgment.* In case of the happening of an Event of Default under this Mortgage, Shipowner will pay to Mortgagee an amount of money sufficient to satisfy the whole amount that then shall have become due and payable under the Financing Agreements, including principal, interest, fees, or all of the foregoing, as the case may be and such further amounts as shall be sufficient to cover the cost and expenses of collection. If Shipowner shall fail to pay any of these amounts immediately, Mortgagee shall be entitled to recover judgment for the whole amount so due and unpaid.

11

Mortgagee shall be entitled to recover judgment, either before or after, or during the pendency of, any proceedings for the enforcement of the lien of this Mortgage, and the right of Mortgagee to recover judgment shall not be affected by the exercise of any other right, power or remedy for the enforcement of the provisions of this Mortgage or the foreclosure of this Mortgage. In case of a sale of any or all of Shipowner's property, and of the application of the proceeds of sale to the payment of the debt this Mortgage secures, Mortgagee shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon this Mortgage, the Loan Agreement, the Note, and the other Financing Agreements, including expenses, and shall be entitled to recover judgment for any portion of the debt remaining unpaid. No recovery of any such judgment by Mortgagee, and no levy of any execution under any such judgment on property subject to this Mortgage, or on any other property, shall in any manner or to any extent affect the lien of this Mortgage on the Vessel, or any liens, rights, powers or remedies of Mortgagee under this Mortgage, which shall continue unimpaired.

ARTICLE SIX

MISCELLANEOUS PROVISIONS

Section 6.01. *Amount; Continuation in Effect.* The total amount of this Mortgage is US $21,000,000.00 (Twenty-One Million and No/100 U.S. Dollars) (plus interest, service charge, premium, expenses, fees and performance of Mortgage covenants which are also secured by this Mortgage). This Mortgage shall continue in force until the later of: so long as (1) any amount due under the Financing Agreements or under this Mortgage remains unpaid, or (2) any present or future outstanding obligations secured by this Mortgage have not been fully repaid or otherwise performed.

Section 6.02. *Successors and Assigns.* All the terms, provisions, conditions and covenants this Mortgage contains shall be binding upon Shipowner and its successors and assigns and shall inure to the benefit of Mortgagee and its successors and assigns.

Section 6.03. *Titles and Section Headings; Capitalized Terms.* The Section headings are for convenience only and shall not affect this Mortgage's construction. Capitalized terms used in this Mortgage and not otherwise defined have the meanings set forth in that certain Loan Agreement dated of even date between Shipowner and Mortgagee (such loan agreement, as it may from time to time be supplemented, modified and amended, is referred to in this Mortgage as the "Loan Agreement").

Section 6.04. *Governing Law.* This Mortgage shall be deemed to be a mortgage under the laws of the Republic of the Marshall Islands and shall, for all matters relating to its validity as a mortgage under those laws, be construed in accordance with the laws of the Republic of the Marshall Islands.

Section 6.05. *Notices.* All notices, requests and other communications to any party shall be in writing (including prepaid overnight courier, facsimile transmission or similar writing), and shall be given to such party at its address or fax number set forth below, or at such other address or fax number as such party may hereafter specify for the purpose of notice to Mortgagee and Shipowner. Each such notice, request or other communication shall be effective (a) if given by fax, when such fax is transmitted to the fax number specified in this Section or telephonic confirmation, or (b) if given by mail, prepaid overnight courier or any other means, when received at the address specified in this Section or when delivery at such address is refused.

Shipowner:

Spearfish Ventures Ltd. Attention:
James P. Baldwin

12

270 Newport Center Drive, Suite 200 Newport
Beach, California 92660 Fax: (949) 644-7856

Mortgagee:

Sea Prestigio, LLC
Attention: Emilio F. Gonzalez
15 Enterprise, Suite 550
Aliso Viejo, California 92656

Section 6.06. *Costs and Expenses.* Shipowner shall pay Mortgagee upon demand (i) all costs of filing and recording incurred in connection with this Mortgage, including Mortgagee's attorneys' fees, and (ii) if an Event of Default occurs, all out-of-pocket costs and expenses, all attorneys' fees incurred by Mortgagee in connection with the Event of Default and collection and enforcement proceedings. Shipowner shall pay or reimburse Mortgagee for any fees or charges payable with respect to the execution, delivery, recording, or filing of this Mortgage. Shipowner shall pay all such costs and expenses on the date of this Mortgage and thereafter shall from time to time pay all additional costs and expenses within fifteen (15) days of receipt of invoice. All of the obligations of Shipowner under this Section 6.06 shall survive the satisfaction and payment of the Obligations and the termination of this Mortgage.

Section 6.07. *General Indemnity.* Shipowner shall indemnify, pay and hold harmless Mortgagee, and the officers, directors, employees, agents and affiliates of Mortgagee (collectively, the "Indemnitees") from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, reasonable attorneys' fees and expenses) that may be imposed on, incurred by or asserted against the Indemnitees, in any manner relating to or arising out of this Mortgage or any other agreement, document or instrument executed and delivered by Shipowner in connection herewith (collectively, the "indemnified liabilities"); provided that Shipowner shall have no obligation to an Indemnitee with respect to indemnified liabilities arising solely from gross negligence or willful misconduct of that Indemnitee as determined by a court of competent jurisdiction in a final order, after appeal, if any. To the extent the undertaking to indemnify, pay and hold harmless set forth in the preceding sentence may be unenforceable because it is violative of any law or public policy, Shipowner shall contribute the maximum portion that is permitted under applicable law to the payment and satisfaction of all indemnified liabilities incurred by the Indemnitees or any of them. The provisions of the undertakings and indemnification set out in this Section 6.07 shall survive satisfaction and payment of the Obligations and the termination of this Mortgage.

Section 6.08. *Joint Participation.* Shipowner has participated in the drafting of this entire Mortgage and expressly acknowledges its joint participation, to avoid application of any rule construing contractual language against the party which drafted the language.

Section 6.09. *Time of Essence.* Time shall be of the essence with respect to Shipowner's performance of its obligations pursuant to this Mortgage.

Section 6.10. *Third Party Borrower Provisions.* Shipowner acknowledges that the mortgage, liens and security interests created or granted by this Mortgage and by the other Loan Documents will secure obligations of Persons other than Shipowner (individually and collectively, "Third Party Borrower").

(a)       The acceptance of this Mortgage by Mortgagee is solely as an accommodation to Shipowner and Third Party Borrower at their request. Mortgagee shall incur no liability to Third Party Borrower or Shipowner as a result. To induce Mortgagee to do so, and in consideration of that

13

acceptance, Shipowner shall indemnify and hold Mortgagee harmless from and against any and all liabilities, expenses, losses, damages and claims of damage or injury asserted against Mortgagee by Shipowner, Third Party Borrower or by any other Person arising from or incurred by reason of Mortgagee's handling of the Loan Agreement, the Note or from Mortgagee's acceptance of this Mortgage, or reliance by Mortgagee on any requests or instructions from Shipowner or Third Party Borrower, or any other action taken by Mortgagee in good faith with respect to this Mortgage or the other Loan Documents.

(b)     Mortgagee may, at any time and from time to time, without notice or demand, and without affecting the enforceability or security of this Mortgage or of any other Loan Document:

(i)     supplement, modify, amend, extend, renew, accelerate, or otherwise change the time for payment or the terms of the obligations of Third Party Borrower or any part thereof, including any increase or decrease of the rate(s) of interest thereon;

(ii)     supplement, modify, amend or waive, or enter into or give any agreement, approval or consent with respect to, the obligations of Third Party Borrower or any part thereof or any of the Loan Documents or any additional security or guaranties, or any condition, covenant, default, remedy, right, representation or term thereof or thereunder;

(iii)     accept new or additional instruments, documents or agreements in exchange for or relative to any of the Loan Documents or the obligations of Third Party Borrower or any part thereof;

(iv)     accept partial payments on the obligations of Third Party Borrower;

(v)     receive and hold additional security or guaranties for the obligations of Third Party Borrower or any part thereof;

(vi)     release, reconvey, terminate, waive, abandon, subordinate, exchange, substitute, transfer and enforce any security or guaranties, and apply any security and direct the order or manner of sale thereof as Mortgagee in its sole and absolute discretion may determine;

(vii)     release any Person or any guarantor from any personal liability with respect to the obligations of Third Party Borrower or any part thereof;

(viii)     settle, release, liquidate or enforce any obligations of Third Party Borrower and any security or guaranty therefor on terms satisfactory to Mortgagee or by operation of applicable laws or otherwise in any manner, consent to the transfer of any security and bid and purchase at any sale; and

(ix)     consent to the merger, change or any other restructuring or termination of the existence of Third Party Borrower or any other Person, and correspondingly restructure the obligations of Third Party Borrower, and any such merger, change, restructuring or termination shall not affect the liability of Shipowner or the continuing existence of this Mortgage, under any other Loan Document to which Third Party Borrower or Shipowner is a party, or the enforceability of this Mortgage or any Loan Document with respect to all or any part of the obligations of Third Party Borrower or Shipowner.

(c)     Upon the occurrence of and during the continuance of any default, Mortgagee may enforce this Mortgage independently of any other remedy or security Mortgagee at any time may have or hold in connection with the obligations of Third Party Borrower or Shipowner. Mortgagee need not marshal assets in favor of Third Party Borrower or Shipowner or any other Person or to proceed upon or

14

against or exhaust any other security or remedy before proceeding to enforce this Mortgage. Shipowner expressly waives any right to require Mortgagee to marshal assets in favor of Shipowner or Third Party Borrower or any other Person or to proceed against any other Person or any property provided by any other Person. Mortgagee may proceed against any Persons or property in such order as it shall determine in its sole and absolute discretion. Mortgagee may file a separate action or actions against Shipowner or Third Party Borrower, whether action is brought or prosecuted with respect to any other security or against any other Person, or whether any other Person is joined in any such action or actions. Mortgagee and Third Party Borrower and any other Person may deal with each other in connection with the obligations of Third Party Borrower or otherwise, or alter any contracts or agreements now or hereafter existing between any of them, in any manner whatsoever, all without in any way altering or affecting the security of this Mortgage. The rights of Mortgagee under this Mortgage shall be reinstated and revived, and the enforceability of this Mortgage shall continue, with respect to any amount at any time paid on account of the obligations of Third Party Borrower or Shipowner which Mortgagee returns, whether voluntarily or not, upon bankruptcy, insolvency or reorganization of Third Party Borrower or Shipowner or any other Person, or otherwise, all as though such amount had not been paid. The enforceability of this Mortgage at all times shall remain effective even though the obligations of Shipowner or Third Party Borrower, including any part thereof or any other security or guaranty therefor, may be or hereafter may become invalid or otherwise unenforceable as against Shipowner, Third Party Borrower, or any other Person and whether or not Third Party Borrower, Shipowner, or any other Person shall have any personal liability with respect thereto. Shipowner expressly waives any and all defenses now or hereafter arising or asserted by reason of (a) any disability or other defense of Third Party Borrower or any other Person with respect to the obligations of Third Party Borrower; (b) the unenforceability or invalidity of any security or guaranty for the obligations of Third Party Borrower or the lack of perfection or continuing perfection or failure of priority of any security for the obligations of Third Party Borrower; (c) the cessation for any cause whatsoever of the liability of Third Party Borrower or any other Person (other than by reason of the full payment and performance of all obligations of Third Party Borrower); (d) any failure of Mortgagee to marshal assets in favor of Third Party Borrower or any other Person; (e) any failure of Mortgagee to give notice of sale or other disposition to Third Party Borrower or any other Person or any defect in any notice that may be given in connection with any sale or disposition; (f) any failure of Mortgagee to comply in any non material respect with applicable laws in connection with the sale or other disposition of any property or other security for any obligation of Third Party Borrower; (g) any act or omission of Mortgagee or others that directly or indirectly results in or aids the discharge or release of Third Party Borrower or any other Person or the obligations of Third Party Borrower or any other security or guaranty therefor by operation of law or otherwise; (h) any law which provides that the obligation of a surety or guarantor must neither be larger in amount nor in other respects more burdensome than that of the principal or which reduces a surety's or guarantor's obligation in proportion to the principal obligation; (i) any failure of Mortgagee to file or enforce a claim in any bankruptcy or other proceeding with respect to any Person; (j) the election by Mortgagee, in any bankruptcy proceeding of any Person, of the application or non application of Section 1111 (b )(2) of the United States Bankruptcy Code; (k) any extension of credit or the grant of any lien under Section 364 of the United States Bankruptcy Code; (1) any use of cash collateral under Section 363 of the United States Bankruptcy Code; (m) any agreement or stipulation with respect to the provision of adequate protection in any bankruptcy proceeding of any Person; (n) the avoidance of any lien or security interest in favor of Mortgagee for any reason; or (o) any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against any Person, including any discharge of, or bar or stay against collecting, all or any of the obligations of Third Party Borrower (or any interest thereon) in or as a result of any such proceeding. Without in any way limiting the foregoing, with respect to the Loan Documents and all obligations secured hereby, Shipowner: (A) waives all rights and defenses arising out of an election of remedies by Mortgagee, even though that election of remedies, such as non-judicial foreclosure with respect to security for the obligations of Third Party Borrower, has destroyed Shipowner's rights of subrogation and reimbursement against Third Party Borrower or any other Person by the operation of Section

15

580d of the California Code of Civil Procedure or otherwise; and (B) waives any right to a fair value hearing or similar proceeding following a nonjudicial foreclosure, whether arising under California Code of Civil Procedure Section 580a or otherwise.

      (d)    Shipowner represents and warrants to Mortgagee that Shipowner has established adequate means of obtaining from each Third Party Borrower, on a continuing basis, financial and other information pertaining to the businesses, operations and condition (financial and otherwise) of each Third Party Borrower and its properties, and Shipowner now is and hereafter will be completely familiar with the businesses, operations and condition (financial and otherwise) of each Third Party Borrower and its properties. Shipowner hereby expressly waives and relinquishes any duty on the part of Mortgagee to disclose to Shipowner any matter, fact or thing related to the businesses, operations or condition (financial or otherwise) of Third Party Borrower or Third Party Borrower's properties, whether now known or hereafter known by Mortgagee during the life of this Mortgage. With respect to any of the obligations of Third Party Borrower or Shipowner, Mortgagee need not inquire into the powers of Third Party Borrower or Shipowner, or of the partners, members, officers or employees of Third Party Borrower or Shipowner acting or purporting to act on its behalf.

      (e)    Without limiting the foregoing, or anything else contained in this Mortgage, Shipowner waives all rights and defenses that it may have because the obligations secured by this Mortgage are secured by real property. This means, among other things:

      (i)    Mortgagee may collect on the obligations secured by this Mortgage by enforcing this Mortgage without first foreclosing on any real or personal property collateral pledged by Third Party Borrower or any other Person or otherwise proceeding against Third Party Borrower or any other Person; and

      (ii)    If Mortgagee forecloses on any real property collateral pledged by Third Party Borrower or any other Person: (i) the amount of the obligations secured by this Mortgage may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (ii) Mortgagee may enforce this Mortgage even if Mortgagee, by foreclosing on any other real property collateral, has destroyed any right that Shipowner may have to collect from Third Party Borrower or any other Person.

This is an unconditional and irrevocable waiver of any rights and defenses that Shipowner may have because the Obligations or any other obligations of Third Party Borrower are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

      (f)    Notwithstanding anything to the contrary elsewhere contained in this Mortgage or in any other Loan Document to which Third Party Borrower or Shipowner is a party, until the obligations secured by this Mortgage are paid in full, Shipowner hereby waives any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to setoff, and to any other rights and defenses available to it by reason of California Civil Code Sections 2787 to 2855, inclusive, and to any other rights that could accrue to a surety against a principal, to a guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker and which Shipowner may have or hereafter acquire against Third Party Borrower or any other Person in connection with or as a result of Shipowner's or Third Party Borrower's execution, delivery and/or performance of this Mortgage or any other Loan Document to which Third Party Borrower or Shipowner is a party. Shipowner shall not have or assert any such rights against Third Party Borrower or Third Party Borrower's successors and assigns or any other Person (including any surety), either directly or as an attempted setoff to any action

16

commenced against Third Party Borrower by Shipowner (in any capacity) or any other Person until the obligations secured by this Mortgage are paid in full. This waiver shall benefit Mortgagee and shall not limit or otherwise affect Shipowner's liability under this Mortgage, under any other Loan Document to which Shipowner is a party, or the enforceability of any of them.

(g)     Shipowner warrants that each of the waivers and consents set forth in this Mortgage is made with full knowledge of its significance and consequences, and with the understanding that events giving rise to any defense waived may diminish, destroy or otherwise adversely affect rights which Shipowner may have against Third Party Borrower, Mortgagee, or others, or against any property. If any of the waivers or consents in this Mortgage are determined to be contrary to any applicable law or public policy, such waivers and consents shall be effective to the maximum extent permitted by law.

Section 6.11. *Release of Mortgage.*

(a)     Mortgagee shall issue a full release of the Vessel from the Mortgage, so long as all of the following conditions are satisfied at the time of, and with respect to, such release:

(i)     No Event of Default has occurred and is continuing, and no event has occurred that with notice or the passage of time could become an Event of Default; and

(ii)     Shipowner shall have paid all fees and costs incurred in connection with the release, including without limitation all filing fees and costs, transfer and other taxes, attorneys' fees and any other fees and costs incurred by Mortgagee; and

(iii)     Shipowner shall have paid or caused to be paid to the Mortgagee the principal of the indebtedness aforesaid and interest thereon as and when the same became due and payable in accordance with the terms of this Mortgage and of the Note and the Loan Agreement and all other such sums as may have been or are secured by this Mortgage in accordance with the terms hereof, and the Shipowner shall have performed, observed and complied with all the covenants, terms and conditions in the Note and the Loan Agreement and in this Mortgage, expressed or implied, to be performed.

(b)     Mortgagee shall have no obligation to release the Vessel, or to deposit any instrument or notice in any escrow for any such release, unless Shipowner has up to that time fully performed all of its obligations under the Loan Documents.

SPEARFISH VENTURES LTD., a British
Virgin Islands company, as Shipowner


By: _James P. Baldwin_____
     James P. Baldwin
     Its:  President

17

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_

On _July 6, 2010_ before me, _Teresa Lynn Morgan, Notary Public_
Date                              Here Insert Name and Title of the Officer

personally appeared _James P. Baldwin_
                                          Name(s) of Signer(s)

**TERESA LYNN MORGAN**
**Commission # 1730036**
**Notary Public - California**
**Orange County**
**My Comm. Expires Apr 4, 2011**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Teresa Lynn Morgan_
                  Signature of Notary Public

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Preferred Ship Mortgage - Spearfish Ventures, LTD, Mortgagor, to Sea Prestigio, LLC, Mortgagee_

Document Date: _June 30, 2010_                                    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _James P. Baldwin_
☐ Individual
☑ Corporate Officer — Title(s): _President_
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_Spearfish Ventures, LTD_

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

STATE OF CALIFORNIA        )
                                     )
COUNTY OF _____ )

On _____, 2010, before me, _____, a Notary Public, personally appeared Ronald P. Therrien who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

**EXHIBIT A**
**PROMISSORY NOTE**


(PROMISSORY NOTE FOLLOWS)


**EXHIBIT A**

19

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST

$21,000,000.00                                                                    June *30*, 2010

FOR VALUE RECEIVED, FBP INVESTMENTS, LP, a Delaware limited partnership ("**FBP Investments**"), JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE JAMES P. BALDWIN TRUST NO. 1 (the "**JPB Trust**"), JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE NANCY L. BALDWIN TRUST NO. 1 (the "**NLB Trust**"), CACHAL INVESTMENTS, S. DE R.L. DE C.V., a Mexican corporation ("**Cachal**"), and SPEARFISH VENTURES LTD., a British Virgin Islands company ("**Spearfish**") (each foregoing party may be referred to herein as "**Borrower**" and together collectively as "**Borrowers**") hereby promise to pay to the order of SEA PRESTIGIO, LLC, a Delaware limited liability company ("**Holder**"), at Holder's office at 15 Enterprise, Suite 550, Aliso Viejo, CA 92656, or at such other place as Holder may from time to time designate in writing, the principal amount of Twenty-One Million Dollars ($21,000,000.00) as disbursed under that certain loan agreement between Holder and Borrowers of even date herewith (the "**Loan Agreement**"), plus interest as specified in this promissory note (this "**Note**"). This Note evidences a loan (the "**Loan**") from Holder to Borrowers, and is one of several Loan Documents, as defined and designated in the Loan Agreement. This Note is subject to the terms and conditions of the Loan Agreement. Capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the Loan Agreement, unless otherwise provided herein.

    1.   Security for the Loan. Borrowers' obligations under this Note are secured, *inter alia*, by (i) that certain Deed of Trust and Security Agreement With Assignment of Leases, Rents and Agreements executed by the JPB Trust and the NLB Trust, as Trustors, in favor of Holder, as Beneficiary, to be recorded against the real property located at 114 Emerald Bay, Laguna Beach, California (the "**Emerald Bay Property**") and the personalty located at the Emerald Bay Property (collectively, "**Mortgage One**"), (ii) any and all such documents, instruments or letters as are required or deemed necessary by Holder (in Holder's sole and absolute discretion) or applicable governmental agencies or title companies to evidence and perfect a first priority lien in favor of Holder against the Cabo Property, executed by Cachal, in recordable form, to be recorded against the Cabo Property ("**Mortgage Two**"), (iii) the Preferred Ship Mortgage, executed by Spearfish, in recordable form, with respect to the Vessel, and to be recorded in the Office of the Deputy Commissioner of Maritime Affairs of the Republic of the Marshall Islands at Ft. Lauderdale, Florida, USA ("**Mortgage Three**"), and (iv) any other deed to secure debt, executed by any Borrower or Borrowers and delivered to Lender as security for the Loan, as the same may be modified, supplemented or amended. Mortgages One, Two, and Three, together with any other deed to secure debt delivered by Borrowers to Lender shall be collectively referred to herein as the "**Mortgages**" and singularly as "**Mortgage**". The real property referenced in this Section 1 shall be referred to herein as the "**Property**" or the "**Properties**", as appropriate.

    2.   Interest. Borrowers hereby promise to pay to Holder interest on the outstanding principal balance of this Note, from the date hereof until the entire indebtedness evidenced by this Note (including all accrued and unpaid interest) is repaid in full, at the rate of sixteen percent (16%) per

712477

annum ("**Note Rate**"). Said interest shall be compounded on a monthly basis on the entire outstanding balance under this Note, including unpaid principal and accrued and unpaid interest, from time to time outstanding.

3. <u>Interest Payments</u>.

3.1.   Borrowers shall pay to Holder monthly, in arrears, interest equal to one-half (1/2) of the Note Rate, divided by twelve, applied to the then outstanding balance under this Note, including unpaid principal and accrued and unpaid interest, commencing on the date hereof, and continuing to be due and payable on the first (1st) Business Day (as hereinafter defined) of each calendar month thereafter until the Maturity Date (defined in <u>Section 4.1</u> below) or, if applicable, the Extended Maturity Date (defined in <u>Section 4.2</u> below). All interest accrued pursuant to <u>Section 2</u> above, but unpaid by Borrowers under this Section, shall be added to the outstanding principal of this Note. As used in this Note, the term "**Business Day**" shall mean a day other than a Saturday, Sunday or a day on which banking institutions in the State of California are authorized or required by law to close. If the due date for any payment is not a Business Day, such due date shall be deemed for all purposes to fall on the next Business Day, and any such extension shall be included in the computation of interest payments.

3.2.   If the entire outstanding balance under this Note has not been repaid on or before the Maturity Date, or Extended Maturity Date (if the date of this Note's maturity has been extended pursuant to <u>Section 4.2</u> below), then such unpaid balance shall be immediately due and payable (without notice to, or demand upon, Borrowers) including all unpaid, and accrued interest thereon, and with interest computed from and after that date in accordance with the terms of the Note, until the entire outstanding balance is paid in full.

3.3.   If Borrowers are required by law to deduct any amounts from, or with respect to, any principal or interest payment hereunder, then (i) the sum payable to Holder shall be increased as may be necessary so that, after making all required deductions, Holder receives an amount equal to the sum it would have received had no deductions been made, (ii) Borrowers shall make such deductions, and (iii) Borrowers shall pay the full amount deducted to the relevant taxation authority or other authority in accordance with applicable law. Borrowers shall pay all stamp and documentary taxes. If, notwithstanding the foregoing, Holder pays such taxes, Borrowers shall reimburse Holder for the amount paid. Borrowers shall furnish Holder official tax receipts or other evidence of payment of all taxes.

4. <u>Maturity Date</u>.

4.1.   If the Maturity Date is not extended pursuant to <u>Section 4.2</u> below, the entire unpaid principal balance of this Note, together with all accrued and unpaid interest and all other amounts owing hereunder, shall be due and payable, by Borrowers to Holder, on that date which is three (3) years from the date hereof (the "**Maturity Date**");

4.2.     Ninety (90) days prior to the Maturity Date, Borrowers may, by written notice to Holder, request a one (1) year extension of the Maturity Date. If Holder, in its sole and absolute discretion, grants to Borrowers this extension request, the entire unpaid principal balance of this Note, together with all accrued and unpaid interest and all other amounts owing hereunder, shall be due and payable, by Borrowers to Holder, on that date which is one (1) year from the Maturity Date (the **"Extended Maturity Date"**). If the maturity of this Note is extended pursuant to this Section, Borrowers shall pay to Holder upon the first (1st) day of the month following the Maturity Date and as consideration for the grant of such extension, a fee equal to two percent (2%) of the entire indebtedness evidenced by this Note, including unpaid principal and all accrued and unpaid interest, as of the Maturity Date.

5.   Late Charge.   If any sum payable under this Note is not paid in full within ten (10) calendar days after the date on which it is due, Borrowers shall pay to Holder, in addition to all other charges hereunder, a late charge in the amount of five percent (5%) of the overdue payment.

6.   Interest Rate Upon Event of Default.   Upon the occurrence of any Event of Default (as defined in Section 13 below) hereunder, and subject to any legal limitations applicable under Section 22 below, the entire indebtedness evidenced by this Note, as of the date of said Event of Default, shall bear interest at a rate of twenty-one percent (21%) per annum ("**Default Interest Rate**") from the date of the occurrence of said Event of Default through and until the full amount owing under this Note is repaid in full.  All accrued and unpaid interest not paid prior to the occurrence of the Event of Default shall be added to the principal, shall become and be treated as a part thereof, and shall thereafter also bear interest at the Default Interest Rate.

7.   Holder's Records as to Sums Owing.   Holder's records as to the amounts of principal, interest and other sums owing hereunder shall be conclusive and binding.

8.   Prepayment.   Borrowers may prepay, in full or in part, principal advanced hereunder and accrued and unpaid interest thereon, provided that in addition to such prepayment, Borrowers shall pay to Holder an additional amount equal to the interest that such prepaid amount would have accrued if not paid to Holder until the Maturity Date. Holder shall not be obligated to re-advance to Borrowers any sums prepaid by Borrowers, whether prepaid voluntarily or involuntarily, pursuant to the terms of any Loan Document. If Borrowers prepay all or any portion of the Loan, Borrowers shall also pay to Holder any and all sums necessary to compensate Holder for all costs, expenses, claims, penalties and liabilities incurred by Holder by virtue of the repayment or prepayment of funds.

9.   Lawful Money.   Principal and interest are payable in lawful money of the United States of America.

10. Applications of Payments; Late Charges.

(a)     Payments received by Holder pursuant to the terms hereof shall be applied first to any amounts due and owing to Holder other than principal or interest, next to accrued interest, and then to principal; provided, however, during any Event of Default, Holder may

apply any payments received to the obligations owing to Holder in such order and manner as Holder in its sole discretion shall determine.

(b)     If any payment of principal or interest is not paid when due, such late payment shall, at Holder's option, bear interest at the Default Interest Rate (as defined in Section 6 above) from the day such payment was due until it is paid. In addition, if any payment is ten (10) or more days overdue, Holder will have the option to assess a late charge of five percent (5%) of the amount so overdue, as provided in Section 5 above. In connection therewith, Borrowers and Holder agree as follows:

(i)     Because of such late payment, Holder will incur certain costs and expenses including, without limitation, administrative costs, collection costs, loss of interest, and other direct and indirect costs in an uncertain amount;

(ii)     It would be impractical or extremely difficult to fix the exact amount of such costs in such event; and

(iii)     The Default Interest Rate and the late charge are reasonable and good faith estimates of such costs.

The application of the Default Interest Rate or the assessment of a late charge to any such late payment as described in this Section will not be interpreted or deemed to extend the period for payment or otherwise limit any of Holder's remedies hereunder, or under the other Loan Documents.

11. Security.  This Note is secured by the Mortgages and by the Loan Documents.

12. Borrowers' Representations.  Borrowers hereby reaffirm all representations and warranties made by them in the Loan Agreement.

13. Events of Default.  Borrowers shall be in default under this Note if any Borrower fails to comply with, or perform when due, any covenant, condition, agreement or provision of such Borrower contained in this Note or any other Loan Document, including the Loan Agreement (each such default shall be referred to herein as an "**Event of Default**").

14. Acceleration and Other Remedies.  Upon the occurrence of any Event of Default, Holder may, in its sole and absolute discretion, declare the outstanding principal balance of this Note, together with all accrued and unpaid interest thereon and all related charges, to be immediately due and payable. All rights and remedies provided to Holder under this Note are cumulative and shall be in addition to all other rights and remedies of Holder at law or in equity, and all such rights and remedies may be exercised singly, successively and/or concurrently. If Holder delays in exercising or fails to exercise any of it rights under this Note, that delay or failure shall not constitute or be deemed to constitute  a waiver of any of Holder's rights, or of any breach, default or failure of condition of or under this Note.  No waiver by Holder of any of its rights, or of any such breach, default or failure of a condition shall be effective, unless the waiver is expressly acknowledged and stated in a writing signed by Holder.

712477

15. <u>Acceleration Upon Transfer</u>.  The Mortgages contain the following "due on transfer" provision which provides that:

If the Trustors sell, convey, assign or otherwise transfer (hereinafter collectively referred to as a "**Sale**") or further pledge, mortgage or otherwise encumber (hereinafter collectively referred to as an "**Encumbrance**") all or any part of the Trust Estate or any interest in the Trust Estate, whether any such Sale or Encumbrance occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to the Trustors.  For purposes of this Deed of Trust, a transfer of the interests in the Trustors, whether direct or indirect or in one or more transactions, shall be deemed a transfer of the Trustors' interest in the Trust Estate and, therefore, a "Sale" for purposes of [this provision].

16. <u>Waiver</u>.  Borrowers hereby waive diligence, presentment, protest and demand, notice of protest, dishonor and nonpayment of this Note, and expressly agree that, without in any way affecting the liability of Borrowers hereunder, Holder may extend any maturity date or the time for payment of any installment due hereunder, accept additional security, release any party liable hereunder and release any security now or hereafter securing this Note.  Borrowers further waive, to the fullest extent permitted by law, the right to plead any and all statutes of limitations as a defense to any demand on this Note, or on any deed of trust, security agreement, lease assignment, guaranty or other agreement now or hereafter securing this Note.

17. <u>Joint and Several Obligations and Liability</u>.  Each Borrower shall be jointly and severally liable for all obligations, agreements and liabilities under this Note and the Loan Documents.

18. <u>Cross-Default</u>.  A default under any of the Loan Documents, including this Note, shall constitute a default under all other Loan Documents.

19. <u>Notices</u>.  All notices and other communications provided for in this Note shall be delivered in accordance with the terms of the Loan Agreement.

20. <u>Costs of Enforcement</u>.  In the event it becomes necessary for Holder to retain legal counsel for the enforcement of this Note or any of its terms, Borrowers promise and agree to pay, on demand, all costs and expenses of such enforcement, including reasonable attorneys' fees incurred by Holder, whether or not suit is filed.  Borrowers shall also reimburse Holder for all costs and expenses, including attorneys' fees, incurred in the representation of Holder in any bankruptcy, insolvency, reorganization or other debtor-relief proceeding of or relating to Borrowers.

21. <u>Time is of Essence</u>.  Time is of the essence as to every term, condition and provision of this Note.

22. <u>Usury Laws</u>.  In no event, whether by acceleration of this Note, or otherwise, shall the amount of interest paid or agreed to be paid under this Note exceed the highest lawful rate allowed by applicable law as of the date of this Note, it being the express intention of Holder and Borrowers

712477

that in such event Holder shall be entitled to receive the maximum amount of interest allowed by applicable law.  If fulfillment of any provision of this Note shall involve exceeding the maximum amount of interest as prescribed by law, then the obligation to be fulfilled shall be reduced so as not to exceed said limit.  If for any reason interest, or any other payment determined to be in the nature of interest, is charged or collected by Holder, or is paid by Borrowers and is determined to exceed the limit prescribed by law, any sums so charged, collected or paid which exceed such limit shall be deemed to have resulted from mutual mistake, and such sums which exceed such limit shall be refunded to Borrowers.  Borrowers hereby acknowledge that the loan evidenced by this Note is exempt from the restrictions on interest rates imposed by Section 1 of Article XV of the California Constitution.

23.  <u>Governing Law</u>.  Unless otherwise agreed to by the Parties, this Note shall be deemed to have been made in the State of California, and this Note and the other Loan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without regard to the conflicts of laws principles.  Borrowers and Holder each unconditionally and irrevocably waive(s) any right to assert that the law of any other jurisdiction governs this Note or any of the other Loan Documents.

24.  <u>Jurisdiction</u>.  Each Borrower irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Note or the other Loan Documents shall be brought in the state or federal courts in Orange County, California, (b) submits to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which they may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  Each Borrower irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to Borrowers at the address provided in the Loan Agreement.  Nothing in this <u>Section 24</u> shall affect the right of Holder to serve legal process in any other manner permitted by law or affect the right of Holder to bring any suit, action or proceeding against any Borrower or any Borrower's assets in the courts of any other jurisdiction.

25.  <u>Severability</u>.  If any provision of this Note shall be invalid, illegal or unenforceable in any jurisdiction, the remaining provisions shall continue to be valid and enforceable in all jurisdictions and such provision shall continue to be valid and enforceable in each other jurisdiction.

26.  <u>Assignment</u>.  Borrowers shall have no right to assign their obligations under this Note without Holder's prior written consent, which consent may be withheld in Holder's sole and absolute discretion.  Holder shall have the right to assign all or any portion of its interest in this Note at any time.

27.  <u>Binding Effect</u>.  The terms of this Note shall be binding upon and inure to the benefit of all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns.  As used herein, the terms "Borrower" and "Borrowers" shall include the undersigned Borrowers and any other proper person or entity who may subsequently become liable for the payment hereof as a result of Borrowers' assignment pursuant to <u>Section 6</u>, above.  The term

712477

"Holder" shall include Holder as well as any other person or entity to whom this Note or any interest in this Note is conveyed, transferred or assigned.

28. <u>Surrender To Trustee</u>.  When the entire indebtedness evidenced by this Note is repaid to Holder in full, then Holder shall surrender the original of this Note and the Mortgages to the Trustee (as defined in the Mortgages) for cancellation and reconveyance, respectively.

29. <u>Amendment</u>.  This Note may not be changed, altered, amended, or modified unless by a written instrument signed by the parties hereto.

30. <u>Legal Representation</u>.  Borrowers acknowledges that they have been represented by independent legal counsel in connection with the transaction contemplated by this Note.

31. <u>Mutual Waiver Of Jury Trial; Judicial Reference</u>.

(A)    <u>WAIVER OF JURY TRIAL</u>.  THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD SUFFICIENT OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF THE PARTIES, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR IN ANY WAY RELATING TO THIS NOTE OR ANY OF THE LOAN DOCUMENTS.

(B)    <u>JUDICIAL REFERENCE</u>.  In the event the jury trial waiver set forth above is not enforceable for any reason, the parties elect to proceed under this <u>Section 1(B)</u>, and have all disputes relating to or arising out of this Note submitted to binding judicial reference as follows:

(i)    With the exception of the items specified in this paragraph below, any controversy, dispute or claim (each a "**Claim**") between the parties hereto arising out of or relating to this Note, or any other document, instrument or agreement between the undersigned parties containing a jury trial waiver which proves to be unenforceable, will be resolved by a reference proceeding in California in accordance with the provisions of Sections 638, *et. seq.* of the California Code of Civil Procedure ("**CCP**"), or their successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including, without limitation, whether the Claim is subject to the reference proceeding. Venue for the reference proceeding shall be in the appropriate court (the "**Court**") as provided in the preceding <u>Section 4</u>.  The matters which shall not be subject to a reference proceeding are (1) nonjudicial foreclosure of any security interests in real or personal property, (2) exercise of self-help remedies (including, without limitation, set-off), (3) appointment of a receiver, and (4) temporary, provisional or ancillary remedies (including, without limitation, writs of attachment, writs of possession, temporary restraining orders, or preliminary injunctions). This reference provision does not limit the right of any party to exercise

or oppose any of the rights and remedies described in items (1) and (2) of this paragraph, or to seek or oppose from a court of competent jurisdiction any of the items described in items (3) and (4) of this paragraph. The exercise of, or opposition to, any of those items does not waive the right of any party to a reference proceeding pursuant to this provision.

(ii)     The referee shall be a retired judge or justice selected by mutual written agreement of the parties hereto. If the parties hereto do not agree within ten (10) days of a written request to do so by any party hereto then, upon request of any party hereto, the referee shall be selected by the Presiding Judge of the Court (or his or her representative). A request for appointment of a referee may be heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted. Pursuant to CCP §170.6, each party shall have one peremptory challenge to the referee selected by the Presiding Judge of the Court (or his or her representative).

(iii)    The parties hereto agree that time is of the essence in conducting the reference proceeding. Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (1) set the matter for a status and trial-setting conference (the "**Conference**") within fifteen (15) days after the date of selection of the referee, (2) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of the Conference and (3) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

(iv)    The referee will have power to expand or limit the amount and duration of discovery. The referee may set or extend discovery deadlines or cutoffs for good cause, including a party's failure to provide requested discovery for any reason whatsoever. Unless otherwise ordered based on good cause shown, no party shall be entitled to "priority" in conducting discovery, depositions may be taken by either party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service. All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding.

(v)     Except as expressly provided herein, the referee shall determine the manner in which the reference proceeding is conducted, including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party hereto so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript. The party making such a request shall have the obligation to arrange for and pay the court reporter. Subject to the referee's power to award costs to the prevailing party, the parties will equally share the costs of the referee and the court reporter at trial.

712477

(vi)     The rules of evidence applicable to proceedings at law in California will be applicable to the reference proceeding.  The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the parties hereto, and rule on any motion which would be authorized in a court proceeding, including, without limitation, motions for summary judgment or summary adjudication.  The referee shall issue a decision at the close of the reference proceeding which disposes of all claims of the parties that are the subject of the reference.  Pursuant to CCP §644, such decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court, and any such decision will be final, binding, and conclusive.  The parties hereto reserve the right to appeal from the final judgment or order or from any appealable decision or order entered by the referee.   The parties hereto reserve the right to findings of fact, conclusions of law, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this Section 1(B).

(vii)    If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by reference procedure will be resolved and determined by arbitration.  The arbitration will be conducted by a retired judge or justice, in accordance with the California Arbitration Act, CCP §1280 through §1294.2, as amended from time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

(viii)   THE PARTIES HERETO RECOGNIZE AND AGREE THAT ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE, AND NOT BY A JURY, AFTER EACH PARTY HAS CONSULTED (OR HAS HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE. EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE, OR CLAIM BETWEEN OR AMONG THEM, ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE OR ANY OF THE LOAN DOCUMENTS.

*[Rest of page intentionally left blank.  Signatures follow.]*

712477

IN WITNESS WHEREOF, this Note has been duly executed and delivered as of the day first written above.

"**BORROWERS**":

FPB Investments, LP,
a Delaware limited partnership

By: _Rlt 11_
Name: _Ronald Therrien_
Its: _CFO_

James P. Baldwin and Nancy L. Baldwin,
Trustees of the James P. Baldwin Trust No. 1

By: _James P. Bald_
Name: James P. Baldwin
Its: Co-Trustee

By: _Nancy L Baldwin_
Name: Nancy L. Baldwin
Its: Co-Trustee

James P. Baldwin and Nancy L. Baldwin,
Trustees of the Nancy L. Baldwin Trust No. 1

By: _J P Baldwin_
Name: James P. Baldwin
Its: Co-Trustee

By: _Nancy L Baldwin_
Name: Nancy L. Baldwin
Its: Co-Trustee

Cachal Investments, S. de R.L. de C.V.,
a Mexican corporation

By: _J P Bald_
Name: _James P. Baldwin_
Its: _President_

Spearfish Ventures LTD.,
a British Virgin Islands company

By: _Rlt 11_
Name: _Ronald Therrien_
Its: _Treasurer_

## EXHIBIT B
## INSURANCE REQUIREMENTS FOR VESSEL HULL AND MACHINERY (PHYSICAL DAMAGE) INSURANCE

- "All-Risk" coverage (or equivalent) in an amount not less than the outstanding balance or stipulated loss value due First Bank (including in-tow and Hurricane coverage, as applicable).

- Vessel operated outside the Continental U.S. and Canada must also maintain War Risk Insurance in like amount insuring against the exposures of war, confiscation, terrorism, expropriation/appropriation, nationalization, and seizure.

- Agreed Value Loss Valuation Clause.

- Coverage effective on the date Mortgagee becomes the secured or titled party.

- Mortgagee will be named as (sole) Loss Payee.

- Mortgagee will be provided with at least 30 days prior written notification of cancellation or material change by the insurance company, agent or broker except in the case of War Risks where a 7 day notice shall prevail.

- Mortgagee shall have the option, but never the responsibility, to make premium payments.

- Mortgagee shall not be responsible for warranties or representations to underwriters.

- Any insurance which may be maintained by Mortgagee will not be contributory.

- Mortgagee will be provided with Breach of Warranty coverage/Mortgagee's Interest Insurance so that "Violations of the terms, conditions or warranties of the insurance by the named insured or others will not invalidate the coverage insofar as the interests of Mortgagee are concerned."

## THE SHIPOWNER UNDERSTANDS AND AGREES THAT:

- Mortgagee must be provided with acceptable formal evidence of insurance containing the original signature of the insurance underwriter or a duly authorized agent or broker prior to closing/funding and prior to the termination, cessation or replacement of coverage thereafter throughout the term of the Loan Agreement.

- Where required by the Loan Agreement, a Broker's Letter of Undertaking will also be provided on an annual basis throughout the term of the Loan Agreement.

- Evidence of renewed coverage shall be automatically provided to Mortgagee within 15 days prior to expiration.

- Mortgagee is under no obligation or duty to ascertain the existence or adequacy of insurance.

- The insurance maintained does not release the Shipowner from liability as contained within the terms of the Loan Agreement.

- The Shipowner or Mortgagee shall do nothing to interrupt or disallow insurance.

- All insurance maintained shall be underwritten with insurers or reinsurers, if applicable, acceptable to Mortgagee.

- Mortgagee shall be provided with prompt written notification of loss or damage to the watercraft financed or leased by Mortgagee. Insurance proceeds received by Mortgagee shall be applied against the cost of repair to the watercraft and/or in satisfaction of the obligations of the borrower or lessee to Mortgagee as per the terms of the loan or lease agreement.

## EXHIBIT B

20

**EXHIBIT C**
**REQUIREMENTS FOR <u>PROTECTION & INDEMNITY</u>**
**<u>(LIABILITY) INSURANCE (P&I)</u>**

MORTGAGEE REQUIRES THAT ALL P&I (LIABILITY) INSURANCE POLICIES PROCURED IN CONNECTION WITH VESSEL FINANCED BY MORTGAGEE BE ENDORSED TO INCLUDE THE FOLLOWING:

- Protection & Indemnity Insurance including, but not limited to: crew liability, [cargo, liability], contractual/legal liability, pollution liability, and removal of wreck.

- Vessel operated outside the Continental U.S. and Canada shall also maintain coverage against loss arising from War Risks.

- Combined Single Limits for bodily injury and property damage in an amount not less than $5,000,000 or such higher amount as may be maintained and acceptable to Mortgagee.

- Coverage for legal defense costs. At the option of Mortgagee, legal defense will also be afforded to Mortgagee.

- Mortgagee will be included as an Additional Insured.

- Coverage effective on the date Mortgagee becomes the secured or titled party.

- Mortgagee will be provided with at least 30 days prior written notification of cancellation or material change by the insurance company, agent or broker except in the case of War Risks where a 7 day notice shall prevail.

- Mortgagee shall have the option, but never the responsibility, to make premium payments.

- Mortgagee shall not be responsible for warranties or representations to underwriters.

- Any insurance which may be maintained by Mortgagee will not be contributory.

- Mortgagee will be provided with Breach of Warranty coverage so that "Violations of the terms, conditions or warranties of the insurance by the named insured or others will not invalidate the coverage insofar as the interests of Mortgagee are concerned";
  -or-
- Severability of Interest (a Separation of Insureds Clause) shall apply as though separate policies had been issued.

THE SHIPOWNER UNDERSTANDS AND AGREES THAT:

- Mortgagee must be provided with acceptable formal evidence of insurance containing the original signature of the insurance underwriter or a duly authorized agent or broker prior to closing/funding and prior to the termination, cessation or replacement of coverage thereafter throughout the term of the Loan Agreement.

- Where required by the Loan Agreement, a Broker's Letter of Undertaking will also be provided on an annual basis throughout the term of the Loan Agreement.

- Evidence of renewed coverage shall be automatically provided to Mortgagee within 15 days prior to expiration.

- Mortgagee is under no obligation or duty to ascertain the existence or adequacy of insurance.

- The insurance maintained does not release the borrower or lessee from liability as contained within the terms of the Loan Agreement.

- The Shipowner or Mortgagee shall do nothing to interrupt or disallow insurance.

21

**EXHIBIT C - Page 1**

All insurance maintained shall be underwritten with insurers or reinsurers, if applicable, acceptable to Mortgagee.

Mortgagee shall be provided with prompt written notification of loss or damage involving the watercraft financed or leased by Mortgagee.

**EXHIBIT C - Page 2**

22

# REPUBLIC OF THE MARSHALL ISLANDS

## MARITIME OFFICE

## FT. LAUDERDALE



9 JULY 2010

Received for record at     2  H   55  M   P.M.  T  E.D.S.T  TZ

Recorded in BOOK     PM-21     at PAGE     592

Name of Vessel:  TRITON

Official Number:     70070



_____
(Signature)

**GLORIA E. ROQUE**
(Print Name)

**Deputy Commissioner of Maritime Affairs**
**for the Republic of the Marshall Islands**

Rev. 6/09

MI-248

## NOTICE OF MORTGAGE*

This vessel is covered by a Preferred Ship Mortgage from Spearfish Ventures Ltd., Shipowner, to Sea Prestigio, LLC, as Mortgagee, under the laws of the Republic of the Marshall Islands. The Preferred Ship Mortgage was executed as of June 30, 2010, and has been duly recorded in accordance with the laws of the Republic of the Marshall Islands. Neither the vessel's owner, nor any charterer, nor the Master of this vessel has any right, power or authority to create, incur or permit to be imposed upon this vessel any liens whatsoever other than for general average, salvage and crew's wages.

*Shipowner will place and keep prominently displayed this NOTICE OF MORTGAGE in the pilot house or wheel house of the Vessel at all times.

# Republic of the Marshall Islands
### Office of the Maritime Administrator
## CERTIFICATE OF OWNERSHIP AND ENCUMBRANCE
### of a vessel registered under Marshall Islands Flag

IT IS HEREBY CERTIFIED that as of July 12, 2010 at 11:15 A.M., E.D.S.T.,   according to the records of the Office of the Maritime Administrator of the Republic of The Marshall Islands, the vessel described hereunder:

**OFFICIAL NUMBER:** 70070     **CALL LETTERS:** V7GF5     **TYPE:** PRIVATE YACHT MOTOR

**VESSEL NAME:** TRITON

**DATE OF REGISTRATION:** October 15, 2004     **GROSS TONS:** 527     **NET TONS:** 158

**BUILT AT:** SEATTLE, WA     **IN:** 2004

**PRESENT CERTIFICATE OF REGISTRY NUMBER:** 2004-PY     **ISSUED:** October 15, 2004

**AT:** Ft. Lauderdale, Florida, U.S.A.

Is owned by:

| NAME | RESIDENCE | CITIZENSHIP | PROPORTION |
|------|-----------|-------------|------------|
| PEARFISH VENTURES LTD. | Tortola, British Virgin Islands | British Virgin Islands | 100% |

(Foreign Maritime Entity)

AND THAT there are on record in this Office the following mortgages, liens or other encumbrances, and no others:

FIRST PREFERRED MORTGAGE dated June 30, 2010, granted by SPEARFISH VENTURES LTD. to SEA PRESTIGO, LLC in the total amount of US$21,000,000.00; recorded on July 9, 2010 at 2:55 P.M., E.D.S.T. at Fort Lauderdale, Florida, USA in Book PM 21 at Page 592.

Issued by the Authority of the Government of the Republic of The Marshall Islands under my hand and seal at Fort Lauderdale, Florida, USA on this 12th day of July, 2010 at 11:16 A.M., E.D.S.T.



Guy E. C. Maitland
Senior Deputy Commissioner

Glora E. Roque

**CLIENT ORIGINAL**

MI–223 (Rev.06/05)

**EXHIBIT E**

Order No.: 930020177-U50

# SCHEDULE A

1.    The estate or interest in the land hereinafter described or referred to covered by this report is:

    A fee

2.    Title to said estate or interest at the date hereof is vested in:

James P. Baldwin and Nancy L. Baldwin, Trustees of the James P. Baldwin Trust No. 1 and James P. Baldwin and Nancy L. Baldwin, Trustees of the Nancy L. Baldwin Trust No. 1, as tenants in common, each as to an undivided 1/2 interest

3.    The land referred to in this report is situated in the State of California, County of Orange and is described in the Legal Description, attached hereto:

END OF SCHEDULE A

CLTA Preliminary Report Form - Modified (11-17-06)

Order No.: 930020177-U50

# LEGAL DESCRIPTION

LOT 20 OF TRACT NO. 975, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 31, PAGES 18 THROUGH 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**Assessor's Parcel Number: 053-050-45**

END OF LEGAL DESCRIPTION

(continued)



CHICAGO TITLE COMPANY

**This Document was electronically recorded by Chicago Title Commercial**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

**RECORDING REQUESTED BY**
AND WHEN RECORDED, MAIL TO

Glaser, Weil, Fink, Jacobs,
Howard & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Attention: Brett Cohen, Esq.

*935082777-m19*
*93002077-u50*

||||||||||||||||||||||||||| 114.00
2010000315139 10:58am 07/02/10
93 401 D11 A36 A34 S02 30
0.00 0.00 0.00 0.00 87.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## DEED OF TRUST AND SECURITY AGREEMENT WITH ASSIGNMENT OF LEASES, RENTS AND AGREEMENTS

This DEED OF TRUST AND SECURITY AGREEMENT WITH ASSIGNMENT OF LEASES, RENTS AND AGREEMENTS (this "**Deed of Trust**") is made and entered into as of this *30th* day of June, 2010 by JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE JAMES P. BALDWIN TRUST NO. 1 (the "**JPB Trust**") and JAMES P. BALDWIN AND NANCY L. BALDWIN, TRUSTEES OF THE NANCY L. BALDWIN TRUST NO. 1 (the "**NLB Trust**") (each foregoing party may be referred to herein as a "**Trustor**" and together collectively as the "**Trustors**"), to Chicago Title Insurance Company, with offices located at 4041 Mac Arthur Boulevard, Suite 490, Newport Beach, California ("**Trustee**"), for the benefit of SEA PRESTIGIO, LLC, a Delaware limited liability company ("**Beneficiary**").

1.  **GRANTING CLAUSE.**

   *1.1    Trust Estate.* For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Trustor HEREBY IRREVOCABLY GRANTS, SELLS, TRANSFERS and ASSIGNS TO Trustee, IN TRUST, WITH POWER OF SALE, for the benefit and security of Beneficiary, all of each such Trustor's right, title and interest in and to all now owned or hereafter acquired real and personal property, both tangible and intangible, described herein below in subsections 1.1(a) through (g) (hereinafter collectively referred to as the "**Trust Estate**") as follows:

   (a)    all that certain real property located in the County of Orange, State of California, commonly known as 114 Emerald Bay, Laguna Beach, California and as more particularly described in **Exhibit "A"** attached hereto and made a part hereof (the "**Property**");

   (b)    all right, title, estate and interest of the Trustors in and to all options to purchase or lease the Trust Estate or any part thereof or interest therein, and any greater estate in the Trust Estate now owned or hereafter acquired by the Trustors;

712478                                              1

(c)     all right, title, estate and interest of every kind and nature, at law or in equity, which the Trustors now have or may hereafter acquire in the Trust Estate and any land lying in the streets, roads or avenues adjoining the Property;

(d)     all rights, rights-of-way, easements, licenses, profits and privileges thereof, including all minerals, oil, gas and other hydrocarbon substances thereon or therein, air rights, water rights and development rights and all tenements, hereditaments and appurtenances, now or hereafter in any way appertaining and belonging to or used in connection with the Trust Estate and any part thereof, or as a means of access thereto, including, but not limited to, any claim at law or in equity, and any after acquired title and reversion in or to each and every part of all streets, roads, highways and alleys adjacent to and adjoining the Property;

(e)     all buildings, structures and improvements now or hereafter located on or at the Property, including, without limitation, all of the property owned by the Trustors which is described now or hereafter affixed or attached to such buildings, structures or improvements (collectively, the "**Improvements**");

(f)     all of the property owned by the Trustors which is described in **Exhibit "B"** attached hereto and made a part hereof (to the extent such property constitutes personal property as defined in the Uniform Commercial Code as may, from time to time, be enacted and in effect in the State of California and hereinafter referred to as the "**UCC**"), and all replacements, accessions, attachments, additions, substitutions and Proceeds thereof, now or hereafter owned or at any time hereafter acquired by the Trustors or in which the Trustors now have or at any time in the future may acquire any right, title or interest, and which is now or hereafter located on or at, or affixed or attached to, or used in connection with the ownership, operation, management, maintenance or repair of the Trust Estate (collectively, the "**Personal Property**"); and

(g)     all other claims and demands which the Trustors now have or may hereafter acquire in the Trust Estate, including, without limitation, all claims or demands to all proceeds of all insurance now or hereafter in effect with respect to the Trust Estate, the Property, the Improvements or the Personal Property, all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the Trust Estate, or any part thereof, or any damage or injury thereto, all awards resulting from a change of grade of streets, and all awards for severance damages.

*1.2     Assignment of Leases, Rents and Profits.* The Trustors hereby assign and transfer to Beneficiary, absolutely and unconditionally, all of the Trustors' right, title and interest in and to the following property:

(a)     any and all leases, subleases and occupancy agreements now existing or hereafter entered into affecting all or any part of the Trust Estate, together with all benefits and advantages to be derived therefrom, and all rights and benefits now or hereafter accruing to any Trustor under any and all guarantees of the obligations of any tenant thereunder, all as the same may be amended, extended, renewed or modified from time to time (collectively, the "**Leases**"); provided, however, that such grant is subject to the provisions of Section 3 below; and

712478                                    2

(b)     all rents, royalties, profits, revenues, incomes, issues and other benefits of and from the Leases and the Trust Estate whether now due, past due or to become due, including without limitation, all prepaid rents, reserve accounts, security and other deposits (the "**Rents and Profits**"); provided, however, that such grant is subject to the provisions of Section 3 below.

FOR THE PURPOSE OF SECURING, in such order of priority as Beneficiary may in its sole discretion determine:

(1)     payment of the indebtedness by the Trustors to Beneficiary pursuant to a loan by Beneficiary to Trustor (the "**Loan**") in an amount equal to Twenty-One Million Dollars ($21,000,000.00) evidenced (i) by that certain Promissory Note Secured By Deed of Trust, made of even date herewith, by the Trustors in favor of Beneficiary for the original principal sum of Twenty-One Million Dollars ($21,000,000.00), and any renewals, extensions or modifications thereof (the "**Note**"), and (ii) by that certain loan agreement made of even date herewith between the Trustors and Beneficiary for the original principal sum of the Note (the "**Loan Agreement**");

(2)     payment of all indebtedness arising under this Deed of Trust, including sums advanced by Beneficiary or Trustee, with interest thereon at the same rate set forth in the Note which is applicable to the principal (the "**Note Rate**");

(3)     payment of all other sums, with interest thereon, which may hereafter be loaned to the Trustors, or their successors or assigns, by Beneficiary, when evidenced by another promissory note (or modification to the Note) reciting that it is secured by this Deed of Trust; and

(4)     performance and discharge of all obligations, covenants and agreements of the Trustors in this Deed of Trust, the Note, and any other instrument securing the Note and all modifications, amendments, replacements, extensions, renewals and substitutions of any and all such documents. The Note, the Loan Agreement, this Deed of Trust and all other instruments given to evidence or further secure the payment and performance of any indebtedness or obligation secured hereby are hereinafter collectively referred to as the "**Loan Documents**." All that is described in the foregoing subsections 1.2(b)(1) through (3) and the monetary components of the obligations described in this subsection 1.2(b)(4) are collectively referred to herein as the "**Indebtedness**."

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, THE TRUSTORS HEREBY COVENANT AND AGREE AS FOLLOWS:

2.     **COVENANTS AND AGREEMENTS OF THE TRUSTORS.**

   2.1     *Trustors' Covenants*.

(a)     The Trustors shall pay when due, in the manner specified herein or in any other Loan Document, all components of the Indebtedness.

(b)     The Trustors covenant that they have good and marketable title to the fee simple interest in the Property, and that the Trustors have full power and authority to convey the Trust Estate as provided in this Deed of Trust and the other Loan Documents and that neither the

712478                                            3

entry nor the performance of this Deed of Trust and the other Loan Documents has resulted, or will result, in any violation of, or be in conflict with, or result in the creation of any deed of trust, lien, encumbrance or charge (other than those created by the execution and delivery of, or permitted by, this Deed of Trust or any other Loan Document) upon any of the properties or assets of the Trustors, or constitute a default under any deed of trust, indenture, contract, agreement, instrument, franchise, permit, judgment, decree, order, statute, rule or regulation applicable to the Trustors.

(c)     The Trustors shall, at their sole cost:  (i) keep and maintain the Trust Estate in good condition and repair and shall make all reasonable or necessary repairs to the Trust Estate, whether interior or exterior, structural or nonstructural, ordinary or extraordinary, or foreseen or unforeseen; (ii) not remove, demolish or substantially alter any of the Improvements without Beneficiary's prior written consent (except to the extent required by applicable law and then only upon giving Beneficiary prior written notice); (iii) complete promptly and in a good and workmanlike manner any building or other improvement which is constructed on the Trust Estate, and promptly restore and repair, in like manner, to the equivalent of its original condition, any building or other improvement which is damaged or destroyed thereon; (iv) obtain Beneficiary's prior written consent to any contracts with any general contractors, architects, engineers or other similar consultants for the Trust Estate; and (v) not permit or commit any waste or deterioration of the Trust Estate.

(d)     The Trustors shall comply with all federal, state and local restrictions, covenants, conditions, laws, ordinances, building codes, regulations, rules, requirements, directions, orders and notices of every kind relating to or affecting the Trust Estate or the business being conducted thereon whether by the Trustors or by any occupant thereof.

(e)     The Trustors shall pay when due all utility assessments and charges for gas, electricity, fuel, water, steam, sewer, drainage, refuse disposal, telephone and other services furnished to the Trust Estate and all other assessments and charges of a similar nature, whether public or private, affecting the Trust Estate.

(f)     The Trustors shall appear in, contest and defend any action or proceeding purporting to affect the Trust Estate, the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee under this Deed of Trust, and the Trustors shall pay all costs (including, without limitation, attorneys' fees and costs) incurred by Beneficiary or Trustee in connection with such action or proceeding.

(g)     Unless required by applicable law, the Trustors shall not, without Beneficiary's prior written consent (i) allow changes in the use of the Trust Estate from the use being made as of the date of this Deed of Trust, and (ii) initiate or acquiesce in any change in the zoning classification of the Property.

(h)     The Trustors shall faithfully perform each and every monetary and non-monetary covenant to be performed by the Trustors under any lien or encumbrance upon or affecting the Trust Estate, including, without limitation, mortgages, deeds of trust, leases, subleases, declaration of covenants, easements, conditions and restrictions and other agreements which affect

712478                                    4

the Trust Estate, and a breach of or a default under any such lien or encumbrance shall constitute an Event of Default (as hereinafter defined) under this Deed of Trust.

(i)     The Trustors shall pay all filing, registration, recording, documentary stamp tax and other fees, taxes, assessments and charges in connection with the preparation, execution, delivery and enforcement of the Note, this Deed of Trust, the other Loan Documents and subsequent Loan Documents.

(j)     The Trustors shall comply with all valid and applicable statutes, rules and regulations, and maintain their properties in good repair, working order and operating condition. The Trustors shall immediately notify Beneficiary of any event causing material loss in the value of their assets.

**2.2     _Hazardous Substances_**

(a)     As used in this Section 2.2, the following terms shall have the meanings set forth below:

(i) **"Environmental Laws"** means and includes any law, ordinance, regulation or requirement now or hereinafter in effect relating to land use, air, soil, surface water, groundwater (including the protection, cleanup, removal, remediation or damage thereof), human health and safety or any other environmental matter, including, without limitation, the following laws as the same may be amended, modified or supplemented from time to time: the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (including the Superfund Amendments and Reauthorization Act of 1986) ("CERCLA"), 42 U.S.C. Sec. 9601, et seq.; the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Sec. 6901, et seq.; the Federal Water Pollution Control Act, (also known as the CWA) the Clean Water Act, 33 U.S.C. Sec. 1251, et seq.; the Toxic Substances Control Act, 15 U.S.C. Sec. 2601, et seq.; the Refuse Act, 33 U.S.C. Sec. 407; the Occupational Safety and Health Act, 29 U.S.C. Sec. 651, et seq.; the Clean Air Act, 42 U.S.C. Sec. 7401, et seq.; the Hazardous Waste Control Act, California Health and Safety Code Sections 25100, et seq.; the Hazardous Substance Account Act, California Health and Safety Code Sections 25300, et seq.; the Hazardous Substance Cleanup Bond Act of 1984, California Health and Safety Code Sections 25385, et seq., and related statutes including Sections 25356.1-25356.4 of the California Health and Safety Code; Porter-Cologne Water Quality Control Act, California Water Code Sections 13000, et seq.; Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), California Health and Safety Code Sections 25249.5, et seq.; California Health and Safety Code Sections 25220, et seq., 25280, et seq., 25359.7; California Civil Code Section 3483; and California Code of Civil Procedure Section 736;

(ii) **"Hazardous Substances"** shall mean any hazardous or toxic substances, materials or wastes, pollutants or contaminants defined, listed or regulated by the Environmental Laws or any other federal, state or local law, regulation, order or common law decision.

(b)     The Trustors hereby represent and warrant to Beneficiary that neither the Trustors, nor any agent, affiliate, tenant, partner or joint venturer of the Trustors has actual knowledge or notice of the actual, alleged or threatened presence or release of Hazardous

712478                                           5

Substances in, on, around or potentially affecting any part of the Trust Estate or the soil, groundwater or soil vapor on or under any portion of the Trust Estate, except as has been expressly disclosed to Beneficiary in writing. The Trustors have used their best efforts to investigate the presence of Hazardous Substances in, on, around or potentially affecting any part of the Trust Estate, and any potential environmental liability with respect to the Trust Estate for noncompliance with the Environmental Laws. The Trustors have complied, and shall comply and cause all occupants of the Trust Estate to comply, with all Environmental Laws, including those requiring disclosures to prospective and actual buyers of all or any portion of the Trust Estate. The Trustors also have complied and shall comply with the recommendations of any qualified environmental engineer or other expert which apply or pertain to the Trust Estate. The Trustors shall promptly notify Beneficiary if any of them know, suspect or believe there may be any Hazardous Substance in, around or potentially affecting the Trust Estate or the soil, groundwater or soil vapor on or under any portion of the Trust Estate, or that any of the Trustors or the Trust Estate may be subject to any threatened or pending investigation by any governmental agency under any Environmental Laws.

(c)     Beneficiary shall have the right at any reasonable time to enter and visit the Trust Estate for the purposes of observing the Trust Estate, taking and removing soil or groundwater samples, and conducting tests on any part of the Trust Estate. Beneficiary has no duty, however, to visit or observe the Trust Estate or to conduct tests, and no site visit, observation or testing by Beneficiary shall impose any liability on Beneficiary. In no event shall any site visit, observation or testing by Beneficiary be a representation that Hazardous Substances are or are not present in, on, under or around the Trust Estate, or that there has been or shall be compliance with any Environmental Laws. Neither the Trustors nor any other party is entitled to rely on any site visit, observation or testing by Beneficiary. Beneficiary owes no duty of care to protect the Trustors or any other party against, or to inform the Trustors or any other party of, any Hazardous Substances or any other adverse condition affecting the Trust Estate. Beneficiary shall not be obligated to disclose to the Trustors or any other party any report or findings made as a result of, or in connection with, any site visit, observation or testing by Beneficiary. Beneficiary shall make reasonable efforts to avoid interfering with the Trustors' use of the Trust Estate in exercising any rights provided in this subsection 2.2(c).

(d)     In the event any or all of the representations contained in subsection 2.2 (b), above, are or become untrue or the Trustors default in or fail to perform or observe any of their obligations under this Section 2.2, Beneficiary, at its option, and without prior notice to or the right to cure by the Trustors, may: (i) declare the Indebtedness immediately due and payable; (ii) require the Trustors to promptly perform, at the Trustors' sole cost and in accordance with applicable law, all Remedial Work (defined below) desired by Beneficiary; and (iii) cause a person other than the Trustors to perform the Remedial Work, at the Trustors' sole cost.

(e)     All monitoring and investigation of site conditions, cleanup, containment, removal, restoration or other remedial work for the Trust Estate which is required by the Environmental Laws or reasonably requested by Beneficiary pursuant to this Section 2.2 is hereinafter referred to as the "**Remedial Work.**" All Remedial Work shall be conducted: (i) in a diligent and timely manner by licensed contractors acting under the supervision of a consulting environmental engineer; (ii) pursuant to a detailed written plan approved by any public or private agencies or persons with the legal or contractual right to such approval; (iii) with such insurance

712478                                6

coverage pertaining to liabilities arising out of the Remedial Work as is customarily maintained with respect to such activities; and (iv) only following receipt of any required permits, licenses, or approvals. The selection of the Remedial Work contractors and consulting environmental engineer, the contracts entered into with such parties, all disclosures to or agreements with any public or private agencies or parties relating to the Remedial Work and the written plan for the Remedial Work shall be subject to Beneficiary's prior written approval. In addition, the Trustors shall submit to Beneficiary, promptly upon receipt or preparation, copies of any and all reports, studies, analyses, correspondence, governmental comments or approvals prepared or received by the Trustors in connection with any Remedial Work. All costs and expenses of such Remedial Work shall be paid by the Trustors, including, without limitation, the cost of the Remedial Work contractors and the consulting and environmental engineers, taxes and penalties assessed in connection with the Remedial Work and Beneficiary's reasonable fees and costs incurred in connection with monitoring and reviewing the Remedial Work. In the event the Trustors shall fail to commence or cause to be commenced in a timely manner or fail diligently to prosecute the completion of such Remedial Work, Beneficiary may, but shall not be required to, cause such Remedial Work to be performed, and all costs incurred in connection therewith, together with interest at the Note Rate, shall be reimbursed by the Trustors upon demand and shall be secured by this Deed of Trust.

     2.3    *Required Insurance*.

         (a)    The Trustors shall at all times provide and keep in force the following policies of insurance, including but not limited to: (i) insurance covering the Improvements (exclusive of the excavations, grading, filling and foundations of buildings below the lowest basement floor) and Personal Property against all risks of physical loss (including, without limitation, fire, lightning, windstorm, hail, explosion, vandalism and civil unrest) in an amount not less than the full replacement cost of the Improvements and Personal Property (without deduction for depreciation); and (ii) comprehensive general liability insurance in an amount of One Million Dollars ($1,000,000.00) covering the Trustors against any and all liability in connection with the Trust Estate, any adjoining streets and sidewalks; and (iii) in the event there is construction on the Property, builder's-risk, liability and workmans' compensation and such other insurance as Beneficiary shall require. All policies of insurance required by this Deed of Trust shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of such policy notwithstanding any act, omission or negligence of the Trustors which might otherwise result in forfeiture of such insurance, and an endorsement that the insurer waives all rights of setoff, counterclaims or deductions against the Trustors.

         (b)    All policies of insurance shall be issued by companies and in amounts reasonably satisfactory to Beneficiary. The Trustors shall use all commercially reasonable efforts to cause the Trustors' insurance carrier to add Beneficiary as an "additional insured" and "mortgagee" on the Trustors' comprehensive public liability insurance policy and to attach to said policy a lender's loss payable endorsement for the benefit of Beneficiary in form satisfactory to Beneficiary. The Trustors shall furnish Beneficiary with an original of all policies of insurance required by this Deed of Trust. If Beneficiary consents to the Trustors providing any of the required insurance through blanket policies carried by the Trustors and covering more than one property, the Trustors shall furnish Beneficiary with a certified copy of each such policy and a certificate of insurance for

each such policy setting forth the coverage as to the Trust Estate, the limits of liability as to the Trust Estate, the name of the carrier, the policy number and the expiration date.  At least thirty (30) days prior to the expiration of each insurance policy, the Trustors shall furnish Beneficiary with evidence satisfactory to Beneficiary of the payment of the premium and arrangements for the reissuance of the policy continuing insurance in force as required by this Deed of Trust.  All such policies shall contain a provision that such policies shall not be canceled or materially amended (which includes any reduction in the scope or limits of coverage), without at least thirty (30) days' prior written notice to Beneficiary.  If the Trustors fail to provide, keep in force or deliver to Beneficiary the policies of insurance required by this Deed of Trust, Beneficiary may procure such insurance, and the Trustors shall pay all premiums thereon promptly upon demand by Beneficiary, and until such payment is made by the Trustors the amount of all such premiums, together with interest thereon at the Note Rate, shall be secured by this Deed of Trust.

(c)     In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Trust Estate in extinguishment, in whole or in part, of the Indebtedness, all right, title and interest of the Trustors in and to all policies of insurance required by this Deed of Trust shall inure to the benefit of and pass to the successor in interest to the Trustors, or the purchaser or grantee of the Trust Estate.  In the event that prior to any such transfer of title, any claim under any casualty insurance policy has not been paid and distributed in accordance with the terms of this Deed of Trust, but such claim is paid after any such transfer of title, then, to the extent the Indebtedness was not fully discharged in conjunction with such transfer of title, the subject insurance proceeds shall belong to and be paid to Beneficiary.  The Trustors hereby assign, transfer and set over to Beneficiary all of their respective right, title, and interest in and to any such insurance proceeds.  The balance of any such insurance proceeds, if any, shall belong to the Trustors.  Notwithstanding the above, the Trustors shall retain an interest in the insurance policies required by this Deed of Trust during any redemption period.

*2.4*     *Taxes, Assessments and Impositions.*

(a)     The Trustors agree to pay prior to the date when due all general, special and supplemental real property taxes and assessments (except escaped assessments and supplemental real property taxes for the period prior to the date hereof), and all other taxes, assessments, fees, levies and charges of every kind and nature whatsoever, including, without limitation, all nongovernmental levies and assessments such as maintenance charges, owner association dues and charges, and assessments, fees, levies and charges resulting from covenants, conditions and restrictions affecting the Trust Estate, which are assessed against or imposed upon the Trust Estate, or become due and payable with respect to the Trust Estate, or which create or are secured by a lien upon the Trust Estate (all of such taxes, assessments, fees, levies and charges are hereinafter collectively referred to as "**Impositions**").  In the event the Trustors fail to pay any Imposition as required by this Deed of Trust, Beneficiary may pay such Imposition, and the Trustors shall pay the amount thereof to Beneficiary promptly upon demand by Beneficiary, and until such payment is made by the Trustors the amount of such Imposition, together with interest thereon at the Note Rate, shall be secured by this Deed of Trust.  Subject to the provisions of subsection 2.4(c), below, the Trustors shall provide to Beneficiary, within thirty (30) days following the date an Imposition is due, receipts evidencing the payment of such Imposition.  If requested by Beneficiary, the Trustors

712478                                          8

shall (at the Trustors' cost) cause to be provided to Beneficiary a tax reporting service covering the Trust Estate of the type and duration and with a company satisfactory to Beneficiary.

(b)      If at any time there is assessed or imposed any tax, assessment, levy or fee on Beneficiary and measured by or based in whole or in part on this Deed of Trust, the amount of the Indebtedness or upon the Trust Estate, then all such taxes, assessments, levies and fees shall be deemed to be included within the term "Impositions" as defined in subsection 2.4(a) and the Trustors shall pay and discharge the same as provided with respect to the payment of Impositions or, if it is unlawful for the Trustors to pay any such tax, assessment, levy or fee, at the option of Beneficiary, the Indebtedness shall immediately become due and payable.  If requested by Beneficiary, the Trustors shall (at the Trustors' cost) cause to be provided to Beneficiary a tax reporting service covering the Trust Estate of the type and duration and with a company satisfactory to Beneficiary.

(c)      The Trustors shall have the right before any delinquency occurs to contest in good faith the amount or validity of any Imposition by appropriate legal proceedings; provided, any such contest by the Trustors shall not in any way release, modify or extend Trustee's obligation to pay an Imposition at the time and in the manner provided in this Section 2.4, unless the Trustors give prior written notice to Beneficiary of the Trustors' intent to contest the Imposition, and, at Beneficiary's sole option, (i) the Trustors demonstrate to Beneficiary's satisfaction that the contest proceedings shall conclusively operate to prevent the sale of the Trust Estate or to stay payment of the Imposition prior to final determination of the proceedings, (ii) the Trustors furnish a good and sufficient bond or other security for payment as requested by and satisfactory to Beneficiary, or (iii) the Trustors furnish a good and sufficient bond or undertaking as may be required or permitted by law to accomplish a stay of payment of the Imposition.  At the conclusion of such proceedings, the Trustors shall pay the Imposition as determined in such proceedings.

2.5    *Eminent Domain*.

(a)      If the Trust Estate, or any part thereof or interest therein, is taken or damaged by reason of any public improvement, condemnation proceeding, exercise of the power of eminent domain, or conveyance in lieu of condemnation (hereinafter collectively referred to as a "**Taking**"), or if the Trustors receive any notice or other information regarding any such Taking, the Trustors shall give prompt written notice thereof to Beneficiary.

(b)  .   Beneficiary shall have the right to receive all compensation, awards, damages, proceeds and other payments for any such Taking, and shall be entitled to commence, appear in and prosecute in its own name any action or proceeding at the Trustors' sole cost. Beneficiary shall also have the right to make any compromise or settlement in connection with any such Taking at the Trustors' sole cost. The Trustors hereby absolutely and unconditionally assign to Beneficiary all such compensation, awards, damages, proceeds and other payments awarded to the Trustors (the "**Proceeds**") and the Trustors agree to execute all further assignments of the Proceeds which are requested by Beneficiary.

(c)      In the event the Trust Estate, or any part thereof or interest therein, is taken, Beneficiary shall have the right, in its sole discretion, to apply all or any part of the Proceeds, after

deducting therefrom all costs incurred by Beneficiary in connection with the Proceeds (including, without limitation, attorneys' fees and costs), to (i) the Indebtedness (in such order as Beneficiary may determine), (ii) the restoration and replacement of the Trust Estate, or (iii) the Trustors.

(d)     If the Proceeds are applied by Beneficiary to the restoration and replacement of the Trust Estate, the Trustors shall restore, repair and replace the Trust Estate as nearly as possible to its value, condition and character immediately prior to the Taking. Beneficiary shall have the right, at Beneficiary's option, to establish disbursement procedures and to condition disbursement of the Proceeds on Beneficiary's approval of architects' and/or engineers' plans and specifications, contractors' cost estimates, architects' certificates, waivers of liens, sworn statements of contractors, mechanics and materialmen, and such other evidence of costs, completion of construction, application of payments, and satisfaction of liens as Beneficiary may require.

(e)     Except to the extent that the Proceeds are received by Beneficiary and applied to the Indebtedness, nothing herein shall excuse the Trustors from repairing or maintaining the Trust Estate as provided in <u>Section 2.1</u> or restoring all damage to the Trust Estate, regardless of whether Proceeds are available or sufficient in amount, and the application or release by Beneficiary of any Proceeds shall not cure or waive any default or notice of default under this Deed of Trust.

2.6     <u>*Sale or Encumbrance of Trust Estate*</u>.  If the Trustors sell, convey, assign or otherwise transfer (hereinafter collectively referred to as a "**Sale**") or further pledge, mortgage or otherwise encumber (hereinafter collectively referred to as an "**Encumbrance**") all or any part of the Trust Estate or any interest in the Trust Estate, whether any such Sale or Encumbrance occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to the Trustors.  For purposes of this Deed of Trust, a transfer of the interests in the Trustors, whether direct or indirect or in one or more transactions, shall be deemed a transfer of the Trustors' interest in the Trust Estate and, therefore, a "Sale" for purposes of this <u>Section 2.6</u>.

2.7     <u>*Inspections*</u>.  Beneficiary, its agents and representatives are authorized to enter the Trust Estate at any reasonable time, and from time to time, for the purpose of inspecting the Trust Estate and performing any of the acts Beneficiary is authorized to perform under this Deed of Trust and any other Loan Document.

2.8     <u>*Preservation of Lien Priority by Trustor*</u>.

(a)     This Deed of Trust is and shall continue to be a valid lien upon the Trust Estate subject and inferior to no other monetary liens on the Trust Estate except for that certain Deed of Trust, dated August 16, 2007, recorded as instrument number 2007-000523094, encumbering the Laguna Beach Property with James P. Baldwin and Nancy L. Baldwin as the "Trustor" and Mortgage Electronic Registration Systems, Inc. as nominee for Chevy Chase Bank as the "Beneficiary" (the "**Permitted Lien**").  The Trustors shall not, directly or indirectly, create or permit to be created against the Trust Estate, or any portion thereof, any lien, charge or encumbrance prior to, subordinate to, or on a parity with the lien of this Deed of Trust, other than

the Permitted Lien, without Beneficiary's prior written consent, which consent Beneficiary may not unreasonably withhold.

(b)      All property of every kind acquired by the Trustors after the date hereof which, by the terms hereof, is required or intended to be subjected to the lien of this Deed of Trust shall, immediately upon the acquisition thereof and without any further conveyance, assignment or transfer, become subject to the lien of this Deed of Trust.

(c)      In order to more effectively evidence or confirm the lien of this Deed of Trust on the Trust Estate (including all property acquired after the date hereof which is subject to the lien of this Deed of Trust), the Trustors shall, at their sole cost, do, execute, acknowledge and deliver all such further acts, conveyances, deeds of trust, assignments, notices of assignments and further instruments required by Beneficiary, including, without limitation, security agreements, financing statements, continuation statements and other instruments requested by Beneficiary.

(d)      If any action or proceeding is instituted (i) which could materially affect the Trustors' ability to perform their obligations under any of the Loan Documents, (ii) to evict the Trustors, (iii) to recover possession of the Trust Estate, or (iv) for any other purpose which affects the Trust Estate, the lien of this Deed of Trust or Beneficiary's rights hereunder, the Trustors shall, immediately upon service thereof on or by the Trustors, deliver to Beneficiary a true copy of each petition, summons, complaint, notice of motion, order to show cause and all other processes, pleadings and papers, however designated, served in such action or proceeding.

2.9     *Liens*.  The Trustors shall pay, at the Trustors' sole cost, as and when payment is due, all lawful claims and demands of mechanics, materialmen, laborers and others which, if unpaid, might result in, or permit the creation of, a lien on the Trust Estate, the Leases, Rents and Profits, and the Trustors shall do or cause to be done everything necessary so that the lien and security interest hereof shall be fully preserved; provided, however, if applicable law empowers the Trustors to discharge of record any mechanic's, laborer's, materialman's or other lien against the Trust Estate by posting a bond or other security, the Trustors shall not have to make such payment if the Trustors post such bond or other security within the time prescribed by law so as not to place the Trust Estate in jeopardy of a lien or forfeiture.  The Trustors shall have the right to contest in good faith the amount or validity of any such lawful claims and demands of mechanics, materialmen, laborers and others by appropriate legal proceeding if the Trustors give Beneficiary prior written notice and procures a bond or anything else required by and satisfactory to Beneficiary (in Beneficiary's sole discretion).  If at any time payment of any obligation imposed upon the Trustors herein shall become necessary to prevent the delivery of a tax deed conveying the Trust Estate or any portion thereof because of non-payment, or if the Beneficiary or Trustee shall incur any civil or criminal liability as a result of such non-payment, then Beneficiary may pay the same in sufficient time to prevent the delivery of such tax deed or the incurrence of civil or criminal liability, and any expense incurred by Beneficiary in connection therewith shall be payable by the Trustors upon demand, together with interest at the Note Rate, and shall be secured by this Deed of Trust.

2.10    *Beneficiary's Powers*.  Without affecting the liability of any other person liable for the Indebtedness, and without affecting the lien of this Deed of Trust upon any portion of the Trust Estate not then released as security for the Note or any other Loan Document, Beneficiary may,

from time to time and without notice: (a) release any person so liable; (b) extend the maturity or alter any of the terms of the Indebtedness; (c) grant other indulgences; (d) release or reconvey any parcel, portion or all of the Trust Estate; (e) take or release any other security for the Indebtedness; (f) make any arrangements with debtors in relation to the Indebtedness; and (g) advance additional funds to protect the security of this Deed of Trust and pay or discharge the obligations of the Trustors hereunder or under any other Loan Document; and all amounts so advanced, together with interest at the Note Rate, shall be paid by the Trustors to Beneficiary on demand and shall be secured by this Deed of Trust.

3.     **ASSIGNMENT OF LEASES, RENTS AND PROFITS.**

*3.1     Assignment.* Pursuant to Section 1.2, above, the Trustors have absolutely, presently, and unconditionally assigned, transferred, conveyed and set over to Beneficiary all of the Trustors' right, title and interest in and to the Leases, Rents and Profits to be applied by Beneficiary to the Indebtedness (the **"Assignment"**). This Assignment shall be fully operative without any further action on the part of the Trustors or Beneficiary and Beneficiary shall be entitled, at its option, to all Rents and Profits whether or not Beneficiary takes possession of the Trust Estate. The Trustors hereby further grant to Beneficiary the right to (a) enter and take possession of the Trust Estate for the purposes of collecting the Rents and Profits, (b) dispossess by the usual summary proceedings of any tenant defaulting in the payment thereof to Beneficiary, (c) let the Trust Estate or any part thereof, and (d) apply the Rents and Profits, after payment of all necessary charges and expenses (including attorneys' fees and costs) to the Indebtedness. This Assignment shall continue in effect until the Indebtedness is paid in full. The execution of this Deed of Trust constitutes the Trustors' irrevocable consent to Beneficiary's entry and taking possession of the Trust Estate pursuant to this Assignment, whether or not sale or foreclosure has been instituted. Neither the exercise of any rights under this Assignment by Beneficiary nor the application of the Rents and Profits to the Indebtedness shall cure or waive an Event of Default or notice of default, and shall be cumulative with all other rights and remedies of Beneficiary.

*3.2     Trustee's License.* Notwithstanding anything in Section 3.1 above, to the contrary, as long as an Event of Default (described below) has not occurred, the Trustors shall have a license to collect and receive all Rents and Profits. Upon the occurrence of an Event of Default, such license shall be deemed automatically revoked, without regard to the adequacy of Beneficiary's security and without notice to or demand upon the Trustors, and any Rents and Profits received thereafter by the Trustors shall be immediately turned over to Beneficiary. Upon the occurrence of an Event of Default, the Trustors agree to deliver the original copies of all Leases to Beneficiary. The Trustors hereby irrevocably appoint Beneficiary its true and lawful attorney-in-fact to enforce in the Trustors' name or Beneficiary's name or otherwise all rights of the Trustors in the instruments, including without limitation, checks and money orders, tendered as payments of Rents and Profits and to do any and all things necessary and proper to carry out the purposes of this Assignment.

*3.3     Trustors' Covenants.* The Trustors shall not execute an assignment of the rents or any part thereof from the Trust Estate, or, in any other manner, impair the value of the Trust Estate or the security of the Trustee or Beneficiary for the payment of the Indebtedness. The Trustors shall, at all times, promptly and faithfully perform, or cause to be performed, all of the covenants,

conditions and agreements contained in all Leases now or hereafter existing, on the part of the lessor thereunder to be kept and performed. The Trustors shall, from time to time upon request of Beneficiary, specifically assign to Beneficiary as additional security hereunder, by a written instrument approved by Beneficiary, all right, title and interest of the Trustors in and to any and all Leases, together with all security therefor and all monies payable thereunder, subject to the Trustors' conditional license to collect the Rents and Profits. The Trustors shall also execute and deliver to Beneficiary any notification, financing statement or other document reasonably required by Beneficiary to perfect the Assignment as to any of the Leases. Each Lease shall provide that, in the event of the enforcement by the Trustee or Beneficiary of the remedies provided for by law or by this Deed of Trust, any person succeeding to the interest of the Trustors as a result of such enforcement shall not be bound by any payment of rent or additional rent for more than one month in advance, and that nothing in the Lease or Deed of Trust affects or impairs the rights of Beneficiary to terminate the Lease in connection with the Beneficiary's or Trustee's exercise of its remedies hereunder.

    **3.4** *Foreclosure*. Upon a sale of the Trust Estate pursuant to foreclosure of this Deed of Trust all right, title and interest of the Trustors in and to the Leases shall, by virtue of this Deed of Trust and the Assignment, automatically vest in and become the absolute property of the purchaser of the Trust Estate without any further act or assignment by the Trustors. The Trustors hereby irrevocably appoint Beneficiary and its successors and assigns, as its agent and attorney-in-fact, to execute all instruments of assignment or further assurances in favor of such purchaser of the Property as may be necessary or desirable for such purpose. Nothing contained herein shall prevent Beneficiary from terminating through foreclosure the Lease of any tenant subordinate to this Deed of Trust.

**4.**    **SECURITY AGREEMENT.**

    **4.1** *Creation of Security Interest*. The Trustors hereby grant to Beneficiary a security interest in the Personal Property for the purpose of securing the Indebtedness.

    **4.2** *Warranties, Representations and Covenants of Trustor*. The Trustors hereby warrant, represent and covenant as follows:

    (a)    except for the security interest granted hereby and for the security interests granted pursuant to the Permitted Lien, the Trustors are, and as to portions of the Personal Property to be acquired after the date hereof will be, the sole owners of the Personal Property, free from any lien, security interest, encumbrance or adverse claim of any kind whatsoever;

    (b)    the Trustors shall promptly notify Beneficiary of any attachment or other legal process levied against any of the Personal Property and any information received by the Trustors relative to the Personal Property, the Trustors' debtors or other persons obligated in connection therewith, which may in any way affect the value of the Personal Property or the rights and remedies of Beneficiary in respect thereto;

    (c)    the Trustors shall not sell, convey or in any manner transfer the Personal Property without the prior written consent of Beneficiary;

712478                13

(d)      the Personal Property shall be kept on or at the Property and the Trustors shall not remove the Personal Property from the Property without the prior written consent of Beneficiary, except for such portions or items of Personal Property as are consumed or worn out in ordinary usage, all of which the Trustors shall promptly replace with new items of equal or better quality;

(e)      the Trustors maintain a place of business in the State of California and the Trustors shall immediately notify Beneficiary in writing of any change in its place of business;

(f)      the Trustors shall maintain their existence and comply with all valid and applicable statutes, rules and regulations, and maintain their properties in good repair, working order and operating condition; the Trustors shall immediately notify Beneficiary of any event causing material loss in the value of its assets;

(g)      at the request of Beneficiary, the Trustors shall join Beneficiary in executing financing statements and continuation and amendments thereof pursuant to the California Commercial Code in form satisfactory to Beneficiary, and the Trustors shall pay the cost of filing the same in all public offices wherever filing is deemed by Beneficiary to be necessary or desirable;

(h)      all covenants and agreements of the Trustors in this Deed of Trust relating to the Trust Estate shall be deemed to apply to the Personal Property as appropriate, whether or not expressly referred to herein;

(i)      the Trustors shall permit representatives of Beneficiary to inspect the Personal Property and the Trustors' books and records relating to the Personal Property and make copies thereof and arrange for verification of the amount of Personal Property under procedures acceptable to Beneficiary at the Trustors' cost;

(j)      the Trustors shall maintain, preserve and protect all Personal Property, keep all Personal Property in good condition and repair and prevent any waste or unusual depreciation thereof; and

(k)      until Beneficiary exercises its right to collect proceeds of the Personal Property pursuant to this Section 4, the Trustors shall collect with diligence any and all proceeds of the Personal Property (which shall be held in trust for Beneficiary), and upon written request by Beneficiary, the Trustors shall keep all such proceeds collected separate from all other funds so as to be capable of identification as to the property of Beneficiary and shall deliver such collections to Beneficiary at such time as Beneficiary may request and in the identical form received, properly endorsed or assigned when required to enable Beneficiary to complete collection thereof.

4.3      Beneficiary's Rights as a Secured Party.  With respect to the security interest granted to Beneficiary under this Section 4, Beneficiary shall have all the rights and remedies granted to a secured party under Article 9 of the UCC, as well as all other rights and remedies available at law or in equity.  The Trustors shall, upon the demand of Beneficiary, assemble all of such Personal Property and make it available to Beneficiary at the Trust Estate, which location is hereby agreed to be reasonably convenient to Beneficiary, Trustee and the Trustors.  Any sale

712478                                            14

proceeds which are applied against the principal component of the Indebtedness shall, to the extent not repaying the entire Indebtedness, be applied to principal in the reverse order of maturity.

**4.4** *Beneficiary's Collection of Proceeds*. Beneficiary may at any time, without prior notice to the Trustors, collect proceeds of the Personal Property and may give notice of assignment to any and all of the Trustors' debtors, and the Trustors hereby irrevocably appoint Beneficiary their true and lawful attorney-in-fact to enforce in the Trustors' names or in Beneficiary's name or otherwise all rights of the Trustors in the Personal Property and to do any and all things necessary and proper to carry out the purposes hereof; provided, however, the Trustors shall have the right to collect, retain, use and enjoy such proceeds subject to the terms of the Loan Documents prior to the occurrence of any Event of Default. It is recognized that the power of attorney granted herein is coupled with an interest and shall not be revocable and Beneficiary shall have the right to exercise this power of attorney upon any Event of Default. Beneficiary shall notify the Trustors of any action taken by Beneficiary pursuant to this provision, but Beneficiary's failure to do so shall not invalidate any such act, affect any of the Trustors' obligations to Beneficiary or give rise to any right, claim or defense on the part of the Trustors.

**4.5** *Fixture Filing*. The Personal Property in which Beneficiary has a security interest includes goods which are or may become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing pursuant to the terms of Sections 9102(a)(40), 9102(a)(41) and 9502 of the UCC. This filing is to be recorded in the real estate records of the county in which the Property is located. The Trustors warrant and agree that there is no financing statement covering the Trust Estate or any part thereof on file in any public office. In addition, the Trustors warrant that they shall not file any UCC Termination Statement effecting any UCC Financing Statement in favor of Beneficiary.

5. **REMEDIES UPON DEFAULT.**

**5.1** *Events of Default*. Trustors shall be in default under this Deed of Trust if any Trustor fails to comply with, or perform when due, any covenant, condition, agreement or provision of such Trustor contained in this Deed of Trust or any other Loan Document or is in default under the Loan Agreement (each such default shall be referred to herein as an "**Event of Default**").

**5.2** *Remedies*. Upon the occurrence of any Event of Default, Trustee and Beneficiary, effective as of the date of the occurrence of any Event of Default, shall have any and all of the following rights and remedies which may be exercised individually, collectively or cumulatively:

(a) Beneficiary may declare all the Indebtedness immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and written notice of default and of election to cause the Trust Estate to be sold, which notice Trustee shall cause to be duly filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law,

Trustee, without demand on the Trustors, shall sell the Trust Estate at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash and lawful money of the United States, payable at time of sale. If the Trust Estate consists of more than one legal parcel, Beneficiary may designate the order in which such parcels shall be sold or offered for sale, subject, however, to any unqualified statutory right which the Trustors may have to direct such order. In addition, if the Trust Estate consists of more than one legal parcel, Beneficiary may require that such parcels be sold at separate sales held at separate times, subject, however, to any unqualified statutory right which the Trustors may have to direct the manner of the sale of such parcels. Trustee may postpone sale of all or any portion of the Trust Estate by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. After making such sale, Trustee shall deliver to the purchaser or purchasers its deed or deeds conveying the Trust Estate so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proofs of the truthfulness thereof. Any person, including the Trustors, Trustee or Beneficiary may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of the trust created by this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: (i) all sums expended in connection with such sale, together with reasonable expenses of the trust created hereby, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; (ii) all other sums advanced or expended by Beneficiary and secured hereby; (iii) the Indebtedness remaining unpaid; and (iv) the remainder, if any, to the person or persons legally entitled thereto.

The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Trust Estate remaining unsold, but shall continue unimpaired until all of the Trust Estate has been sold by exercise of the power of sale in this Deed of Trust and all Indebtedness has been paid and discharged in full.

(b)    Beneficiary may at any time, without notice, in person, by agent or by a court appointed receiver, and without regard to the adequacy of any security for the Indebtedness, enter upon and take possession of the Trust Estate or any part thereof, in Beneficiary's own name sue for or otherwise collect such Rents and Profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, to any Indebtedness, in such order as Beneficiary may determine. The entering upon and taking possession of the Trust Estate, the collection of such Rents and Profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act on or pursuant to such notice.

(c)    Beneficiary may also at any time, without notice, in person, by agent, or by a court appointed receiver, and without regard to the adequacy of any security for the Indebtedness, enter upon, possess, manage, operate, dispose of and contract to dispose of the Trust Estate or any part thereof; take custody of all accounts; negotiate with governmental authorities with respect to the Trust Estate's environmental compliance and remedial measures; take any action necessary to enforce compliance with the Environmental Laws (defined above), including but not limited to

spending Rents and Profits and/or other benefits arising from the Trust Estate to cause compliance with Environmental Laws; make, terminate, enforce or modify real or personal property leases, subleases, contracts, and agreements for occupancy and/or use of the Trust Estate upon such terms and conditions as Beneficiary deems proper; contract for goods and services; hire agents, employees and counsel, make repairs, alterations and improvements to the Trust Estate which are necessary, in Beneficiary's judgment, to protect or enhance the security of this Deed of Trust; appear in and defend any action or proceeding affecting the Trust Estate or other security hereof or the rights and powers of Beneficiary or Trustee; incur the risks and obligations ordinarily incurred by owners of property (without any personal obligation on the part of Beneficiary or the receiver); and/or take any and all other actions which may be necessary or desirable to comply with the Trustors' obligations hereunder and under the other Loan Documents. All sums expended by Beneficiary or Trustee in exercising any of the foregoing shall be secured by this Deed of Trust and shall be immediately due and payable without demand or notice, with interest from the date of expenditure at the Note Rate. All sums realized by Beneficiary under this subsection 5.2(c), less all costs and expenses incurred under this subsection 5.2(c) (including, without limitation, attorneys' fees and costs), and less such sums as Beneficiary deems appropriate as a reserve to meet future expenses under this subsection 5.2(c), shall be applied to the Indebtedness in such order as Beneficiary shall determine in its sole discretion. Neither application of said sums to the Indebtedness, nor any other acts taken by Beneficiary under this subsection 5.2(c), shall constitute a waiver of any Event of Default or notice of default, or nullify the effect of any such notice of default. Beneficiary may take any action or proceeding hereunder without regard to the existence of a declaration that the Indebtedness secured hereby has been declared immediately due and payable or the filing of a notice of default and/or a notice of sale.

(d)     If an Event of Default under this Deed of Trust occurs, and as long as any such Event of Default exists, Beneficiary, as a matter of right and without notice to the Trustors or anyone claiming under the Trustors, and without regard to the adequacy of the security or the then value of the Trust Estate or the interest of the Trustors therein, shall have the right to have a receiver of the Trust Estate appointed by any court having jurisdiction, and the Trustors hereby irrevocably consent to such appointment. Any such receiver shall have all the usual powers and duties of receivers in like or similar cases and all the powers of Beneficiary in case of entry as provided in subsection 5.2(b) and shall continue as such and exercise all such powers until the date of confirmation of sale of the Trust Estate unless such receivership is sooner terminated.

(e)     Beneficiary shall have the right to exercise and enforce any or all of the rights and remedies available to a secured party under the UCC, including, without limitation, those rights and remedies set forth in Section 4 of this Deed of Trust, or the right to sell the Personal Property or any part thereof, or any further or additional or substitute of the Personal Property, at one or more times, and from time to time at public sale or sales or private sale or sales, on such terms as cash or credit, or partly for cash and partly on credit, as Beneficiary may deem proper. At any such sale or sales, Beneficiary shall have the right to become the purchaser, free and clear of any and all claims and rights of equity or redemption in the Trustors, all of which are hereby waived and released. Should any of the Personal Property be sold to any party other than Beneficiary, on credit or for future delivery, the Personal Property so sold may be retained by Beneficiary until the full sales price therefor is paid, and Beneficiary shall not be liable or responsible for the failure of such purchaser to pay for any Personal Property so sold but may, in such event resell such Personal

Property. The Trustors shall not be credited with the amount of any part of such purchase price, unless (and only to the extent) that such payment is actually received in cash. Notice of public sale, if given, shall be sufficiently given, for all purposes, if published not less than nor more than seven (7) days prior to any sale, in a newspaper of general circulation distributed in the city in which the Personal Property is located. The net proceeds of any sale of the Personal Property which may remain after the deduction of all costs, fees and expenses incurred in connection therewith (including, but not limited to, all advertising expenses, brokers' commissions, documentary stamp taxes, recording fees, foreclosure costs, and attorneys' fees and costs) shall be credited by Beneficiary against the Indebtedness. Any portion of the Personal Property which may remain unsold after the full payment of the Indebtedness shall be returned to the respective parties which delivered the same to Beneficiary. If at any time the Trustors or any other parties shall become entitled to the return any of the Personal Property, any transfer or assignment by Beneficiary shall be and shall recite that the same is made wholly without representation or warranty whatsoever by or recourse whatsoever against Beneficiary. The Trustors recognizes that Beneficiary may not have the usual opportunity for an orderly liquidation of the Personal Property or part thereof, but may be compelled to resort to "private sale" of the Personal Property, at a price which may be less than any fair market price for the Personal Property at the time of its sale. The Trustors specifically authorize Beneficiary to sell at Beneficiary's election, any or all of the Personal Property at "private sale" at such price as may be negotiated directly between Beneficiary and the purchaser of the Personal Property, or any part thereof, whether or not the price may be less than the fair market price at the time of such sale. The Trustors further acknowledge and agree that, at Beneficiary's election, the Personal Property may be sold, pursuant to the UCC, concurrent with the sale of the Trust Estate.

(f)     Beneficiary or its agents, acting by themselves or through a court appointed receiver, may, with or without notice, and without releasing the Trustors from any obligation hereunder, for the purpose of curing any default of the Trustors or otherwise in connection therewith, enter upon the Trust Estate or any part thereof and perform such acts and do such things as Beneficiary deems necessary or desirable to inspect, investigate, assess and protect the security of this Deed of Trust, including, without limitation: (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Trust Estate under California Civil Code Section 2929.5 to determine whether there exists a release or threatened release of a Hazardous Substances onto the Trust Estate (which such determination by Beneficiary shall be deemed reasonable and conclusive as between the parties hereto); and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Trust Estate for Hazardous Substances. All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections and examinations which Beneficiary or its agents or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants and attorneys, shall be paid by the Trustors. All costs and expenses incurred by Trustee and Beneficiary pursuant to this subsection 5.2(f) (including, without limitation, court costs, consultant fees and attorneys' fees, whether incurred in litigation or not and whether before or after judgment) shall bear interest at the Note Rate from the date of expenditure and shall be secured by this Deed of Trust.

5.3    *Expenses*. All expenses incurred by Beneficiary and Trustee in exercising any of their rights under this Section 5 of the Deed of Trust or in exercising any other rights available at law or in equity (including, without limitation, expenses incurred in retaking, holding, preparing for sale or selling the Trust Estate or any part thereof and Trustee's and attorneys' fees and costs and

other professional fees and costs) shall be borne solely by the Trustors and shall, together with interest at the Note Rate, be secured by this Deed of Trust.

   *5.4   Order of Application*.  The purchase money or other proceeds of any foreclosure sale made under or by virtue of this Deed of Trust, together with all other sums which then may be held by Trustee or Beneficiary under this Deed of Trust, whether under the provisions of <u>Section 5.2</u> or otherwise, shall be applied as follows: (a) first, to the payment of the costs and expenses of sale and any related judicial proceeding including, without limitation, reasonable compensation to Trustee and Beneficiary, their agents and counsel, all costs of publishing, recording, mailing and posting notices, the costs of any search and evidence of title procured in connection therewith and revenue stamps on any deed or instrument of conveyance, all expenses, liabilities and advances made or incurred by Trustee under this Deed of Trust, together with interest as provided herein and all taxes or assessments, except for any taxes, assessments or other charges subject to which the Trust Estate shall have been sold; (b) second, to the payment of any and all other sums expended under the provisions of this Deed of Trust not then repaid, and all other sums (other than sums described in clause (c), below) required to be paid by the Trustors pursuant to any provisions of this Deed of Trust or any other Loan Document, including, without limitation, all expenses, liabilities and advances made or incurred by Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest thereon as set forth herein, with the specific exception of any sums which might otherwise be recoverable by Beneficiary under the provisions of California Code of Civil Procedure Section 736; (c) third, to the payment of the whole amount then due, owing or unpaid upon the Note for the principal, interest, other charges and any damages, and any other sums advanced by, or owed to, Beneficiary and secured hereby, with the exception of any sums which might otherwise be recoverable by Beneficiary under the provisions of California Code of Civil Procedure Section 736; (d) fourth, to any and all portions of the Indebtedness which might otherwise be recoverable by Beneficiary under the provisions of California Code of Civil Procedure Section 736; and (e) fifth, the remainder, if any, to the persons legally entitled thereto.

**6.   RECONVEYANCE BY TRUSTEE**.  Upon written request from the Beneficiary stating that the Indebtedness has been paid in full and upon surrender of this Deed of Trust and the Note to Trustee for cancellation and retention, and upon payment by the Trustors of Trustee's fees, Trustee shall reconvey to the Trustors, or the person legally entitled thereto, without warranty, any portion of the Trust Estate then held hereunder.  The recitals in such reconveyances of any matters or facts shall be conclusive proof of the truthfulness thereof.

**7.   MISCELLANEOUS.**

   *7.1   Governing Law*.  This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California without resort to choice of law principles.

   *7.2   Statements*.  Beneficiary shall, within ten (10) days after receipt of written notice form the Beneficiary, furnish to the Trustors a written statement setting forth the unpaid principal and interest due under the Note and any other component of the Indebtedness.  The Trustors agree to pay Beneficiary for each such statement the maximum fee allowed by law or, if there is no maximum fee, such reasonable fee as is then charged by Beneficiary for such statement.

712478                                           19

7.4    _Trustee_.  Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The trust hereby created shall be irrevocable by the Trustors.  Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county in which the Trust Estate is located, and by otherwise complying with applicable law, substitute a successor or successors to the Trustee named herein or acting hereunder.  Trustee may resign at any time upon giving ten (10) days notice in writing to the Trustors and to Beneficiary.  The Trustors shall pay all costs, fees, and expenses of Trustee, its agents, and counsel in connection with the performance of its duties hereunder and shall pay all taxes (except federal and state income taxes) or other governmental charges or impositions imposed by any governmental authority on Trustee by reason of its interest in the Note, this Deed of Trust or any other Loan Document.

7.5    _Further Assurances_.  Whenever reasonably requested by Beneficiary, the Trustors shall promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances, and promptly do or cause to be done all such other and further things as may be necessary and reasonably required in order to further and more fully vest in Trustee or Beneficiary all rights, interest powers, benefits, privileges and advantages conferred or intended to be conferred by this Deed of Trust.

7.6    _Notices_.  Whenever Beneficiary, the Trustors or Trustee wishes to give any notice or demand with respect to this Deed of Trust, each such notice or demand shall be in writing and shall be given by personal service, facsimile transmission, certified or registered mail, return receipt requested, or Federal Express or other recognized overnight delivery service regularly providing proof of delivery, addressed to the addresses set forth below.  All such notices and demands shall be deemed given upon receipt.  Any party may change its address for such notices by giving notice of such change to the other parties hereto.

| If to Trustors : | FBP Investments, LP<br>270 Newport Center Dr Suite 200<br>Newport Beach CA 92660<br>Attn: James Baldwin<br>Phone: (949) 644-4202<br>Facsimile: (949) 644-7856 |
|---|---|
| If to Trustee: | Chicago Title Company<br>4041 Mac Arthur Boulevard, Suite 490<br>Newport Beach, CA 92660<br>Attn: Lorri Beasley<br>Phone: (949) 724-3114<br>Facsimile: (949) 724-3186 |
| If to Beneficiary: | SEA PRESTIGIO, LLC<br>15 Enterprise, Suite 550<br>Aliso Viejo, CA 92656<br>Attn:  Emilio F. Gonzalez, Esq.<br>Phone: (949) 448-4321 |

712478                                                    20

with copy to:    Glaser, Weil, Fink, Jacobs,
Howard & Shapiro, LLP
10250 Constellation Boulevard, 19th
Floor
Los Angeles, CA 90067
Attn: Brett Cohen, Esq.
Phone: (310) 553-3000
Facsimile: (310) 556-2920

    7.7    *Time*. Time is of the essence in the performance of each and every obligation contained herein.

    7.8    *Successors and Assigns*. This Deed of Trust inures to the benefit of and binds all parties hereto, their personal representatives, heirs, successors and assigns. The term "Trustor" includes both each original Trustor and any subsequent owner of the Trust Estate or any part thereof. The term Beneficiary shall mean the owner and holder of the Note whether or not named as Beneficiary herein.

    7.9    *Interpretation*. The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Deed of Trust. Whenever the context requires, the singular number includes the plural, and vice versa, and each gender includes each other gender.

    7.10    *Invalidity of Certain Provisions*. If the lien of this Deed of Trust is invalid or unenforceable as to any part of the Indebtedness, or if such lien is invalid or unenforceable as to any part of the Trust Estate, the unsecured or partially secured portion of such Indebtedness shall be completely paid prior to the payment of the remaining and secured or partially secured portion, and all payments made, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the Indebtedness which is not secured or not fully secured by the lien of this Deed of Trust. The invalidity of any provision of this Deed of Trust shall not affect the remaining provisions of this Deed of Trust or any part thereof and this Deed of Trust shall be construed as if such invalid provision, if any, had not been inserted herein.

    7.11    *Subrogation*. To the extent that proceeds of the Note or advances under this Deed of Trust are used to pay any outstanding lien, charge or prior encumbrance against the Trust Estate, such proceeds or advances have been or will be advanced by Beneficiary at the Trustors' request and Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether such liens, charges or encumbrances are released.

    7.12    *No Waiver*. The acceptance by Beneficiary of any sum after it is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums hereby secured or to declare a default as herein provided. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance only of the sum so paid, and such acceptance of less than the full amount due shall not constitute a waiver of the obligation of the

712478                               21

Trustors to pay the entire sum then due. In addition, the Trustors' failure to pay the entire sum then due shall be and continue to be a default notwithstanding acceptance of an amount which is less than the full amount due, and Beneficiary or Trustee shall, at all times thereafter and until the entire sum then due has been paid (and notwithstanding the acceptance by Beneficiary thereafter of further sums) be entitled to exercise all rights in this Deed of Trust conferred upon them upon the occurrence of a default, and the right to proceed with a sale under any notice of default, and election to sell, shall in no way be impaired, whether any of such amounts are received prior or subsequent to such notice. Consent by Beneficiary to any transaction or action of the Trustors which is subject to consent or approval of Beneficiary hereunder shall not be deemed a waiver of the right to require such consent or approval to future or successive transactions or actions. This Deed of Trust cannot be waived, amended, modified, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, modification, change, discharge or termination is sought.

     *7.13*    *Joint and Several Obligations and Liability.* Each Trustor shall be jointly and severally liable for all obligations, agreements and liabilities under this Deed of Trust and the Loan Documents.

     **7.14**    *Cross-Default/Cross-Collateral.* The security and collateral under this Deed of Trust shall be security and collateral for each of the other deeds of trusts and/or mortgages given as security for the Loan. A default under any of the Loan Documents, including this Deed of Trust, shall constitute a default under all other Loan Documents, including all other deeds of trusts and/or mortgages given as security for the Loan.

     *[The rest of this page is intentionally left blank. Signature pages.]*

712478

22

**IN WITNESS WHEREOF**, the Trustors have executed this Deed of Trust as of the date first above written.

**"TRUSTOR"**

James P. Baldwin and Nancy L. Baldwin, Trustees of the James P. Baldwin Trust No. 1

By: _____
Name: James P. Baldwin
Its:  Co-Trustee

By: _____
Name:  Nancy L. Baldwin
Its:  Co-Trustee


State of California
County of _____

On _____ before me, (here insert name and title of the officer), personally
appeared_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)

State of California
County of _____

On _____ before me, (here insert name and title of the officer), personally
appeared_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_

On _June 30, 2010_ before me, _Teresa Lynn Morgan, Notary Public_,
     Date                          Here Insert Name and Title of the Officer

personally appeared _James P. Baldwin_
                                        Name(s) of Signer(s)

TERESA LYNN MORGAN
Commission # 1730036
Notary Public - California
Orange County
My Comm. Expires Apr 4, 2011

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Teresa Lynn Morgan_
                             Signature of Notary Public

Place Notary Seal Above

——————————— OPTIONAL ———————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _Deed of Trust and Security Agreement_

Document Date: _June 30, 2010_ _____ Number of Pages: _____

Signer(s) Other Than Named Above: _Nancy L. Baldwin_

## Capacity(ies) Claimed by Signer(s)

| | |
|---|---|
| Signer's Name: _James P. Baldwin_ | Signer's Name: _____ |
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☑ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |
| _James P. Baldwin Trust No. 1_ | |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_ }

On _June 30, 2010_ before me, _Teresa Lynn Morgan, Notary Public_
      Date                                    Here Insert Name and Title of the Officer

personally appeared _Nancy L. Baldwin_
                                    Name(s) of Signer(s)

> TERESA LYNN MORGAN
> Commission # 1730036
> Notary Public - California
> Orange County
> My Comm. Expires Apr 4, 2011

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Teresa Lynn Morgan_
                               Signature of Notary Public

Place Notary Seal Above

———————————— **OPTIONAL** ————————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _Deed of Trust and Security Agreement_

Document Date: _June 30, 2010_        Number of Pages: _____

Signer(s) Other Than Named Above: _James P. Baldwin_

### Capacity(ies) Claimed by Signer(s)

Signer's Name: _Nancy L. Baldwin_
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☑ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____
_James P. Baldwin_
_Trust No. 1_

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

**"TRUSTOR"**

James P. Baldwin and Nancy L. Baldwin, Trustees of the Nancy L. Baldwin Trust No. 1

By: _____

Name: James P. Baldwin

Its:  Co-Trustee


By: _____

Name: Nancy L. Baldwin

Its:  Co-Trustee


State of California

County of_____

On _____ before me, (here insert name and title of the officer), personally
appeared_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_

On _June 30, 2010_ before me, _Teresa Lynn Morgan Notary Public_
_____ Date _____                    Here Insert Name and Title of the Officer

personally appeared _Nancy L. Baldwin_
_____ Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Teresa Lynn Morgan_
_____ Signature of Notary Public

*TERESA LYNN MORGAN*
*Commission # 1738036*
*Notary Public - California*
*Orange County*
*My Comm. Expires Apr 4, 2011*

Place Notary Seal Above

──────────────── OPTIONAL ────────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Deed of Trust and Security_

Document Date: _June 30, 2010_ _____ Number of Pages: _____

Signer(s) Other Than Named Above: _James P. Baldwin_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Nancy L. Baldwin_
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☑ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____
_Nancy L. Baldwin_
_Trust No. 1_

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Orange

On June 30, 2010 before me, Teresa Lynn Morgan, Notary Public
Date ___ Here Insert Name and Title of the Officer

personally appeared James P. Baldwin
Name(s) of Signer(s)

---

**TERESA LYNN MORGAN**
Commission # 1738036
Notary Public - California
Orange County
My Comm. Expires Apr 4, 2011

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Teresa Lynn Morgan_
Signature of Notary Public

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: Deed of Trust and Security Agreement

Document Date: June 30, 2010 ___ Number of Pages: _____

Signer(s) Other Than Named Above: Nancy L. Baldwin

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: James P. Baldwin
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☒ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____
Nancy L. Baldwin
Trust No. 1

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org. Item #5907 Reorder: Call Toll-Free 1-800-876-6827

## EXHIBIT "A"

## LEGAL DESCRIPTION OF THE PROPERTY

LOT 20 OF TRACT NO. 975, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 31, PAGES 18 THROUGH 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

712478

## EXHIBIT "B"

### PERSONAL PROPERTY

All personal property owned by the Trustors and located at the Property.

712478

%JS 44 (Rev. 12/07) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

SEA PRESTIGIO, LLC

**DEFENDANTS** M/Y TRITON, Republic of Marshall Islands (Official No. 70070), Its Engines, Machinery, Appurtenances, etc., in rem; FBP INVESTMENTS, LP; JAMES P. BALDWIN and NANCY L. BALDWIN, as co-trustees of the James P. Baldwin Trust No. 1; SPEARFISH VENTURES, LTD.; CACHAL INVESTMENTS, S. DE R.L. DE C.V., in personam; and DOES 1-10

**(b)** County of Residence of First Listed Plaintiff   Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

William E. Dysart, Wright & L'Estrange, 401 West A Street, Suite 2250, San Diego, CA 92101; (619) 231-4844

Attorneys (If Known)

'10 CV 2412 W AJB

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|                                | PTF | DEF |                                                      | PTF | DEF |
|--------------------------------|-----|-----|------------------------------------------------------|-----|-----|
| Citizen of This State          | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State       | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                              | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

CONTRACT / TORTS / FORFEITURE/PENALTY / BANKRUPTCY / OTHER STATUTES
☒ 120 Marine

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
46 U.S.C. sections 31301, et seq.
Brief description of cause:
Breach of Contract, Maritime Foreclosure, Real Property Foreclosure

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 15,500,000.00 [Interest and costs of suit.]
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE Luis A. Rodriguez
DOCKET NUMBER Orange County Sup. Ct. 00420336

DATE 11/22/10   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 20476   AMOUNT 350.00   APPLYING IFP   JUDGE   MAG. JUDGE


MS 11/23/10