William E. Dysart, State Bar No. 042608
Alexander T Gruft, State Bar No. 223096
WRIGHT & L'ESTRANGE
401 West A Street, Suite 2250
San Diego, CA 92101
Telephone: (619) 231-4844
Facsimile: (619) 231-6710

Patricia L. Glaser, State Bar No. 55668
G. Jill Basinger, State Bar No. 195739
James T. Grant, State Bar No. 155831
GLASER WEIL FINK JACOBS
   HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Plaintiff
SEA PRESTIGIO, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEA PRESTIGIO, LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>v.<br><br>M/Y TRITON, Republic of Marshall Islands (Official No. 70070), Its Engines, Machinery, Appurtenances, etc., *In rem*; SPEARFISH VENTURES, LTD., a British Virgin Islands Company; FBP INVESTMENTS, LP, a Delaware limited partnership; JAMES P. BALDWIN, as co-trustee of the James P. Baldwin Trust No. and Nancy L. Baldwin Trust No. 1; NANCY L. BALDWIN, as co-trustee of the James P. Baldwin Trust No. and Nancy L. Baldwin Trust No. 1; CACHAL INVESTMENTS, S. DE R.L. DE C.V., a Mexican corporation, *In Personam*, and DOES 1-10,<br><br>                    Defendants. | Case No.: 3:10-CV-02412-BTM (AJB)<br><br>**IN ADMIRALTY**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY ACTION, OR IN THE ALTERNATIVE, REQUESTING LEAVE TO AMEND ANSWER TO FILE COUNTERCLAIMS, CONTINUE TRIAL DATE, AND EXTEND SCHEDULING ORDER DEADLINES**<br><br>[Declarations and Evidentiary Objections, filed concurrently herewith]<br><br>Date:            March 18, 2011<br>Time:            11:00 a.m.<br>Location:       Courtroom 15<br><br>Complaint Filed: November 23, 2010<br>Trial Date: May 9, 2011 |

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

729257

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND ................................................ 2

III.    THE EX PARTE APPLICATION IS PROCEDURALLY IMPROPER. ...... 4

IV.    A STAY OF THIS FEDERAL ACTION IS UNWARRANTED
       BECAUSE THE EXCEPTIONAL CIRCUMSTANCES NECESSARY
       TO JUSTIFY A STAY DO NOT EXIST. ...................................................... 5

       A.    A Federal Court Is Obligated To Exercise Its Jurisdiction, Barring
             Exceptional Circumstances. ................................................................ 5

       B.    The Colorado River Factors Weigh Heavily Against Staying The
             Federal Action. .................................................................................. 6

             1.    The Federal Court Was The First To Assert Jurisdiction
                   Over Property Involved In The Dispute. .................................. 6

             2.    The Federal Action Is Not Only The More Convenient
                   Forum, But It Is Also The Exclusive Forum For Resolving
                   The Entire Action. .................................................................. 7

             3.    Denying The Stay Request Will Avoid Piecemeal
                   Litigation................................................................................ 8

             4.    The Federal Action Has Priority Over The State Action
                   Because The Federal Action Is Much Further Along Than
                   The State Action. .................................................................... 9

             5.    The Existence Of State Law Claims Is Insufficient To
                   Warrant A Stay Of The Federal Action..................................... 9

             6.    The State Court Cannot Adequately Protect Plaintiff's
                   Rights. ................................................................................... 11

             7.    Plaintiff Cannot "Forum Shop" Because The Federal Action
                   Is The Only Proper Forum For Adjudicating All Of
                   Plaintiff's Claims. ................................................................. 12

V.     PLAINTIFF DOES NOT OBJECT TO DEFENDANTS' REQUEST TO
       AMEND DEFENDANTS' RESPONSIVE PLEADINGS; HOWEVER,
       DEFENDANTS HAVE NOT SHOWN GOOD CAUSE FOR
       CONTINUING THE PRE-TRIAL AND TRIAL DATES. .......................... 13

VI.    CONCLUSION ...................................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

**OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION**

729257

# TABLE OF AUTHORITIES

Page

## CASES

*American Bank of Wage Claims v. Registry of the Dist. Court of Guam,*
 431 F.2d 1215 (9th Cir. 1970) ................................................. 12

*Colorado River Water Conservation Dist. v. U.S.,*
 424 U.S. 800 (1976) ........................................................... 5

*Fourchon, Inc. v. La. Nat'l Leasing Corp., et al.,*
 723 F.2d 376 (5th Cir. 1984) ................................................ 10

*Gov't Employees Ins. Co. v. Dizol,*
 133 F.3d1220 (9th Cir. 1998) ................................................ 5

*In re Millenium Seacarriers, Inc.,*
 419 F.3d 83 (2d Cir. 2005) .................................................. 12

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
 460 U.S. 1 (1983) ....................................................... 5, 6, 9

*The Resolute Wilson v. The Resolute,*
 168 U.S. 437 (1897) ......................................................... 12

*Travelers Indem. Co. v. Madonna,*
 914 F.2d 1364 (9th Cir. 1990) ......................................... 6, 9, 11

*Underwriters, Inc. v. The Continental Ins. Co.,*
 842 F.2d 1253 (9th Cir. 1988) ............................................ 6, 9

*United Gas Pipe Line v. Ideal Cement Co.,*
 369 U.S. 134 (1962) ......................................................... 10

*United States v. Alpine Land & Reservoir Co.,*
 174 F.3d 1007 (9th Cir. 1999) ............................................... 7

## STATUTES

46 U.S.C. § 926(d) ............................................................ 10

46 U.S.C. § 31301-31343 .................................................... 9, 10

46 U.S.C. § 31322(b) ......................................................... 10

46 U.S.C. § 31325(c) .......................................................... 7

Fed. R. Civ. Proc. Supp. Rule C(2) ........................................... 12

S.D. Cal. Civ. Rule 16.1 ..................................................... 13

S.D. Cal. Civ. Rule 7.1(e)(1) ................................................. 4

*Glaser Weil Fink Jacobs*
*Howard Avchen & Shapiro* LLP

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants' *Ex Parte* Application ("Application") is improper and should be denied for procedural and substantive reasons.  Procedurally, the Application is improper because there is no exigency.  Defendants M/Y Triton, *et al.* (collectively, "Defendants") have known about the pendency of this case since its filing and have had adequate time to file a properly noticed motion for the relief requested.  Moreover, the Application itself makes no argument of exigency justifying relief on an expedited basis, nor is there any.

Substantively, the Application should be rejected because this action (the "Federal Action") can resolve all the disputes at issue, while the similar action pending before the Orange County Superior Court (the "State Action") cannot resolve the arrest of defendant M/Y Triton (the "Yacht") and the foreclosure of the preferred ship mortgage on the Yacht (the "Preferred Ship Mortgage"), which is an *in rem* proceeding exclusively before this Court.  Furthermore, trial in the Federal Action is scheduled for May 9, 2011, which will resolve this dispute months, if not years, before the State Action is resolved.  The expedited trial date in the Federal Action will best preserve the declining value of the Yacht (the principal loan collateral), and will otherwise save Plaintiff substantial costs by minimizing the duration of the arrest for which Plaintiff is financially responsible.  Defendants must establish exceptional circumstances in order to justify staying the Federal Action.  They cannot do so.

The most efficient way to resolve the dispute between the parties is to allow Defendants to add counterclaims, which are in essence identical to their affirmative defenses.  Then, this Court can resolve all claims, issues, and defenses between the parties, including the arrest and foreclosure of the Yacht.  Plaintiff does not object to Defendants' request to amend their pleadings.  Plaintiff does object, however, to Defendants' request to continue pre-trial deadlines and trial.  Notwithstanding proper maintenance and repair of the Yacht by the custodian, every month that the Yacht

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1

729257

1  remains under arrest, its value not only declines, but Plaintiff must also continue to

2  incur almost $30,000 in monthly custodial and maintenance/repair fees. Thus, a trial

3  delay would unduly prejudice Plaintiff by increasing Yacht arrest expenses while

4  decreasing the value of Plaintiffs' principal loan collateral.  (*See* Declaration of Don

5  Beaumont ("Beaumont Decl."), ¶¶ 1-8)  Furthermore, even if Defendants are allowed

6  to amend their pleadings, the core factual and legal/equitable issues will remain the

7  same, and no additional time will be necessary to prepare for trial.

8  **II.      RELEVANT FACTUAL BACKGROUND**

9          On or about June 30, 2010, the parties entered into a loan agreement (the "Loan

10  Agreement"), whereby Plaintiff agreed to loan $21 million to Defendants, paid in two

11  disbursements.  [Docket No. 1 (Verified Complaint), Ex. B (Loan Agreement).]  The

12  master Loan Agreement and Promissory Note were secured primarily by a preferred

13  ship mortgage (the "Preferred Ship Mortgage") on the Yacht, and a second mortgage

14  on Defendants' property in Laguna Beach (the "Emerald Bay Mortgage"), as well as

15  an agreement for the use of the Yacht by Dr. Henry Nicholas ("Nicholas"), Plaintiff's

16  principal ("Yacht Use Agreement") (collectively, the "Loan Agreements").

17          Plaintiff made the first disbursement of $15.5 million to Defendants on

18  June 30, 2010.  To date, Defendants have not returned any portion of these funds to

19  Plaintiff (even though Defendants recently admitted at deposition that such monies

20  should be repaid).  The Loan Agreement conditioned a second disbursement in the

21  amount of $5.5 million, in part, on (1) Defendants not being in default under the Loan

22  Agreement, the Preferred Ship Mortgage, or any of the other loan documents,

23  including the timely payment of monthly interest; and (2) Defendants delivering into

24  escrow a fully executed, mortgage "in recordable form" on property owned by

25  defendant Cochal Investments in Cabo San Lucas (the "Cabo Mortgage").  [Docket

26  No. 1, Ex. B (Loan Agreement), Art. I (defining "Conditions Precedent to Second

27  Disbursement").]

28          Defendants failed to discharge several conditions precedent to the second

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

2

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION**

disbursement by, among other things, failing to pay interest and failing to deliver the Cabo Mortgage into escrow.  Defendants also failed to comply with several provisions of the Preferred Ship Mortgage by, among other things, failing to pay the Yacht crew, Yacht repair costs, and Yacht fuel, thereby creating liens on the Yacht in breach of the Loan Agreements, including the Preferred Ship Mortgage.  [Docket No. 28-4, p.8, lines 21-26 (Declaration of Emilio F. Gonzalez In Support of Sea Prestigio's Opposition To Defendants' Motion To Vacate Warrant For Arrest Of Vessel; Or, In The Alternative, For An Equitable Vacatur Of Warrant To Arrest Vessel), ¶ 26, Ex. N.]  Due to such failures, Plaintiff did not make the second disbursement.

On October 7, 2010, based on the myriad breaches of the Loan Agreements, Plaintiff accelerated the loan by delivering a notice of default to Defendants demanding payment of all principal and interest, plus penalties and costs. (Declaration of James T. Grant ("Grant Decl."), ¶ 4, Ex. 1 (notice of default).) Plaintiff demanded a response by November 1, 2010.

On October 27, 2010, Defendants responded by filing an action in Orange County Superior Court ("State Court") against Plaintiff, Nicholas, and his affiliates for, among other things, breach of the Loan Agreement, and violation of California's usury laws (the "State Action").

When it became clear that Defendants did not intend to comply with the requirements of the Loan Agreements, Plaintiff enforced its rights by filing the Federal Action on November 23, 2010, in which Plaintiff alleged breach of the Loan Agreements and asserted, among other things, a claim for foreclosure of the Yacht through the Preferred Ship Mortgage.  On November 24, 2010, the Court issued an order for the arrest of the Yacht to preserve Plaintiff's rights and remedies against Defendants.  [Docket No. 7.]  On December 22, 2010, the Court denied Defendants' motion to vacate the arrest. [Docket No. 33.]  In denying Defendants' motion, the Court preliminarily found that Plaintiff had shown that "an event of default [had]

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

3

729257

occurred under the loan agreement…" and that Plaintiff had "met its burden of showing entitlement to a maritime lien." *Id.*

The Court has ordered an expedited trial to begin on May 9, 2011.  [Docket No. 40.]  The Court set the original trial date for April 4, 2011 at Defendants' urging.[1] The discovery cutoff is March 11, 2011, and the parties are now completing extensive discovery, including the exchange of over 4,000 documents (18,000+ pages) in response to approximately 500 document requests, several sets of interrogatories and requests for admissions, and several depositions.  (Grant Decl. ¶ 5.)  Plaintiff's motion for summary judgment will be filed March 28, 2011.  [Docket No. 47.][2]

In stark contrast, the State Action is not at issue.  On January 31, 2011, the State Action (which had been removed by Sea Prestigio, *et al.* on November 29, 2010) was remanded back to State Court.  The pleadings are not settled to the extent Sea Prestigio is required to seek leave to file cross-claims consistent with its claims in the Federal Action, discovery has not begun, and the State Court has not held a status conference, set any pre-trial deadlines, or a trial date.  (Grant Decl. ¶ 6.)

## III.    **THE *EX PARTE* APPLICATION IS PROCEDURALLY IMPROPER.**

Seeking the requested relief on an expedited basis is unjustified because Defendants had sufficient notice of their claims to file a properly noticed motion, rather than the Application.  *See* S.D. Cal. Civ. R. 7.1(e)(1).  Here, Defendants knew of all their counterclaims by or before October 27, 2010, when they filed their complaint in the State Action.  Defendants asserted all of the counterclaims in the State Action complaint.  Defendants could have, and should have, filed counterclaims

---

[1] In paragraph 42 of his declaration in support of Defendants' unsuccessful motion to vacate the arrest of the Yacht, James P. Baldwin requested that "this dispute be expeditiously resolved[.]"  [Docket No. 26-1, p. 11, line 1.]

[2] On March 8, 2011, this Court granted the parties' joint motion to, among other things, continue the summary judgment motion filing deadlines to March 28, 2011, after this Court rules on the Application.  [Docket No. 47.]

4

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    with their answer on December 30, 2010.  Furthermore, by January 31, 2011,
2    Defendants knew that the Central District court had remanded the State Action back
3    to State Court.  Defendants could have filed a noticed motion in place of the
4    Application as early as January 31, 2011.  A noticed motion filed on that date would
5    have been heard as early as March 1, 2011.

6         Defendants have not alleged any facts, or made any arguments, justifying their
7    failure to file a noticed motion in place of an *ex parte* application. Because
8    Defendants had adequate time to file a noticed motion, and no other grounds
9    justifying an *ex parte* filing exist, the Application lacks good cause.

10   **IV.   A STAY OF THIS FEDERAL ACTION IS UNWARRANTED BECAUSE**
11   **THE EXCEPTIONAL CIRCUMSTANCES NECESSARY TO JUSTIFY**
12   **A STAY DO NOT EXIST.**

13   **A.   A Federal Court Is Obligated To Exercise Its Jurisdiction, Barring**
14   **Exceptional Circumstances.**

15        Federal courts have a "virtually unflagging obligation …to exercise the
16   jurisdiction given them." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S.
17   800, 813 (1976) ("*Colorado River*").  Abstention from the exercise of federal
18   jurisdiction is considered "an extraordinary and narrow exception to the duty of a
19   district court to adjudicate a controversy properly before it." *Id.* at 817.[3]  The
20   Supreme Court has repeatedly held that abstention due to considerations of judicial
21   economy is appropriate only where exceptional circumstances favoring abstention
22   exist.  *See id.*; *see also Moses H. Cone Memorial Hospital v. Mercury Construction*
23   *Corp.*, 460 U.S. 1, 19 (1983) ("*Cone*") (district court abused its discretion in staying
24   federal suit in deference to substantially similar state suit).

25

26   [3]  In their brief, Defendants state that, "[w]hen parallel proceedings pending in state
27   court involve the same parties and the same issues, courts recognize a presumption
     that the entire suit should be heard in state court."  (Application, p. 5.)  That
     presumption applies only in cases brought under the Declaratory Judgment Act.  *See*
28   *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d1220, 1223-1225 (9th Cir. 1998).

5

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

729257

A district court has limited discretion to abstain from adjudicating a case where a substantially similar case is pending before a state court. The district court must exercise such discretion within the "exceptional circumstances" limits of the *Colorado River* abstention doctrine.  *See Underwriters, Inc. v. The Continental Ins. Co.*, 842 F.2d 1253, 1256 (9th Cir. 1988) ("*Underwriters*") (district court's discretion in abstention cases is narrower than its discretion in other matters, such as rulings on evidentiary issues); *see also Cone*, 460 U.S. at 19.

The Supreme Court has set forth several factors to determine whether a stay of a federal action in deference to a similar state action is warranted: (1) which court first assumed jurisdiction over property involved in the litigation; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; and (7) the prevention of forum shopping.  *Colorado River*, 424 U.S. at 818-819; *see also Cone*, 460 U.S. at 14; and *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367-68 (9th Cir. 1990).

In setting forth the above factors, the Supreme Court in *Colorado River* and its progeny noted that "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818.  The Court emphasized that "only the clearest of justifications will warrant dismissal." *Id*.

**B.**   **The *Colorado River* Factors Weigh Heavily Against Staying The Federal Action.**

**1.**   **The Federal Court Was The First To Assert Jurisdiction Over Property Involved In The Dispute.**

This Court was the first to assert jurisdiction over the res in this dispute — *i.e.*, the Yacht — which is the principal collateral securing Plaintiff's rights and remedies

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

6

against Defendants under the Loan Agreements.  The Court asserted jurisdiction over the Yacht when it authorized a warrant arresting the Yacht on November 24, 2010. The Yacht is currently under arrest and under the jurisdiction of this Court. Therefore, the jurisdiction factor under *Colorado River* weighs in favor of denying a stay of the Federal Action.

> 2. **The Federal Action Is Not Only The More Convenient Forum, But It Is Also The Exclusive Forum For Resolving The Entire Action.**

This Court is the only forum in which all of the claims, issues, and defenses involved in both the State Action and Federal Action can be heard, because only the Federal Court can assert jurisdiction over the Yacht and adjudicate the foreclosure of the Yacht.  It is well-established that "the first court to gain jurisdiction over a res exercises exclusive jurisdiction over an action involving that res."  *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1013 (9th Cir. 1999).  The Court has *in rem* jurisdiction over the Yacht, and thus holds exclusive jurisdiction over matters concerning the Yacht.  Section 31325(c) of Untied State Code Title 46) grants the federal courts exclusive jurisdiction over *in rem* actions against foreign vessels, such as the Yacht, which is registered under the laws of the Republic of the Marshall Islands.  *See* 46 U.S.C. § 31325(c).  Therefore, the State Court has no power to preside over an action for the foreclosure of the Yacht.

Defendants admit that the only difference between the two actions is that the Federal Action involves a claim for foreclosure on the Yacht pursuant to the Preferred Ship Mortgage.  (Application, pp. 6-7.)  Because this Court is the only possible forum for adjudicating the foreclosure of the Yacht, it is the only possible forum for resolving all of the claims, issues, and defenses arising out of this secured loan transaction.  Thus, the Federal Action is the only way of resolving this dispute in a single action, while staying the Federal Action would require the piecemeal adjudication of all claims, issues, and defenses through two separate actions.

7

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

729257

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   Therefore, under *Colorado River*, the relative convenience of forums weighs in favor

2   of denying a stay of the Federal Action.

3                    **3.      Denying The Stay Request Will Avoid Piecemeal Litigation.**

4            The prosecution of the Federal Action assures avoidance of piecemeal litigation

5   because this Court can resolve all of the claims, issues, and defenses in both the

6   Federal Action and the State Action.  In contrast, the State Court cannot hear all of the

7   claims, issues, and defenses between the parties because the State Court cannot

8   resolve claims, issues, and defenses concerning the Yacht.  For example, if the parties

9   were to litigate their claims in State Court first, and the State Court were to find in

10  favor of  Plaintiff, then Plaintiff would be forced to return to this Court to foreclose

11  on the Yacht.  This Court would then need to consider evidence relating to the Loan

12  Agreements, thereby duplicating the efforts of the State Court.  On the other hand, if

13  Defendants amend their pleadings in the Federal Action to include counterclaims, as

14  stipulated by Plaintiff, then the Federal Action would include all claims, issues, and

15  defenses in this dispute, and Defendants could avoid piecemeal litigation by

16  dismissing the State Action.[4]

17           Moreover, if this Court hears the Federal Action, then it will likely resolve all

18  claims, issues, and defenses between the parties before the State Court expends any

19  resources in the State Action.  In the Federal Action, the parties are filing summary

20  judgment motions by March 28, 2011, with a hearing on April 25, 2011.  This case

21  could, therefore, be resolved in approximately six weeks.  The trial in the Federal

22  Action is set for May 9, 2011, whereas no trial date has been set for the State Action.

23  Moreover, the parties are now completing extensive discovery in the Federal Action,

24  while discovery has not begun in the State Action.  (Grant Decl., ¶¶ 5-6.)  Therefore,

25  the Federal Action will conclude before progress is made in the State Action.  Thus,

26

27  [4]   In the interest of avoiding piecemeal litigation, Plaintiff will waive prevailing party
    costs in the State Action if Defendants dismiss the State Action upon amending their
28  pleadings in the Federal Action.  (Grant Decl., ¶ 3.)

8

729257

1  adjudication of the Federal Action will prevent duplicative litigation efforts by

2  disposing of all claims, issues, and defenses between the parties well before the State

3  Court wastes judicial resources.

4      **4.    The Federal Action Has Priority Over The State Action**

5              **Because The Federal Action Is Much Further Along Than The**

6              **State Action.**

7      To determine which case has priority, this Court should focus on the progress

8  actually made in each case, rather than which complaint was filed first.  *See*

9  *Underwriters*, 843 F.2d at 1257.  The parties are filing summary judgment motions on

10 March 28, and the hearing is on April 25.  The trial in the Federal Action is set to

11 begin on May 9, 2011.  Based on the March 11 discovery cutoff in the Federal

12 Action, the parties are now concluding substantial discovery.  (Grant Decl., ¶ 5.)  In

13 contrast, in the State Action, there has been no progress beyond the filing of initial

14 pleadings.  Discovery has not begun, and no pretrial or trial dates have been set in the

15 State Action.  (Grant Decl., ¶ 6.)  Moreover, if the Federal Action were stayed,

16 Plaintiff would have to amend its pleadings in the State Action and file cross-claims

17 consistent with the Verified Complaint in the Federal Action.

18     **5.    The Existence Of State Law Claims Is Insufficient To Warrant**

19             **A Stay Of The Federal Action.**

20     The presence of the federal law issues in this case, per this Court's *in rem*

21 jurisdiction over the Yacht, as well as Plaintiff's foreclosure claim as to the Yacht

22 under the federal Commercial Instruments and Maritime Liens Act ("Maritime Liens

23 Act"), 46 U.S.C. §§ 31301-31343, weighs heavily against staying the Federal Action.

24 The presence of federal law issues must always be a major consideration weighing

25 against a stay.  *See Cone*, 460 U.S. at 26.  On the other hand, the presence of state law

26 issues rarely suffices on its own to warrant a stay.  *See id.*; *see also Travelers Indem.*

27 *Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. Cal. 1990) (existence of state law

28 claims does not weigh in favor of abstention because case involved routine issues of

9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION**

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   state law such as misrepresentation, breach of fiduciary duty, and breach of contract,

2   which district court is fully capable of deciding).

3        The Preferred Ship Mortgage on the Yacht is governed by the Maritime Liens

4   Act.  The Maritime Liens Act requires uniform application of federal maritime law.

5   *See Fourchon, Inc. v. La. Nat'l Leasing Corp., et al.*, 723 F.2d 376, 383 (5th Cir.

6   1984) (where preferred ship mortgage is concerned, court must apply maritime law to

7   avoid "undesirable lack of uniformity").  Accordingly, the need for uniform

8   application of federal maritime law in this case weighs in favor of denying

9   Defendants' request for a stay the Federal Action.

10        Furthermore, the state claims, issues, and defenses in the Federal Action not

11   only raise issues of California law, but they also implicate federal law under the

12   Maritime Liens Act).  While Defendants raise the issue of usury under California law,

13   California law on such issue is preempted by the Maritime Liens Act.  *See* 46 U.S.C.

14   § 31322(b) ("Any indebtedness secured by a preferred mortgage that is filed or

15   recorded under this chapter …, may have any rate of interest to which the parties

16   agree."); *see also Nat G. Harrison Overseas Corp. v. American Barge Sun Coaster*,

17   475 F.2d 504, 506 (5th Cir. 1973) (46 U.S.C. § 926(d), predecessor statute to 46

18   U.S.C. § 31322(b), preempted Georgia usury law); and *Fourchon, Inc.*, 723 F.2d at

19   383 (predecessor statute to 46 U.S.C. § 31322(b) preempted Louisiana usury law).

20   Additionally, this Court has the power to apply the state laws involved in resolving

21   the remaining state claims, issues, and defenses.[5]  Accordingly, the existence of

22   claims, issues, and defenses that are purportedly governed by California law does not

23   justify a stay of the Federal Action.

24

25   ---

[5] Defendants cite to *United Gas Pipe Line v. Ideal Cement Co.* for the proposition that

26   "a federal question be deferred until the potentially controlling state law is
authoritatively put to rest."  369 U.S. 134, 135-136 (1962).  In *United Gas*, the district

27   court interpreted a city license code that had not been interpreted by any state court.
*Id.*   In contrast, this Court will apply well-settled state law regarding breach of

28   contract.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION**

729257

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

### 6.      The State Court Cannot Adequately Protect Plaintiff's Rights.

This factor concerns whether the state court can adequately protect Plaintiff's federal rights. *See Travelers Indem. Co.*, 914 F.2d at 1370.  Plaintiff's right to foreclose on the Yacht arises under the federal Maritime Liens Act.  For the reasons discussed above, the State Court lacks jurisdiction over the Yacht and, therefore, cannot enforce Plaintiff's right to foreclose on the Yacht under the Preferred Ship Mortgage.  Accordingly, the State Court cannot adequately protect Plaintiff's federal rights.

Moreover, Defendants argue that a stay of the Federal Action would protect both parties' rights by maintaining the status quo, *i.e.*, the Yacht will remain under arrest pending outcome of the State Action.  (Application, p. 10.)  However, prolonging the status quo would unduly prejudice Plaintiff.  Presently, Defendants hold Plaintiff's $15.5 million in principal (plus unpaid interest, penalties, and costs) from the First Disbursement.  Plaintiff also is not receiving the benefit of its collateral because the Yacht is under arrest.  Plaintiff must continue paying approximately $30,000 in monthly custodial fees during the arrest.  (Beaumont Decl., ¶ 7.) Additionally, the value of the Yacht, Plaintiff's principal loan collateral, continues to decline pending final adjudication.  (Beaumont Decl., ¶¶ 6, 8.)  Accordingly, any further delay in final adjudication would unduly prejudice Plaintiff by denying it the benefit of its loan funds, requiring it to pay substantial out-of-pocket costs to preserve its collateral, and otherwise impairing the value of its collateral.

As established above, the State Action constitutes unduly protracted litigation relative to the Federal Action.  However, the expedited adjudication of all claims, issues, and defenses in the Federal Action on the scheduled trial date of May 9, 2011 (or possibly before then through summary judgment) will minimize Plaintiff's damages and costs.  Accordingly, this Court is the only forum that can adequately protect Plaintiff's rights.

11

729257

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

### 7.     Plaintiff Cannot "Forum Shop" Because The Federal Action Is The Only Proper Forum For Adjudicating All Of Plaintiff's Claims.

Plaintiff has no choice but to adjudicate its action for foreclosure on the Yacht in federal court.  Plaintiff had to file the Federal Action in this Court because the Yacht is located in the Court's jurisdiction.[6]  Furthermore, this Court is the only forum in which Plaintiff can foreclose on the Yacht because this is the only court with jurisdiction over the Yacht.

In contrast, Defendants have the *choice* of bringing all of their claims before this Court and resolving the dispute in an expeditious and thorough manner.  Yet Defendants insist on a state forum for no stated reason.  Defendants preemptively filed the State Action after receiving a demand letter from Plaintiff's counsel on October 7, 2010.  (Grant Decl., ¶ 4, Ex. 1.)  Even though this Court can resolve all of the claims, issues, and defenses stated in the State Action more efficiently and conclusively than the State Court, Defendants continue to engage in forum shopping by insisting on the piecemeal adjudication of those claims by the State Court, rather than this Court.  This Court should ignore such gamesmanship and delay tactics.

Accordingly, based on all the above factors, Defendants here failed to make a showing of the requisite "exceptional circumstances" to stay the Federal Action. Indeed, the circumstances in this case strongly favor adjudication of all claims, issues, and defenses between the parties in the Federal Action, either by summary judgment or trial in the next sixty days.

---

[6] Subject matter jurisdiction lies in the district court where the vessel or other res is located, and that jurisdiction attaches when the vessel is arrested within the jurisdiction.  *See* Fed. R. Civ. P. Supp. R. C(2); *see also In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 94 (2d Cir. 2005); *American Bank of Wage Claims v. Registry of the Dist. Court of Guam*, 431 F.2d 1215, 1218 (9th Cir. 1970); and *The Resolute Wilson v. The Resolute*, 168 U.S. 437, 439 (1897) .

12

729257

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

V.   **PLAINTIFF DOES NOT OBJECT TO DEFENDANTS' REQUEST TO AMEND DEFENDANTS' RESPONSIVE PLEADINGS; HOWEVER, DEFENDANTS HAVE NOT SHOWN GOOD CAUSE FOR CONTINUING THE PRE-TRIAL AND TRIAL DATES.**

Local Rule 16.1 states that "the trial date must be firm and all requests for continuances of trial and motions dates will be granted only for good cause shown." S.D. Cal. Civ. R. 16.1.  Defendants allege no facts and make no arguments as to why a continuance of the trial date is necessary.  Defendants knew of all their counterclaims on or before October 27, 2010, when they filed the State Action, and they had the opportunity to file counterclaims with their answer to the Complaint in the Federal Action on December 30, 2010.  Thus, Defendants cannot show good cause for continuing the trial date.

Additionally, the requested trial continuance would come at great expense and prejudice to Plaintiff.  As explained above, Defendants have over $15.5 million of Plaintiff's money, Plaintiff continues to be responsible for funding the arrest of the Yacht, and the value of the Yacht continues to decline pending final adjudication of this dispute.  (Beaumont Decl. ¶¶ 6, 8.)  Accordingly, the Court should deny Defendants' unfounded request for a trial continuance.

13

729257

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) deny Defendants' request to stay the Federal Action; (2) grant Defendants' stipulated request to amend their pleadings; and (3) deny Defendants' request to continue the trial date and other pre-trial deadlines.

DATED:  March 10, 2011                     Respectfully Submitted,

                                           GLASER WEIL FINK JACOBS
                                             HOWARD AVCHEN & SHAPIRO LLP

                                           By:  /s/  James T. Grant
                                               JAMES T. GRANT
                                               Attorneys for Plaintiff
                                               SEA PRESTIGIO, LLC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'** *EX PARTE* **APPLICATION**

729257

**<u>CERTIFICATE OF SERIVCE</u>**

The undersigned hereby certifies that all counsel who have consented to electronic service are being served with a copy of the foregoing document via the Southern District of California CM/ECF system on March 10, 2011.

<u>/s/  James T. Grant</u>

James T. Grant