# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEA PRESTIGIO, LLC, a Delaware limited liability company,<br><br>　　　　　　　　　　　Plaintiff,<br>　v.<br>M/Y TRITON, et al.,<br>　　　　　　　　　　　Defendants. | Case No. 10cv2412-BTM (AJB)<br><br>**ORDER RE APPLICATION TO STAY ACTION** |

Defendants move to stay the instant action. For the following reasons, Defendants' application is **GRANTED**.

## I. BACKGROUND

On June 30, 2010, the parties executed a loan agreement whereby Plaintiff Sea Prestigio, LLC, would loan Defendants $21 million in two disbursements. Defendants executed a promissory note in the principal sum of $21 million concurrently with the loan agreement. To secure payment, Defendants granted Plaintiff a preferred ship's mortgage on the M/Y TRITON ("the vessel"), a 163-foot yacht, which would allow Plaintiff to take possession of the vessel in the event of default. On June 30, 2010, Plaintiff paid the first $15.5 million disbursement into an escrow account. The second $5.5 million disbursement was not made. The parties' dispute centers on this non-payment.

On October 27, 2010, FBP Investments, LP, Spearfish Ventures, Ltd., and Cochal investments, S. de R.L. de C.V. – Defendants in the instant case – filed a complaint

against Sea Prestigio, et al., in Orange County Superior Court, alleging state law claims for usury, breach of contract, breach of covenant of good faith and fair dealing, inducing breach of contract/fraud, intentional interference with contractual relations, false promise, and various declaratory relief claims ("the state action").  Sea Prestigio and the other state defendants removed the state action to the United States District Court for the Central District of California under 28 U.S.C. § 1333, on the ground that federal district courts have exclusive jurisdiction over admiralty or maritime cases.  (Def. Ex. B at 5-6)  On January 31, 2011, Judge Cormac J. Carney of the Central District of California ordered the case remanded to state court, holding that "the principal objective of the contract is borrowing $21 million" and that "[t]he fact that the collateral for Plaintiffs' loan happens to include a yacht, together with other collateral, does not mean that the loan agreement furthers or affects maritime commerce."  (Def. Ex. C)

Approximately one month after the state action was filed, on November 23, 2010, Plaintiff Sea Prestigio, LLC, filed an action before this Court, bringing claims for breach of contract and for foreclosure of the vessel and other property used to secure the loan ("the federal action").  The next day, the Court granted Plaintiff's ex parte application for an order authorizing issuance of a warrant for arrest of the vessel, and on December 22, 2010, the Court denied Defendants' motion to vacate the order of arrest.

## II. DISCUSSION

Defendant argues that, pursuant to the *Colorado River* abstention doctrine, this Court should stay this action pending resolution of the state action.  Although Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976), the Ninth Circuit has commented that this statement "somewhat overstates the law because in certain circumstances, a federal court may stay its proceedings in deference to pending state proceedings."  *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989)

Under the *Colorado River* abstention doctrine, a federal district court may abstain when there are concurrent state and federal lawsuits and when abstaining promotes

"[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (quotation and citation omitted); *see also Moses H. Cone Memorial Hosp. v. Mercury Center*, 460 U.S. 1, 14-15 (1983). The Ninth Circuit summarized the following non-exhaustive list of factors, previously identified by both the Supreme Court and the Ninth Circuit, that should be considered and balanced in determining whether abstention is appropriate: (1) jurisdiction over property, (2) the inconvenience of the federal forum, (3) avoiding piecemeal litigation, (4) the order in which the concurrent forums obtained jurisdiction, (5) whether federal law provides the rule of decision on the merits, (6) whether the state court proceedings are inadequate to protect the federal litigant's rights, and (7) the prevention of forum shopping. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367-68 (9th Cir. 1990). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist." *Nakash*, 882 F.2d at 1415 (quotation and citations omitted).

**A. Evaluation Of The Abstention Factors**

As a threshold matter, the Court looks to whether the state and federal actions are "'substantially similar.'" *Fierle v. Jorge Perez, Md Ltd.*, 350 Fed. Appx. 140, 141 (9th Cir. 2009) (quoting *Nakash*, 882 F.2d at 1416). This threshold is clearly met. As correctly stated by Plaintiff in the notice of removal in the state action, "[T]he Southern District Action and the removed State Court Action . . . are comprised of the same issues, will have the same parties and witnesses, and are essentially the same case." (Def. Ex. B at 5-6)

Turning to the abstention factors, the Court finds that several weigh in favor staying the federal action. First, staying the federal action would prevent the duplication of efforts and the risk of inconsistent outcomes that might result from the piecemeal litigation of the parties' dispute. As conceded by Plaintiff in the state action notice of removal, the issues in these case are essentially the same. Both the state and federal actions are focused on the loan agreement, with both parties contending that the other

breached the agreement, raising a substantial issue of state law.  Indeed, the only federal claim at issue – Plaintiff's claim for foreclosure of the vessel pursuant to 46 U.S.C. § 31325 – itself is derivative of a finding that Defendants are in "default of any term of the preferred mortgage."  § 31325(b).  The preferred ship mortgage, in turn, lists "default under the Loan Agreement" as an event of default.  (Compl. Ex. D at 8)  Thus, there is a substantial likelihood that a judgment in the state action could resolve the federal question of foreclosure over the vessel.[1]  At a minimum, staying the case would eliminate the possibility of the state and federal courts both deciding, and possibly reaching inconsistent conclusions regarding, this key issue of default under the loan agreement.  Moreover, where – as here –  state law issues predominate, "[g]ranting the stay is. . . consistent with the federal court's discretion to decline to exercise jurisdiction out of consideration for federal-state comity." *El Centro Foods, Inc. v. Nazarian*, No. CV09-06395 ODW, 2010 U.S. Dist. LEXIS 49745, at *7 (C.D. Cal. Apr. 21, 2010) (citing *Colorado River*, 424 U.S. at 817).

Second, the state action adequately protects Plaintiff's rights.  The overwhelming majority of the claims at issue are state law claims.  The only claim arising under federal law – Plaintiff's claim for the federal remedy of maritime foreclosure – is likely dependent on the resolution of state law issues.  Although this claim cannot be adjudicated in state

---

[1] For these reasons, the Court finds that the rule of decision is substantially one of state law.  Plaintiff's additional argument that 46 U.S.C. § 31322(b) preempts Defendants' usury claims in the state action does not alter this conclusion.  Without addressing the merits of this position, the core claims at issue regarding the loan agreement remain ones of state law.
  Nevertheless, this abstention factor regarding whether federal law provides the rule of decision on the merits remains neutral.  "[T]he presence of state-law issues may weigh in favor of . . . surrender only in some rare circumstances." *Travelers Indem.*, 914 F.2d at 1370 (citation and quotations omitted).  *But see Anderson v. Neibauer*, No., 09-cv-01446, 2011 U.S. Dist. LEXIS 4525, at *23 (E.D. Cal. Jan. 18, 2011) (finding that state law state rule of decision supported dismissal under *Colorado River* without a separate finding of "rare circumstances" to support surrender); *Gallagher v. Dillon Group 2003-I*, No. CV-09-2135-SBA, 2010 U.S. Dist. LEXIS 33054, at *13 (N.D. Cal. Mar. 5, 2010) (same) ("[S]tate law predominately controls this case and the state cases, and the decision on the merits applying state law will subsume any decision on the federal claims. Thus, the fifth *Colorado River* factor strongly supports the granting of the motion.").  The issues of state law in this case are routine and thus do not set forth the "rare circumstances" that the Ninth Circuit in *Travelers Indem.* required for a finding that this factor weighs in favor of abstention. *See Travelers Indem.*, 914 F.2d at 1370*.*

court, staying the federal action would not impact Plaintiff's ability to recover under federal law. While the case is stayed and the state action proceeds, Plaintiff's rights will be protected, as the vessel will remain under arrest and within the jurisdiction of this Court.

Third, although this factor weighs less strongly than those discussed above, the Court finds that the state action has priority over the instant case. The state action was filed approximately one month before the federal action, and such a time difference supports affording deference to the Superior Court. *See El Centro Foods*, 2010 U.S. Dist. LEXIS 49745, at *7-8 (finding that "proper deference should be afforded to the Superior Court" where the state action was filed approximately one month before the federal action). While "priority is not measured <u>exclusively</u> in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions," *American International Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988) (emphasis added), the Court finds that its expedited case management plan notwithstanding, the federal action has not progressed to a point to alter this priority determination. The Court has decided only one substantive motion – denying Defendants' motion to vacate the order of arrest, which, as discussed, is an issue exclusive to the federal action and which does not reach the merits of the parties' claims. *C.f. id.* (noting that seven motions decided by the state court judge supported a finding that the state action had priority over the federal one). The discovery taken in the federal action can likely be used in the state action, *see* Cal Code Civ Proc § 2025.620(g), and although the Court has set a trial date, if the Court were to deny Defendant's stay application, the trial date would be continued at least sixty days, as Defendants' alternative request for leave to amend their answer, file counterclaims, conduct additional discovery, and extend scheduling order dates would have been granted.[2]

---

[2] For these reasons, it is speculative as to whether the federal action could be completed substantially sooner than state action. Even if that were the case, Plaintiff's argument that "prolonging the status quo would unduly prejudice Plaintiff" is questionable. (Opp. at 11) Plaintiff's payment of custodial fees is a consequence of its choice to seek an order of arrest of the vessel, although as set forth, *infra*, the Court will consider a mechanism to reduce this obligation if the state action is not moving promptly. Moreover, up to this point, Plaintiff has taken the position that the vessel was adequately maintained and could remain

The remaining abstention factors are neutral.  Contrary to Plaintiff's argument that the arrest of the vessel supports denial of the stay, the Court finds this factor regarding jurisdiction over property unhelpful.  For the reasons stated by Judge Carney, the principal objective of the parties' loan agreement and their current dispute is the borrowing of $21 million.  "'[M]oney . . . is not the sort of tangible physical property referred to in *Colorado River*.'"  *Travelers Indem. Co.*, 914 F.2d at 1368 (quoting *American Int'l Underwriters*, 843 F.2d at 1258).  The fact that Plaintiff seeks a remedy that involves foreclosure of property currently in control of the Court does not alter this conclusion.

Next, the Court finds that the two forums are equally convenient to the parties, as both are located in Southern California.  Plaintiff's position that the Court should look not to the geographic distance between the forums but rather to which forum can "resolv[e] this dispute in a single action" (Opp. at 7) is unsupported by case law and not persuasive.  *C.f. id.*; *American Int'l Underwriters*, 843 F.2d at 1258.

Finally, both parties contend that the other engaged in forum shopping.  Neither position is convincing.  The gravamen of Plaintiff's argument is that Defendants engaged in forum shopping by "preemptively" filing the state action after receiving a demand letter from Plaintiff's counsel.  (Opp. at 12 (citing Pl. Ex. 1))  However, other than a reference to "commencing foreclosure proceedings against . . . the vessel," nowhere in this letter does

---

well maintained for "long-term arrests."  *See* Opp. Mot. to Vacate, Beaumont Decl. ¶ 2; *see also id.* at ¶ 3 (citing examples of long-term arrests of mega-yachts for over 12 month periods).  Although the Court has serious concerns that will be addressed, *infra*, regarding the condition of the vessel while under arrest, the Court does not agree that the vessel's marginal deterioration in value over time directs the conclusion that the state court cannot protect Plaintiff's rights.  The state court may (and hopefully will) decide this action on an expedited basis, and the Court will actively review the condition of the vessel while it remains under its jurisdiction and reserves the right to modify its orders appointing substitute custodian and of arrest.  Finally, Plaintiff asserts that it is entitled to recover its $15.5 million in principal as soon as possible, yet provides no authority as to why delayed financial recovery alone can preclude issuance of a stay, especially where, as here, Defendants have a claim for financial recovery in State court.  Regardless, Plaintiff has not shown that it is disproportionately prejudiced by the status quo, as Defendants are deprived of use of the vessel as long as it remains under arrest.  Indeed, minimizing the amount of time Defendants were deprived of use of the vessel while this matter was pending was a major consideration in setting an expedited case management schedule in the federal action.

Plaintiff's counsel state where the threatened litigation would be filed. (Pl. Ex. 1) Insofar as Plaintiff is arguing that Defendants improperly sought to avoid a federal forum, this position lacks merit, as federal courts do not have jurisdiction over Defendants' claims. *See* Def. Ex. C. Thus, there is no support for Plaintiff's position that Defendants' first-filed state action was an attempt to avoid Plaintiff's preferred forum. Defendants argue, in turn, that Plaintiff should have litigated this action in Orange County Superior Court and should not have filed an action in this Court. (Mem. at 10) However, Plaintiff correctly notes that it had to file an action in this court in order to enforce the maritime lien. *See* Fed. R. Civ. P. C(2). For these reasons, the Court finds that the forum shopping factor weighs neither for nor against abstention.

In sum, the avoidance of piecemeal litigation, federal-state comity, and adequacy of the state proceeding to protect the parties' rights strongly favor abstention. Other factors either favor abstention or are neutral. Accordingly, the Court finds the requisite exceptional circumstances present to merit a *Colorado River* stay.

**B. Plaintiff's Procedural Argument**

Plaintiff also asserts that Defendants' application should be denied on procedural grounds because Defendants' could have filed a noticed motion "as early as January 31, 2011" and because Defendants failed to provide good cause for the twenty-four day delay in filing the instant application.[3] (Opp. At 8) This argument is not persuasive. Plaintiff cites no authority for this position, and the Court is not aware of any case law, statute, or rule that would require denial of Defendants' application on the sole ground that it could have theoretically been filed twenty-four days earlier.

Additionally, Plaintiff has not shown how it would be harmed by the briefing schedule set by the Court. In setting this schedule, the Court sought to hear the

---

[3] On February 18, 2011, Defendants contacted the Court to obtain a hearing date on a motion to stay this action. Because of this case's expedited case management schedule and pending deadlines, Defendants were instructed to file an ex parte application to obtain this relief. On February 23, 2011, Defendants filed the instant application, and the following day, the Court set a hearing date of March 18, 2011 and directed Plaintiff to respond by March 10, 2011.

1  application on an expedited basis, but still to provide Plaintiff with more time to respond
2  than the minimum allotted under local rules.  Accordingly, the Court provided Plaintiff with
3  fifteen days to respond to the instant application.  Had Defendants filed a noticed motion
4  with a twenty-eight day hearing date, Plaintiff would have had fourteen days to respond.
5  Local Rule 7.1(e).  With this briefing schedule, Plaintiff is no worse a position than it
6  would have been if a noticed motion was filed.  Defendants' application will not be denied
7  on procedural grounds.

**C. Maintenance Of The Vessel**

The Court has serious concerns about the condition of the vessel and its possible impact on the environment during a long-term arrest.  While these concerns do not preclude the issuance of a stay at this time, the Court will take steps to ensure that the vessel remains properly and adequately maintained while it remains under the Court's jurisdiction.  First, the Court orders that the parties appear before the Court <u>every thirty days</u> to provide a status update regarding the condition of the vessel.  If the Court finds that the vessel poses any risk to the environment or that it is being maintained in a manner that risks substantial decline in value beyond what is to be expected from normal value loss over time, the Court may take actions that include modifying the order appointing substitute custodian and/or the order of arrest.  Next, while the Court's abstention analysis is strongly influenced by concerns over federal-state comity, the Court respectfully requests that the Orange County Superior Court issue an expedited case management schedule that would allow it to decide this case as quickly as possible. Although speculation regarding the timing of when the Orange County Superior Court can decide the state action is not a determinative factor in the *Colorado River* analysis, the Court notes that an early determination of the state action will minimize the risks inherent in the arrest and maintenance of the 163-foot yacht.

### III.  CONCLUSION

For the above-stated reasons, Defendants' application to stay the federal action is **GRANTED**. The parties are ordered to file a status report regarding the state action <u>every</u>

three months from the day this order is filed and to immediately inform the Court upon a judgment in that action.  The parties are further ordered to appear before this Court on May 4, 2011 at 2 p.m. for a status conference regarding the condition of the vessel.  The parties' motions for summary judgment [dock. # 57, 58] are **DENIED** as premature.  Motions for summary judgment, if appropriate, may be re-filed after the stay is lifted.

Notwithstanding the Court's granting of the stay, the Court is concerned with prejudice to Plaintiff by having to pay the continuing maintenance fees of approximately $30,000 per month.  Clearly, if the stay were denied, Plaintiff would continue to have this obligation until after the trial and until a final judgment in this case.  Given the likelihood that the trial would have been continued to mid-July to accommodate Defendants' counterclaims, a final judgment would not be likely until late August, at the earliest.  If the state action is not moving promptly, Plaintiff may seek an order of the Court that the stay continue only on condition that Defendants pay half the costs of maintaining the vessel.  Since the stay is sought by Defendants and that stay will materially increase the expense to Plaintiffs, it seems only fair that Defendants should bear part of the costs incurred.  Plaintiff may seek such relief if the state proceeding does not appear to be on track for resolution at a time in the foreseeable future.

The Court excepts from the stay settlement conferences before the magistrate judge, which shall proceed at such time as the magistrate judge sets or as requested by the parties.

**IT IS SO ORDERED.**

DATED:  April 11, 2011

*[signature: Barry Ted Moskowitz]*

Honorable Barry Ted Moskowitz
United States District Judge