# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEA PRESTIGIO, LLC, a Delaware limited liability company,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>M/Y TRITON, et al.,<br><br>　　　　　　　　Defendants. | Case No. 10-cv-2412-BTM-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES & COSTS** |

On June 24, 2013, Plaintiff Sea Prestigio, LLC ("Sea Prestigio" or "Plaintiff") filed a motion for attorneys' fees and costs (Doc. 155). For the reasons set forth below, Plaintiff's motion for attorneys' fees and costs is hereby **GRANTED in part and DENIED in part**.

## I. BACKGROUND

Sea Prestigio commenced this action on November 23, 2010, seeking to foreclose on the Motor Yacht Triton (the "Triton") for defendant borrowers' ("Defendants") failure to pay the amount owed under the terms of the parties' $15.5 million loan agreement. The Triton, a high-end megayacht, as well as real property in Laguna Beach, California ("Emerald Bay Property"), served as collateral. This action was temporarily stayed pending the outcome of a related case before the Orange County Superior Court. (See Doc. 59.) In that case, Defendants were found

in default on their debt in the amount of $23,127,306 and Sea Prestigio was awarded $4,684,397 in fees and costs incurred through January 21, 2013.  Basinger Decl., Ex. D ¶23 (Judgment of Foreclosure & Order Sale).  The Superior Court judgment ordered the foreclosure and sale of the Triton "[p]ursuant to applicable federal law and specific procedures to be ordered by the Federal Court."  Id. ¶24.  The Triton was sold at auction for $11 million on April 26, 2013.   Final judgment was entered in this case on June 10, 2013 (Doc. 150), and funds were ordered disbursed on July 15, 2013 (Doc. 159).  Sea Prestigio now seeks an award of $466,167.55 ($315,302 in attorneys' fees[1] and $150,865.55 in costs) for services rendered since January 22, 2013.  This amount includes a subsequent request for an additional $6,529.00 in attorneys' fees related to supplemental briefing (Doc. 172).  On January 8, 2014, the Court granted Sea Prestigio's unopposed motion to reopen Count I for the limited purpose of awarding attorneys fees pursuant to the contracts referenced therein.  Sea Prestigio thereafter filed a supplemental brief discussing recovery of attorneys' fees and *in custodia legis* expenses on an *in rem* foreclosure claim (Doc. 171).

## II. LEGAL STANDARDS

The movant "bears the burden of submitting detailed time records justifying the hours claimed to have been expended."  In re Washington Public Power Supply Sys. Secs. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994).  Without suggesting that they are the only two possible methods of evaluating reasonableness, the Ninth Circuit "has affirmed the use of two methods of determining attorneys fees, depending on the case," i.e., the percentage method and the lodestar method.  Sea Prestigio urges the Court to use the lodestar method.  Defendant does not suggest an alternative methodology, though it disputes various aspects of Sea Prestigio's claims and calculations.  The Court therefore applies the lodestar method.

Under the lodestar method, "[t]he most useful starting point for determining

---

[1] Sea Prestigio initially sought $332,036.50 in fees but withdrew $23,263.50 of that request, noting (in response to Defendants' opposition brief) that it was "included by error."  (Reply 2 n.2.)

the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Hours that are excessive, redundant, or otherwise unnecessary should be excluded from an award of fees. Id. at 434; Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9th Cir. 2008). To calculate the "lodestar," the court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable rate. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). The hourly rates to be employed in calculating reasonable fees are determined by the "prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel." Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001). "The burden is on the plaintiff to produce evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (internal quotations omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the attorney, are satisfactory evidence of the prevailing market rate." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990). "The defendant may introduce rebuttal evidence in support of a lower hourly rate." Sorenson, 239 F.3d at 1145. As to the number of hours reasonably expended, a fee applicant "should make a good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434.

There is a strong presumption that the lodestar figure represents a reasonable fee award. Harris v Marhoefer, 24 F.3d 16, 18 (9th Cir. 1994); United Steelworkers, 896 F.2d at 407 (holding that, absent competent rebuttal evidence or a finding that counsels' rates are unwarranted by their level of performance, the requested rates are presumed reasonable). Yet courts may adjust the lodestar figure upward or

downward based upon the following factors enunciated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975):  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  See Camacho, 523 F.3d at 978; Cunningham v. Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988) (same).  See also Woods v. Sunn, 865 F.2d 982, 991 (9th Cir. 1988) (noting that many factors previously identified by courts as probative on the issue of reasonableness of a fee award are now subsumed within the initial calculation of the lodestar amount); Morales, 96 F.3d at 363-64.  Finally, with respect to a voluminous application, the Court may make across-the-board percentage cuts in the number of hours claimed as "a practical means of trimming the fat from a fee application." <u>Gates v. Deukmejian</u>, 977 F.2d 1300, 1307 (9th Cir. 1992) (citation omitted).

### III. DISCUSSION

**A.    Governing Fee-Shifting Provisions**

      1.    <u>Contractual Provisions</u>

Sea Prestigio argues that it is entitled to recover all of its attorneys' fees and costs under the Loan Agreement.  The Loan Agreement provides, in pertinent part:

> Section 6.20 Attorneys' Fees. In the event of any controversy, claim or dispute between the Parties hereto affecting or relating to the purposes or subject matter of this Agreement or any of the Loan Documents, the prevailing party or parties shall be entitled to recover from the nonprevailing party or parties all of its costs and expenses incurred in enforcing, defending, or establishing its rights under this Agreement or the Loan Documents, including, but not by way of limitation, attorneys' fees (including the reasonable value of in-house counsel services). In addition to the foregoing award of costs and fees, such prevailing party shall also be entitled to recover its court costs and expert witnesses' and attorneys' fees incurred in any postjudgment proceedings to collect or enforce any judgment. This provision is separate and several and shall

      survive the merger of this Agreement or any of the Loan Documents into any judgment on this Agreement or such documents.

Basinger Decl., Ex. B § 6.20 (Doc. 155-1); Compl., Ex. B (same).  Additionally, the preferred ship mortgage terms provide that, in the event of default and subsequent demand, the shipowner must pay ". . . all out-of-pocket costs and expenses, all attorneys' fees incurred by Mortgagee in connection with the Event of Default and collection and enforcement proceedings."  Id., Ex. C § 6.06.  In light of these contractual provisions, attorneys' fees and costs are recoverable under both the *in personam* and *in rem* claims.  See 46 U.S.C. § 31325(d)(3)); General Elec. Credit Corp. v. O/S Triton VI, 712 F.2d 991, 994 (5th Cir. 1983).  The motion *sub judice* does not, however, specify which defendant(s) should be liable for fees and costs. Since judgment was granted only as to Count II (Docs. 143, 150), the Court considers the motion with respect to that Count alone. The Complaint couches foreclosure as both an *in rem* and *in personam* claim.  See 46 U.S.C. § 31325(b) (providing for both *in rem* enforcement of a preferred mortgage lien and *in personam* claims for outstanding indebtedness).  See also Compl. 6, Ex. A (a $21 million promissory note dated June 30, 2010 and executed by "Borrowers" FPB Investments LP, James and Nancy Baldwin, Cachal Investments S. de RL de CV, and Spearfish Ventures LTD).  Nonetheless, the pending motion is ambiguous with respect to the defendants, and the Court reads it to simply request an *in rem* judgment.

      2.    <u>Judgments</u>

      The Orange County Superior Court awarded attorneys' fees and costs incurred in both the state and federal actions through January 21, 2013.  Bassinger Decl., Ex. D ¶23(c).  That judgment also expressly reserved Sea Prestigio's right to recover related fees and costs incurred thereafter:

> Attorney's fees and costs, beginning on January 22, 2013, in amounts to be determined, to be incurred by Lender in order to obtain and enforce this Judgment of Foreclosure and Order of Sale, including, without limitation, (i) attorney's fees and costs to maintain the Vessel pending a judicial foreclosure sale of the Vessel, (ii) attorney's fees and costs to foreclose on the Vessel and Emerald Bay Property, and (iii) attorney's fees and costs to obtain and execute on any deficiency judgment to be entered in favor of

>Lender and against Borrowers, and each of them, following the judicial foreclosure on the Vessel and Emerald Bay Property.

Id. This Court's judgment provides that "any costs and attorneys' fees in regard to this specific federal case shall be set and ordered as provided for in Rule 54(d) of the Federal Rules of Civil Procedure." (Doc. 150.)

3.   Analysis

Defendants argue that the Superior Court's January 22, 2013 fee award "includes not only Prestigio's fees litigating the merits, but its fees incurred in the five months following the initial statement of decision . . . ." (Opp'n 8.) The Court disagrees, as the plain language of the judgment is to the contrary. The presiding referee issued a Tentative Statement of Decision on August 2, 2012. The penultimate page of the judgment indicates only that extensive negotiations involving fees occurred leading up to the stipulated judgment, but does not indicate that post-judgment fees were incorporated into the fee award.

Defendants also contend that the Superior Court judgment controls, such that Sea Prestigio's award must be "limited to the fees authorized in the State Judgment." (Opp'n 5.) The Loan Agreement states that its fee shifting provision shall survive merger into any judgment. Basinger Decl., Ex. B § 6.20. The two judgments do not appear to be at odds with respect to the award of attorneys fees and costs. As noted above, the Superior Court judgment provides for recovery "without limitation" of, *inter alia*, fees and costs "to maintain the Vessel" pending sale and "to foreclose on the Vessel . . . ." Basinger Decl., Ex. D ¶23(c). Thus, even assuming Defendants are correct, the Court sees no difference in the appropriate calculation methodology or relevant expenditures, with one exception: costs for expert fees in connection with litigation over the minimum bid. Defendants argue that this is not a taxable cost under 28 U.S.C. § 1920 or Rule 54(d) because the expert was not court appointed. (Opp'n 15.) The Court agrees, but it is also empowered to enforce the provisions of the underlying Loan Agreement and Preferred Ship Mortgage, which contain fee shifting agreements with no such limitation. See Int'l Marble & Granite of Colo.,

Inc. v. Cong. Fin. Corp., 465 F. Supp. 2d 993 (C.D. Cal. 2006) (noting that parties may contract for fee-shifting under California law); Stonebrae L.P. v. Toll Bros., 521 Fed. Appx. 592 (9th Cir. 2013).  The Court finds the expert fee to be recoverable, particularly since the testimony was for the minimum bid hearing requested by Defendants.  See Grove v. Wells Fargo Fin., Inc., 606 F.3d 577, 580 (9th Cir. 2010) (noting that federal law permits recovery for out-of-pocket litigation expenses typically billed to a client).  The Court also finds that all other reasonable fees and costs incurred in the foreclosure and sale of the Triton, including reasonably related litigation costs, constitute enforcement expenses under the plain language of each judgment and the underlying contracts.

**B.   Lodestar Analysis of Enforcement Expenses**

During the time period at issue, the parties litigated over the sale of the Triton, participated in status and settlement conferences, and engaged in motion practice before this Court.  Sea Prestigio has submitted declarations of its attorneys, Jill Basinger, William Dysart, and Alexander Gruft, as evidence of the time worked on this case and commensurate costs.  Defendants submit the declaration of their attorney, Mark Dillon, in opposition to Sea Prestigio's request.  Sea Prestigio claims to have paid for 801.5 hours in attorneys' fees, plus related costs, in the months following the Superior Court judgment.  Basinger Decl. ¶6; Dillon Decl., Ex. D.

1. Attorneys' Fees

In this case, the Court evaluates the lodestar for both firms that represented Sea Prestigio: Glaser Weil ("GW") and Wright & L'Estrange ("WL").  GW billed 245.9 hours on the case since January 22, 2013, charging $133,681.50.  See Basinger Decl. ¶6; Reply 2 n.2.  WL billed $141,742 for 464.4 hours spent on it through May 31, 2013.  Dysart Decl. ¶10, Ex. B; Dillon Decl., Ex. D.  WL billed 447.4 of those hours between January 22 and May 31, 2013, charging $109,292.50.  Id.  As evidence of these fees, Sea Prestigio has provided billing records in the form of Exhibits attached to the Declarations of Jill Basigner, who managed the case for GW,

and WL partners William Dysart and Alexander Gruft.

### a. Reasonable Hourly Rates

#### (i) Wright & L'Estrange

Sea Prestigio hired WL to handle the maritime foreclosure sale. Defendants do not dispute the reasonableness of WL's hourly rates, which range from $110/hr for paralegals to $375/hr for partners. The Court thus finds WL's rates to be reasonable.

#### (ii) Glaser Weil

GW's hourly rates range from $280/hr for paralegal services to $675/hr for Jill Basinger, the most experienced GW partner on the case. Basinger Decl., Ex. A (GW Invoices). Ms. Basinger has 15 years of experience with a focus on business litigation. Id. ¶2. As evidence of the reasonableness of GW's rates, Sea Prestigio points to the Superior Court judgment and other rulings. Since the Superior Court ruling was based on the parties' stipulation and does not discuss hourly rates, it alone is insufficient evidence of reasonableness. Sea Prestigio cites other rulings, some from outside this district, that are less than persuasive. See, e.g., PLCM Grp., Inc. v. Drexler, 22 Cal. 4th 1084, 1096 (2000) (upholding fee award exceeding amount recovered, based on $185 hourly rate); Bleeker Charles Co. v. 350 Bleecker St. Apt. Corp., 212 F. Supp.2d 226, 230 (S.D.N.Y. 2002) (awarding fees requested where attorneys were chosen and paid without regard to whether fees would be recovered). Sea Prestigio also cites Hartless v. Clorox Co., 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011) (approving hourly rates for class action litigation ranging "from $675 for an experienced partner's time to $100 per hour for a paralegal's time.") The Court finds Hartless to be insufficiently analogous, since it involved a class action suit wherein the attorneys bore risks commensurate with a contingent fee arrangement. Sea Prestigio's strongest cited authority is Thalheimer v. City of San Diego, No. 09-cv-2862, 2012 WL 1463635 (S.D.Cal. April 26, 2012), a 42 U.S.C. § 1983 action where a $600 hourly rate for a senior partner was found reasonable.

Defendants argue that GW has not shown that the post-judgment matters required the "high level of skill and experience of the Glaser Weil attorneys." (Opp'n 11, quoting Basinger Decl. ¶3.)  Pointing out that Ms. Basinger's experience is not specific to maritime matters, Defendants argue that GW is seeking to unfairly transfer a premium paid for GW's services that goes beyond a reasonable rate for the services provided.  Indeed, Mr. Wright, a maritime specialist with over forty years of experience, billed $375/hr on this matter whereas Ms. Basinger charged $675/hr.  Dysart Decl. ¶2.  Mr. Dysart, an experienced expert in maritime law and maritime litigation in this district, also billed at a $375 hourly rate.

GW's invoices indicate that it was responsible for litigation concerning the sale of the Triton, which was subject to confirmation by this Court (Doc. 112).  Some comparable rates have been approved in this district.  See, e.g., Tourgemean v. Collins, No. 08-cv-1392, 2012 U.S. Dist. LEXIS 1219 (S.D.Cal. Jan. 5, 2012) (awarding fees at $450 hourly rate for time spent on sanctions motion); Guy v. City of San Diego, No. 06-cv-0766, 2011 U.S. Dist. LEXIS 42060 (S.D.Cal. April 19, 2011) (awarding fees at $450 hourly rate for appellate work in § 1983 action); Breidenbach v. Experian, No. 12-cv-1548, 2013 U.S. Dist. LEXIS 82093, 10-13 (S.D. Cal. June 11, 2013) (awarding, in a Fair Debt Collection Practices Act case, $525/hr for partner with twenty-five years experience and $315/hr for associate with 3.5 years experience); Brighton Collectibles, Inc. v. Coldwater Creek Inc., No. 06-cv-01848-H-POR, 2009 U.S. Dist. LEXIS 4005, at *12 (S.D. Cal. Jan. 20, 2009) (approving fees in a Lanham Act/trademark infringement case at hourly rates ranging from $90 to $210 per hour for paralegal work and $125 to $625 per hour for attorney work); Kohler Co. v. Domainjet, Inc., No. 11-cv-1767-BEN, 2013 U.S. Dist. LEXIS 50452, 6-7 (S.D. Cal. Apr. 7, 2013) (approving unopposed rates of $590/hr and $630/hr for partner work in Lanham Act/trademark infringement case).  See generally Prison Legal News v. Schwarzenegger, 608 F.3d 446, 455 (9th Cir. 2010) (holding that the market for equally complex federal litigation may be an appropriate

reference regardless of subject matter). But Sea Prestigio has not shown that their local counsel from WL could not or would not have handled the work that GW performed during the relevant period at the rates WL charged, which are at or below those typically charged in this district. Of course, Sea Prestigio may retain whomever they like at any agreed upon rate, and counsel may split up the work as they see fit. They may not, however, tax it all against the defendants as a *reasonable* expense. It is not reasonable to pay extra for work that could have been accomplished by local counsel at a lower rate.

     Ms. Basinger was involved in the contract dispute that preceded this action. Her intimate knowledge of the facts reduced the overall time billed because WL's lawyers did not have to spend as much time educating themselves on the case. To the extent that knowledge was put to use, this efficiency is a legitimate basis for charging a higher rate. The Court has identified several billing entries, amounting to 17.6 hours between January 22, 2013 and April 1, 2013, wherein Ms. Basinger was corresponding with admiralty counsel. The Court awards fees at a $500 hourly rate for Ms. Basinger's services during those periods. Because Sea Prestigio has not shown other efficiencies or otherwise justified the higher rates in this case, the Court will adjust GW's rates to match those billed by WL (with the exception of the 17.6 hours mentioned *supra*). The Court accordingly adjusts the lodestar to reflect a rate of $110/hr for GW's paralegal services (rather than the $280/hr charged), $200/hr for associate attorney services (rather than the $450/hr billed for John Ly's time and $335/hr billed for Gali Grant's time), and $375/hr or $500/hr for Ms. Basinger's services (rather than the $675/hr charged).

**TABLE 1: HOURLY RATES**

| Timekeeper Attorney/Paralegal | Title | Law Firm | Hourly Rate Billed | Hourly Rate Awarded |
|---|---|---|---|---|
| Jill Basinger | Partner | Glaser Weil | $675 | $375/$500 |
| John K. Ly | Associate | Glaser Weil | $450 | $200 |

| Gali Grant | Associate | Glaser Weil | $335 | $200 |
| --- | --- | --- | --- | --- |
| Joel Tan | Paralegal | Glaser Weil | $280 | $110 |
| Robert Wright | Partner | Wright & L'Estrange | $375 | $375 |
| William Dysart | Partner | Wright & L'Estrange | $375 | $375 |
| Alexander Gruft | Associate | Wright & L'Estrange | $200 | $200 |
| Andrew Schouten | Associate | Wright & L'Estrange | $200 | $200 |
| Deanna Johnson | Paralegal | Wright & L'Estrange | $110 | $110 |
| Monica Araki | Paralegal | Wright & L'Estrange | $110 | $110 |

  *b. Reasonableness of Time Billed*

    (i) Wright & L'Estrange

  Defendants suggest that some of WL's fees were incurred before January 22, 2013, and thus may not be recovered (or already have been recovered) under the Superior Court judgment. Dillon Decl. ¶10, Ex. D at 9 (Doc. 157-1). Sea Prestigio provides no meaningful response to this argument. As Sea Prestigio bears the burden of proof, the Court deducts seventeen hours from the time claimed by WL in January 2013. William Dysart also estimated fees for work done by WL in June and July (presumably related to the motion for fees and costs) at $7,500. Dysart Decl. ¶10. The Court will not award fees on that basis, as the declaration is dated July 26, 2013, the last billing entry is May 2, 2013, and Sea Prestigio has provided no further documentation evidencing the additional work performed or amount billed. The Court finds the remainder of the award request (including the supplemental request for $6,529 in fees for supplemental briefing to be reasonable. The Court accordingly includes 470.87 hours of relevant work performed by WL in the lodestar. As the Court has found WL's rates to be reasonable, the Court awards $142,821.50 in fees with respect to WL.

(ii) Glaser Weil

Defendants contend that GW billed excessively on this case and that Sea Prestigio seeks reimbursement for services outside the scope of recovery here. More specifically, Defendants argue (a) that Sea Prestigio improperly seeks to recover for time spent on an appeal of the Superior Court's judgment, (b) GW's time is objectively unreasonable in light of the length of papers they authored and submitted, (c) GW's work is redundant to the work performed by WL, and (d) Sea Prestigio improperly seeks recovery for estimated fees incurred in connection with the motion *sub judice*.[2] Sea Prestigio does not dispute that its attorneys were also working on an appeal during this period, and such work would fall outside the scope of the judgments here. But GW's billing records do not appear to cover work on an appeal. Sea Prestigio also agues that, even where the papers were brief, the time spent on motion practice was appropriate in light of the opposition mounted by Defendants. (Reply 2-4.)

GW's invoices reflect a degree of duplicative work. For instance, attorneys from both GW and WL appeared at status conferences and hearings during the relevant period. See generally Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001) ("[fees for] inefficient or duplicative efforts [are] not subject to compensation."); Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended* 808 F.2d 1373 (9th Cir. 1987). The Court subtracts for work it finds duplicative or otherwise unreasonable as follows: (1) the Court will not include GW time billed for

---

[2] GW initially estimated its fees related to this motion at $25,850. Basinger Decl. ¶6. The final award request includes some $33,350 for time spent on the reply brief plus time attending a hearing on this motion (a hearing which was not requested and never occurred). (Reply 2 n.2.) A prevailing party may recover for fees incurred in preparing a fee-related motion. See Ketchum v. Moses, 24 Cal. 4th 1122, 1133-1134 (2001). According to GW's invoices, work related to the fees motion accounts for some 26 associate hours and 6.5 partner hours. Considering the straightforward nature of a motion for fees and costs, as well as the one *sub judice*, the Court finds a reasonable award to be based on 15.8 hours of junior associate time and three hours of partner time, including time spent on the reply brief and exhibits. Cf. Guy v. City of San Diego, No. 06-cv-0766, 2011 U.S. Dist. LEXIS 42060 (S.D.Cal. April 19, 2011) (awarding $4,900 for time spent on fees motion based on twelve attorney hours).

any appearance before this Court during the relevant period wherein a WL attorney also appeared for Sea Presigio; and (2) although travel time is potentially recoverable, <u>Saldana-Neily v. Taco Bell of Am., Inc.</u>, 2008 U.S. Dist. LEXIS 124333 (N.D. Cal. Mar. 4, 2008) (citing <u>Henry v. Webermeier</u>, 738 F.2d 188, 194 (7th Cir. 1984)), travel time billed by Ms. Basinger is excluded from the lodestar as excessive for the same reason and also because most of her appearances could have been made by telephone, especially since local counsel was present.  Based on GW's invoices, the Court finds that Ms. Basinger billed a total of forty-eight hours for travel to San Diego and attendance in court on January 23, 2013, February 20, April 2, April 15, May 2, and May 23, 2013.[3]  Finally, some other work performed by GW appears to overlap unnecessarily with work performed by WL.  <u>See, e.g.</u>, Doc. 164 at 13 (discussion with Dysart regarding summary judgment motion); <u>see also id.</u> at 17, 18 (invoice entries for work on boat sale hearing that appear to overlap with WL's work).  The Court accordingly deducts as duplicative an additional three hours from Ms. Basinger's portion of the bill and 4.5 hours from Mr. Ly's portion.  The Court finds all other time billed to have been reasonably necessary to complete the ship foreclosure and sale.  With respect to time spent on the partially successful fee motion, the Court finds that three hours of partner time (rather than the 6.5 billed) and 15.8 hours of associate time (rather than the 25.8 billed) are reasonable.  GW's reasonably billed time is accounted as follows:

**Table 2: Breakdown of Glaser Weil's Time**

| Glaser Weil Timekeeper | Time Billed (in Hours) | Reasonable Time |
|---|---|---|
| Jill Basinger | 108.5 | 57.5 |
| John K. Ly | 132.5 | 118 |
| Gali Grant | 4.1 (3.8 on fee motion) | 4.1 |

---

[3] Ms. Basinger's bills do not separately state the exact travel and court attendance time.  The Court has made its best estimate, based on the services listed, that the total travel and court appearance time was 48 hours.

| | | |
|---|---|---|
| Joel Tan | 2.6 | 2.6 |

2. Lodestar Calculation

Based on the foregoing, the Court calculates the lodestar as follows:

**TABLE 3: LODESTAR**

| | Reasonable Hours | Reasonable Hourly Rate | Lodestar |
|---|---|---|---|
| Jill Basinger | 17.6 | $500 | $8,800 |
| Jill Basinger | 39.9 | $375 | $14,962.50 |
| John K. Ly | 118 | $200 | $23,600 |
| Gali Grant | 4.1 | $200 | $820 |
| Joel Tan | 2.6 | $110 | $286 |
| Robert Wright | 112.7 | $375 | $42,267.50 |
| William Dysart | 179.8 | $375 | $67,425 |
| Alexander Gruft | 133.97 | $200 | $26,794 |
| Andrew Schouten | 16.3 | $200 | $3,260 |
| Deanna Johnson | .2 | $110 | $22 |
| Monica Araki | 27.8 | $110 | $3,058 |
| **LODESTAR** | | | **$191,295** |

C. **Bill of Costs**

Rule 54(d) creates a presumption in favor of awarding costs to a prevailing party, such that it is incumbent upon the losing party to demonstrate why costs should not be awarded. Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1079 (9th Cir. 1999). Defendants' argument that they are not responsible for expenses incurred after the auction date (April 26, 2013) holds no water. On May 8, 2013, the U.S. Marshal released the boat pursuant to this Court's May 7 Order. Sea Prestigio is responsible for all *in custodia legis* costs incurred through that date, as reflected by the invoices. Sea Prestigio seeks recovery of $150,865.55 in costs, $143,102.83 of which were paid to Nielsen Beaumont Premier Yactworks ("NB"), the substitute custodian of the Triton pending its sale. Dysart Decl. ¶¶11 ($1,239.15 in litigation

costs incurred by WL), 12, Ex. C; Gruft Decl. ¶10, Ex. G (custodian expenses).

As evidence of its *in custodia legis* expenses, Sea Prestigio provides a summary statement as well as weekly invoices from NB. See Decl. of Alexander Gruft (Doc. 161-1) ¶¶2, 10, Exs. A (invoices), G (copies of checks to NB totaling $143,102.83). As Defendants point out, however, the NB invoices (Jan. 23-May 8, 2013) amount only to $117,843.79. Neither the Gruft Declaration nor the sworn bill of costs (Doc. 155-4) explains the $25,259.04 discrepancy, and the Court will reduce the award of costs accordingly. The NB invoices include a couple of inexplicably high bills: $625 for pumping out "black water" on April 24, 2013, and $650 for pumping out the holding tank on or about March 14, 2013. See Gruft Decl. Ex. A. The Court will reduce each of those expenses to the typical $95/hr rate charged for Neilsen Beaumont's maintenance services, and reduce the taxable costs by $1,085 accordingly. After careful review of the expenses claimed, the Court finds that the evidence in the record supports an award of $116,758.79 in reasonable *in custodia legis* costs paid to NB. These costs include keeping and maintenance expenses as well as time involved in facilitating inspection of the vessel by prospective buyers, all of which added value by enhancing the potential for a higher sales price at the public auction conducted by the U.S. Marshals Service. The Court further finds that:

    1. Sea Prestigio paid $3,471.06 in fees to the U.S. Marshals Service. Dysart Decl, ¶13, Ex. D; Gruft Decl. ¶¶ 4-11, Exs. B-H.

    2. GW incurred $664.44 in unnecessary or duplicative travel and parking costs, but has adequately evidenced $1,591.82 in litigation expenses.

    3. WL incurred $1,239.15 in litigation expenses.

    4. Expert fees of $796.25 paid to Lee Racicot of Super Yacts, Inc. were reasonably necessary and adequately documented by GW. Basinger Decl., Ex. E.

    6. Total costs and expenses awarded: **$123,857.07**

//

//

## IV.  CONCLUSION

The Court has carefully considered Sea Prestigio's motion for attorneys' fees and costs in light of each <u>Kerr</u> factor, including the time required, the novelty and difficulty of the questions involved, and the results obtained.  Having done so, the Court hereby **GRANTS in part and DENIES in part** Sea Prestigio's motion.  It is accordingly **ORDERED** that Plaintiff Sea Prestigio is awarded attorneys' fees and costs totaling $315,152.07.  This award includes $191,295.00 in attorneys' fees for services rendered after January 21, 2013 and $123,857.07 in costs incurred after January 21, 2013.  The Clerk of Court shall enter final judgment (with respect to fees, costs, and expenses) for Plaintiff and against the M/Y Triton in the amount of **$315,152.07**.

**IT IS SO ORDERED.**

Dated: February 6, 2014

BARRY TED MOSKOWITZ
Chief United States District Judge